# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

| | |
|---|---|
| In re: <br><br> INSIGHT TERMINAL SOLUTIONS, LLC, *et al.*, <br><br> Debtors. | Chapter 11 <br><br> Case No. 19-32231 <br><br> (Jointly Administered) |
| INSIGHT TERMINAL SOLUTIONS, LLC, as the Reorganized Debtor, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF OAKLAND, <br><br> Defendant. | Adv. Proc. No. 24-03007-jal <br><br> Judge Joan A. Lloyd |

**DEFENDANT CITY OF OAKLAND'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULES 12(B)(1) AND 12(B)(6)**

1. The City of Oakland ("Defendant" or "the City"), provides this reply in support of its Motion to Dismiss this Adversary Proceeding (Adv. Dkt. 25).[1]  The Objection brief filed by Plaintiff and Reorganized Debtor Insight Terminal Solutions, LLC ("ITS") (Adv. Dkt. 42), as well as the recent remarks by counsel for ITS at the July 11, 2024 preliminary hearing, confirm both that this Court lacks post-confirmation subject matter jurisdiction and that these claims have no basis in law.  Moreover, ITS' arguments, including in support of the recently filed improper Rule 2004 Motion seeking discovery (Dkt. 508, 521), confirm this entire proceeding is based on political and legal disputes in California.  As explained in detail below, this adversary has nothing to do with

---

[1] The docket in ITS' bankruptcy Case No. 19-32231 is referred to herein as "Dkt."; the docket for this adversary (Case No. 24-03007) is referred to as "Adv. Dkt."

- 1 -

4894-0742-5238.2

this bankruptcy or the Plan, which has been substantially consummated. The City respectfully requests this Court grant its Motion and end this waste of the parties' resources and abuse of the judicial process.

I. **THIS COURT LACKS POST-CONFIRMATION JURISDICTION**

   A. **There is No "Close Nexus" Between This Adversary Proceeding and the Confirmed Plan or Main Case**

2. ITS' Objection confirms, as it must, that it is relying only on "related to" jurisdiction, because the California tort claims against the City clearly do not arise in or under bankruptcy law. (Adv. Dkt. 42 at 10.) But ITS cannot meet the high hurdle for related to jurisdiction.

3. The essential inquiry for finding related to jurisdiction post-confirmation is "whether there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter." *In re Thickstun Bros. Equip. Co.*, 344 B.R. 515, 521 (B.A.P. 6th Cir. 2006). In making that inquiry, courts consider whether the claim "affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan." *Id.*, citing *In re Resorts Int'l, Inc.*, 372 F.3d 154, 168-69 (3d Cir. 2004).

4. The Sixth Circuit also has recognized "that 'situations may arise where an extremely tenuous connection to the estate would not satisfy the jurisdictional requirement.'" *In re Wolverine Radio Co.*, 930 F.2d 1132, 1142 (6th Cir. 1991). This adversary proceeding presents exactly such a situation: there is no "close nexus" between this adversary proceeding and the confirmed Plan or bankruptcy case, just as there was not in *In re Tew*, No. 23-05042, 2023 Bankr. LEXIS 2766, at *3 (Bankr. E.D. Ky. Nov. 16, 2023).

5. Because recent holdings by Kentucky bankruptcy courts support dismissal here, ITS argues that the factors applied by the Eastern District are not "dispositive." (Adv. Dkt. 42 at 13 n. 10.) But *Tew* is consistent with other Sixth Circuit bankruptcy courts. In *In re Equip. Finders, Inc.,*

- 2 -

473 B.R. 720 (Bankr. M.D. Tenn. 2012), the court rejected "related to" jurisdiction where the reorganized debtor sued two non-creditors: (1) for state law and contract claims; (2) six months post-confirmation; (3) where the plan was not dependent on litigation proceeds; and (4) where the confirmed plan vested all property in the reorganized debtor upon confirmation, such that after confirmation no estate nor any trust or fund existed for benefit of debtor's creditors. *Id*. at 731.

6.    These holdings are consistent with other jurisdictions. The Fourth Circuit in *Valley Historic L.P. v. Bank of New York*, rejected "related to" jurisdiction over the reorganized debtor's post-confirmation adversary proceeding against a bank for breach of contract and tortious interference where: (1) the plan made no provision for the use of any recovery from the adversary proceeding; (2) the debtor had paid all of its creditors; and (3) the plan was substantially consummated. 486 F.3d 831, 836-37 (4th Cir. 2007). As succinctly stated in *Equip. Finders*, "[i]f a common theme can be extracted …, it is that 'related to' jurisdiction in the post confirmation period expands or contracts depending on [1] the relationship between the post confirmation debtor and the defendant, [2] the language of the confirmed plan and [3] the impact the matter will have on performance of the confirmed plan." 473 B.R. at 731.

7.    Because this Adversary Proceeding does not "affect[] the interpretation, implementation, consummation, execution, or administration of a confirmed plan" it should be summarily dismissed for lack of jurisdiction. *Thickstun Bros*., 344 B.R. at 521.

8.    ***ITS Has No Relationship with the City.***   ITS' argument that the City's actions "targeted" the ITS Sublease ignores that ITS has *never* had any relationship, contractual or otherwise, with the City. The City owns the West Gateway land, which it leased to OBOT, not ITS. OBOT chose to do business with ITS; the City did not. The City terminated its contract with

- 3 -

OBOT, not ITS. According to the Debtor's own schedules, the City is not a creditor of the ITS estate, and the City did not file a proof of claim.

9. While ITS summarily concludes that "the City well knew that its conduct was central to ITS's bankruptcy filing and implementation of the Plan" (Adv. Dkt. 42 at 14), no facts support that assertion. If ITS believed the City's actions "drove ITS into Chapter 11," (Adv. Dkt. 42 at 13), ITS was required to schedule all "contingent and unliquidated claims or causes of action of every nature" it believed it might hold against the City. 11 U.S.C. § 541; *see also* Official Form 206A/B. Not only was the alleged claim against the City not identified on the Debtor's schedules, ITS did not provide notice to the City about its bankruptcy filing or the competing plans. To be clear, nowhere in the main case was the City listed as a notice party.

10. ***The Confirmed Plan Does Not Retain Jurisdiction over Any Claims against the City Specifically.*** ITS argues that the Plan retained jurisdiction over this action by virtue of a generic retention provision. (Adv. Dkt. 42 at 14-15.) ITS ignores the Sixth Circuit's holding that: "Retention of jurisdiction provisions, such as those in the Debtor's Plan, do not alter the overall scope of the bankruptcy court's post-confirmation jurisdiction." *Thickstun Bros.*, 344 B.R. at 521.

11. Moreover, in order to establish the close nexus requirement, "the claim must affect an integral aspect of the bankruptcy process." *Valley Historic L.P.*, 486 F.3d at 836-37, quoting *In re Resorts*, 372 F.3d at 167. A plan's retention of jurisdiction over a specific cause of action suggests litigation of that action is critical (i.e., integral) to the plan's implementation and therefore does "not raise the specter of unending jurisdiction" post-confirmation. *In re BWI Liquidating Corp.*, 437 B.R. 160, 166 (Bankr. D. Del. 2010); *see also In re AstroPower,* 335 B.R. 309 (Bankr. D. Del. 2005). For example, in *AstroPower*, the debtor's plan of reorganization specifically provided that the court retained jurisdiction over "[c]auses of action arising out of or in connection

with the Debtor's sale of stock" in the defendant's company and the court found jurisdiction over claims relating to the prepetition sale of the defendant's stock. 335 B.R. at 324.

12. Here, ITS admits that "[t]he Disclosure Statement and Plan … do not specify [any] potential claim [against the City]." (Adv. Dkt. 42 at 14.) ITS then breezily concludes that this material omission is "neither surprising, problematic, nor necessary." (*Id.*) ITS is wrong.

13. The confirmed Plan broadly purports to reserve post-confirmation jurisdiction generically over "all Litigation Claims." (Dkt. 245, Art. VII, ¶ D.) If ITS' claims are so "inextricably intertwined with ITS's chapter 11 case and the restructuring contemplated in the Plan" as ITS now asserts (*see* Adv. Dkt. 42 at 11), why would ITS not identify **any** claims against the City (let alone a purported *billion-dollar* claim) specifically as assets to be monetized under its Plan? ITS' failure to do so comports with the Plan itself, which in no way relies on the proceeds of any litigation against the City. Instead, the Plan is fully funded by ITS' cash reserves as of the Petition Date and AWL's Cash Contribution of $5 million." (Dkt. 245, Art. V, ¶ E.)

14. The instant dispute more closely parallels *In re Insilco Tech., Inc.*, 330 B.R. 512 (Bankr. D. Del. 2005), where a liquidating trustee brought breach of fiduciary duty claims against the debtor's board of directors after a chapter 11 plan assigned all of the estate's causes of action to the liquidating trust. *Id.*, 330 B.R. at 514-15, 523. The court denied "related to" jurisdiction because the *general* language of the plan and disclosure statement provided no "notice to creditors (or to the Court, for that matter) as to the importance of … any particular litigation." *Id.* at 525. As the court in *Insilco* opined, "[i]f the litigation [was] truly so critical to the Plan's implementation, it would have been more specifically described in the Disclosure Statement and Plan." *Id.*

15. ITS cites *In re Gordon Sel-Way, Inc.*, 270 F.3d 280, 288-89 (6th Cir. 2001) for the proposition that "broad, but clear" plan language retaining jurisdiction over post-confirmation

4894-0742-5238.2

litigation and other proceedings should be given effect. (Adv. Dkt. 42 at 14 n. 12.) However, *Sel-Way* is inapposite, as the Court concluded jurisdiction over the resolution of debtor's tax claim and the government's right to setoff was necessary "to hasten the consummation of the plan." 270 F.3d at 289. In contrast to *Sel-Way*, and discussed *infra,* ITS' Plan has been substantially consummated.

16.     ITS argues the language in the Plan and the Confirmation Order would be inadequate to preserve "**any**" claims if the Court accepts the City's argument. (Adv. Dkt. 42 at 15 n.14.) Courts are perfectly capable of determining which claims have a close nexus and which do not, and there is nothing wrong with imposing an obligation on parties to identify specific claims if they wish to be sure to preserve them, with notice to all. As this Plan fails to retain jurisdiction over any claims against the City specifically, and further does not rely on any litigation proceeds to be recovered from the City, this adversary proceeding has no close nexus to ITS' chapter 11 case.

17.     **ITS' Claims Against the City Have No Impact on the Bankruptcy Proceedings or the Substantially Consummated Plan**. ITS now asserts that claims against the City arising from the City's pre-bankruptcy termination of the OBOT lease, represent "[its] current best effort to … monetize the Sub-Ground Lease and implement the Plan's contemplated reorganization…." (Adv. Dkt. 42 at 12.) But this argument ignores key facts and the law.

18.     First, ITS seeks damages for its own benefit, not that of its creditors. As of the Effective Date, all property of the estate vested in the Reorganized Debtor, and "all Litigation Claims other than Avoidance Actions were "retained and reserved" for the benefit of the "Reorganized Debtor," **only**. (*Id.*, Art. VII, ¶¶ D, K.) The Plan did not, for example, create a liquidating trust to monetize the estate's claims for the benefit of creditors and retain this Court's ongoing jurisdiction over them. *See, e.g., McKinstry*, 442 B.R. at 574-76 (finding "related to" post-

- 6 -

4894-0742-5238.2

confirmation subject matter jurisdiction over reserved claims where the estate is replaced by a liquidating trust designed to prosecute claims for the benefit of unsecured creditors).[2]

19. Second, this adversary asserting California business torts plainly does not involve plan *implementation*. The claims do not require this Court to interpret the Plan or enforce any of its provisions. *Tew*, 2023 Bankr. LEXIS 2766 at *29-31. Nor will resolution of ITS' claims require this Court to address the "interpretation, implementation, consummation, execution, or administration" of any provision of the Plan. (*Id.*, Plan, Art. IX, ¶¶ A.1., A.8.)

20. Third, the Plan has been substantially consummated. A confirmed plan has been "substantially consummated" where: (1) all or substantially all of the property proposed by the plan to be transferred has been transferred; (2) the debtor or any successor to the debtor under the plan has assumed operation of the debtor's business or assumed possession of all or substantially all of the property dealt with by the plan; and (3) distributions under the plan have commenced. 11 U.S.C. § 1101(2). Here, the Plan does not rely on any proceeds from this adversary to pay creditors. ITS' August 1, 2024 post-confirmation report confirms all allowed administrative claims totaling $4,784,457 and all unsecured claims totaling $238,293, have been paid "100%." (Dkt. 522.)

**B.    The City Did Not Waive Its Jurisdictional Challenge to this Adversary Proceeding by Appearing in the Main Case Prior to Plan Confirmation**

21. Citing no legal support, ITS argues that the City waived any objection to the Court's post-confirmation subject matter jurisdiction over any claims that ITS could ever raise against it

---

[2] Moreover, "related to" post-confirmation jurisdiction requires more than "a vague notion that litigation might increase a dividend to creditors under the plan." *Equip. Finders*, 473 B.R. at 723-33 (collecting cases). By itself, the possibility that success in an adversary proceeding may result in an increased distribution to creditors does not suffice to find "related to" jurisdiction exists over that proceeding. *Tew,* 2023 Bankr. LEXIS 2766 at *23, citing *In re Reg'l Diagnostics, LLC*, 372 B.R. 3, 23 (Bankr. N.D. Ohio 2007).

- 7 -

under California law by filing an objection to confirmation of the competing plans in ITS' main case. (Adv. Dkt. 42 at 11-12.) ITS' arguments again ignore fact and law.

22. ITS' estoppel argument fails because a lack of subject-matter jurisdiction cannot be waived: subject matter jurisdiction "involves a court's power to hear a case, it can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 508, (2006) (objections to subject-matter jurisdiction may be raised at any time). Federal courts have an independent obligation to find jurisdiction, even in the absence of a challenge. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999); *see also In re Dr. C. Huff Co., Inc.*, 44 B.R. 129, 134 (Bankr. W.D.Ky. 1984) (it is the duty of every federal court to raise this subject matter jurisdiction as a "threshold inquiry" in all proceedings). It is axiomatic that parties cannot waive subject matter jurisdiction where none exists. *Dr. C. Huff Co.*, 44 B.R. at 134.

23. Even if subject matter jurisdiction flaws could be waived, which they cannot, participation in the main bankruptcy proceedings does not constitute consent to a post-confirmation lawsuit. Aside from certain narrow exceptions not applicable here, actions or proceedings for the recovery of money or property cannot be filed in bankruptcy other than as adversary proceedings. Fed. R. Bankr. P. 7001. Those adversary proceedings are separate lawsuits within the context of a particular bankruptcy case and have all of the attributes of a lawsuit, including the filing and service of a formal complaint and application, with certain modifications, of the Federal Rules of Civil Procedure, as provided in Part VII of the Federal Rules of Bankruptcy Procedure. *See, e.g., In re Landmark Fence Co.*, 2018 U.S. Dist. LEXIS 168425, at *25 (C.D. Cal. Sept. 28, 2018).

24. For a bankruptcy court to have jurisdiction over an adversary proceeding, the adversary proceeding must meet a separate jurisdictional test (here, by at least "relating to" the bankruptcy case, 28 U.S.C. § 1334(b). ITS cannot demonstrate that the filing of the City's

Confirmation Objection in the main case in any way constitutes the City's *consent* to this Court's post-confirmation subject matter jurisdiction over this adversary proceeding.

25. In sum, ITS' Objection provides this Court with no basis to conclude that the California tort claims asserted against this California City have any nexus to this Chapter 11 bankruptcy or the confirmed Plan, let alone a close one. Because a close nexus is *required* to support this Court's jurisdiction, these claims must be dismissed.

## II. THE TORT CLAIMS ALSO FAIL AS MATTER OF LAW ON THEIR FACE

### A. There is No Common Law Tort Liability for Cities in California

26. The City's Motion demonstrated that ITS failed to plead any statutory basis for a waiver of municipal immunity. In response, ITS argues that it now provides a statutory basis in its Objection. (Adv. Dkt. 42 at 16.) But that entirely misses the point. Pleading direct tort claims against a municipality without pleading the substantive legislative authorization is frivolous under California Government Code section 815 (and sanctionably so), and *requires* dismissal. *E.g.*, *Nahas v. City of Mountain View*, 2005 WL 2739303, at *7, 9 (N.D. Cal. Oct. 24, 2005); *see also* Cal. Gov. Code §815 ("*Except as otherwise provided by statute*: (a) A public entity is *not liable* for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person.") (emphasis added); *id*., Legis. Comm. Comments ("[T]he practical effect of this section is to eliminate any common law governmental liability for damages arising out of torts."); *Oliveira v. Cnty. of Madera*, 2017 WL 550060, at *7 (E.D. Cal. Feb. 9, 2017) (dismissing tortious interference claims identifying no statutory basis for liability); *VNT Prop. 1, LLC v. City of Buena Park*, 2015 WL 12762257, at *11 (C.D. Cal. Aug. 11, 2015) (same); *Bekele v. Ford*, 2011 WL 4368566, at *11 (N.D. Cal. Sept. 17, 2011) (same). ITS does not dispute that its Complaint fails to identify any statutory basis for its tort claims. That is fatal.

- 9 -

27. ITS' Objection brief is not, of course, an amended pleading, and regardless leave to amend should be denied. *See Stanley v. W. Michigan Univ.*, 105 F.4th 856, 867 (6th Cir. 2024) (standard for denying leave to amend includes: "undue delay, bad faith, or dilatory motive"; "failure to cure"; "undue prejudice"; or "futility of amendment") First, ITS has had "ample opportunity to amend the complaint, but has failed to do so." *Nino v. Flagstar Bank, FSB*, 766 F. App'x 199, 204 (6th Cir. 2019). The City's May 1, 2024 Motion put ITS on notice months ago and ITS never amended its Complaint. Even more, ITS and its counsel have been on notice since at least *2019*, when the California state court dismissed its business partner OBOT's identical tort claims for exactly this reason (in litigation funded by ITS and in which OBOT was represented by ITS' now-counsel). (Ex. A (Dkt. 25-1) at 39.) At the July 11, 2024 hearing, ITS laid bare its political motivations for this proceeding, and should not be permitted to extend these proceedings.

28. Amendment would also be futile. None of the three statutory provisions now cited by ITS waives cities' immunity for business interference torts. Cal. Government Code §815.2 provides a basic vicarious liability standard for acts of City employees; Cal. Government Code §820 makes employees themselves liable for torts; and Cal. Civil Code §1714 is the general tort standard applicable to private individuals. (Adv. Dkt. 42 at 16-17.) ITS thus seeks to piggyback these together: arguing that people are liable in tort, and the City is liable for the acts of its people; and *therefore, because the City is run by people,* the Legislature impliedly waived liability for these specific business torts, notwithstanding never enacting any statute doing so.[3]

---

[3] ITS also now purports to rely on Cal. Government Code §815.6, which is a limited immunity waiver for violations of "mandatory duties", but ITS pleads no mandatory duty causing its injuries. *See In re Groundwater Cases*, 154 Cal. App. 4th 659, 689 (2007) ("A plaintiff seeking to hold a public entity liable under Government Code section 815.6 must specifically identify the statute or regulation alleged to create a mandatory duty."). ITS' claims are expressly and entirely based on what it contends are the City's breaches of contracts with OBOT, but contractual duties cannot form the basis for this waiver of immunity. *Tuthill v. City of San Buenaventura*, 223 Cal. App. 4th 1081, 1091-92 (2014) (rejecting "the absurd result of making a public entity liable in tort for its contractual obligations").

- 10 -

29. ITS' argument does not work. The party that terminated the Ground Lease at issue (and allegedly caused all the damages ITS claims here, Adv. Dkt. 1 ¶¶ 54-62) was *the City*, not its employees. Statutes involving torts committed by employees are irrelevant. This is not a car accident by an employee driving to a city event in a city-owned car; this is the City itself exercising its right pursuant to contract to terminate a lease. *See* Cal. Gov. Code §815, Legis. Comm. Comments ("[T]his statute eliminates the common law liability of public entities for injuries inflicted in proprietary activities."). Indeed, if ITS were correct, cities' immunity from tort would be destroyed, as every action taken by a city is implemented by human beings.

30. ITS also neglects to inform this Court that the case it cites to claim that governmental liability is the "rule" and immunity is the "exception" (*Muskopf v. Corning Hospital Dist.*, 55 Cal. 2d 211, 219 (1961); Adv. Dkt. 42 at 16), was decided *in 1961*, two years prior to the California Tort Claims Act *of 1963*, which established the exact opposite. *Trinkle v. California State Lottery*, 71 Cal. App. 4th 1198, 1202 (1999) ("The statute amounts to a legislative declaration that governmental immunity from suit is the rule and liability the exception."). Countless cases recognize *Muskopf* as superseded. *E.g.*, *State Dep't of State Hosps. v. Superior Ct.*, 61 Cal. 4th 339, 347 (2015); *Cnty. of Santa Clara v. Superior Ct.*, 14 Cal. 5th 1034, 1046 (2023).

31. ITS also cites *City of Costa Mesa v. D'Alessio Invs., LLC*, 214 Cal. App. 4th 358, 377 (2013) for the proposition that immunity has been waived for these business torts, but the California court rejected this *exact* argument in the OBOT litigation. (Ex. A (Dkt. 25-1) at 39) (rejecting OBOT's identical argument based on *Costa Mesa*). *Costa Mesa* contained no analysis at all, and is contrary to the great weight of authority. *See supra* at ¶ 26 (collecting cases).[4]

---

[4] While this Court need not delve into the intricacies of California law in light of ITS' pleading failures, even if ITS had pled a valid statutory basis for these torts, the City is *separately immune* under California law for *all* the specific conduct ITS now claims was tortious (*see* Adv. Dkt. 42 at 17). Specifically, ITS claims City employees "continually misrepresent[ed] that the Sub-Ground lease is void," *id.*, but under Cal. Gov. Code § 818.8, "[a] public entity is not

- 11 -

4894-0742-5238.2

**B.     ITS' Claims Arising from Events in 2018 and 2019 are Fatally Time-Barred**

32.     ***The City is Not Estopped from Raising a Timeliness Defense***.  ITS leads with a meritless attempt to demonstrate that the City is somehow judicially estopped from raising a statute of limitations defense.  (Adv. Dkt. 42 at 19.)  But judicial estoppel applies to issues on which a party *prevailed* (as ITS acknowledges, *see id*.)  *Carroll v. United Compucred Collections, Inc.*, 399 F.3d 620, 624 (6th Cir. 2005) ("[B]efore the doctrine of judicial estoppel may be invoked, the prior argument must have been accepted by the court.").  The City did not prevail on its sole filing in the main case; the City Confirmation Objection was *overruled*.  (Dkt. 379 at 12.)

33.     Also, the City did not admit, anywhere, at any time, that business torts against the City by ITS would not accrue until the resolution of OBOT litigation.  The City accurately informed this Court of the status of the OBOT litigation—and said nothing about hypothetical ITS claims.  (*See* Adv. Dkt 42 at 19, citing Dkt. 276 at 12); *cf. New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (for judicial estoppel to apply, the party's positions must be "clearly inconsistent").  ITS' representation that it "relied" on the City's anodyne statement in an overruled Objection for delaying for nearly half a decade before filing its tort claims (*see* Adv. Dkt. 42 at 19) is absurd.

34.     ***The Discovery Rule Was Triggered in 2018.***  California law could not be clearer that the discovery rule is triggered by knowledge of the *factual basis* for a claim.  *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397-98 (1999) (a plaintiff "discovers the cause of action when he at least suspects a factual basis, as opposed to a legal theory, for its elements, even if he lacks knowledge thereof—when, simply put, he at least suspects that someone has done something wrong to him.")

---

liable for an injury caused by misrepresentation by an employee…"  Similarly, ITS claims City employees "refuse[d]" to issue estoppel and NDA certificates and "refus[ed] to process permit applications" (Adv. Dkt. 42 at 17), but under Cal. Gov. Code §818.4, "[a] public entity is not liable for an injury caused by the … failure or refusal to issue … any permit, license, certificate, approval, order, or similar authorization."

- 12 -

(citations omitted); *Ross v. Seyfarth Shaw LLP*, 96 Cal. App. 5th 722, 741 (2023). ITS has been aware of the facts on which it relies since 2018 (that the City terminated the OBOT Ground Lease in 2018, causing what ITS now says is the economic harm that led to its bankruptcy in 2019). ITS does not engage with any of this law, which is conclusive.

35. ITS' response is that it was not aware of "all of the elements" until the state trial court judgment in January 2024. But understanding of "all of the elements" is not the standard. *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005) ("Rather than examining whether the plaintiffs suspect facts supporting each specific legal element of a particular cause of action, we look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them."). The statute of limitations *is not tolled* while a court resolves legal issues. *Shropshire v. Fred Rappoport Co.*, 294 F. Supp. 2d 1085, 1101 (N.D. Cal. 2003). To this, ITS' only response is: "so what?" (Adv. Dkt. 42 at 20.) But the answer to "so what" is blackletter law. That law *conclusively* bars any attempt to bring these outdated claims.[5]

36. **ITS Has Not Pled a "Continuing Violation."** (Adv. Dkt. 42 at 20-21.) As a threshold and dispositive matter, the continuing violation doctrine (which has primarily been applied in the employment context), does not apply to tortious interference claims, as the California trial court held when OBOT raised these same claims. (Ex. A (Dkt. 25-1) at 37-38.) *See also, e.g.*, *Ramirez v. Navarro*, 2023 WL 1806847, at *14 (C.D. Cal. Jan. 5, 2023); *Beaver v. Omni Hotels Mgmt. Corp.*, 2021 WL 1174719, at *4 (S.D. Cal. Mar. 29, 2021); *DC Comics v. Pac. Pictures*

---

[5] ITS weakly attempts to argue that a statute of limitations defense is not appropriate at the pleadings stage. (Adv. Dkt. 42 at 20.) Like every other court, Sixth Circuit and California courts dismiss claims that are time-barred on the face of a complaint. *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013); *Fox*, 35 Cal. 4th at 809 (to withstand dismissal, plaintiff must plead non-conclusory facts sufficient to invoke discovery rule). And, as ITS' own cited case shows, statute of limitations issues are only "more appropriately addressed on summary judgment" when there are disputed factual issues relevant to the statute of limitations. (Adv. Dkt. 42 at 20, citing *Shropshire*, 294 F. Supp. 2d at 1101-02.) ITS points to no such fact disputes here, because it cannot; there are none.

- 13 -

4894-0742-5238.2

*Corp.*, 938 F. Supp. 2d 941, 950 (C.D. Cal. 2013); *Boon Rawd Trading Int'l Co. v. Paleewong Trading Co.*, 688 F. Supp. 2d 940, 952 (N.D. Cal. 2010).

37. Moreover, even if the doctrine could apply, ITS has not pled any "continuing violation." ITS has alleged two sets of facts at two distinct time periods: 1) the City's termination of the Ground Lease in 2018, and 2) the City's 2024 actions, which were required by and consistent with a stay pending the appeal of OBOT judgment, and for which the California court has now conclusively confirmed since the last hearing by rejecting OBOT's arguments. *See* **Exhibit A**, attached hereto. ITS pleads no facts regarding the intervening five years. A defendant's conduct must "have occurred with reasonable frequency," and the City's conduct separated by *five years* cannot possibly meet this standard. *Willis v. City of Carlsbad*, 48 Cal. App. 5th 1104, 1125 (2020); *see also Richards v. CH2M Hill, Inc.*, 26 Cal. 4th 798, 814 (2001) (giving "a biweekly paycheck" as example of "reasonably frequent" conduct).

38. There is also no "continuing violation" exception to the statute of limitations where the earlier-in-time conduct is sufficiently definitive that the plaintiff could have sued earlier. *Willis*, 48 Cal. App. 5th at 1127 (no continuing violation where "the employer makes clear to the employee in a definitive manner that the employee's requests have been rejected"). There could be no more definitive articulation of the City's intent than back in *2018* when it terminated the contract with OBOT. ITS simply *chose* not to pursue any claims against the City, either as part of the OBOT litigation or on its own, until well after the statute of limitations has run.[6]

---

[6] ITS' other cited case, *Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.*, 116 Cal. App. 4th 1375 (2004), is not even a "continuing violation" case. That case involved the application of the statute of limitations to monthly installment contracts, and applied an inapposite "continuous accrual" doctrine. *Id.* at 1388; *see Aryeh*, 55 Cal. 4th at 1199 ("[U]nlike the continuing violation doctrine … the theory of continuous accrual supports recovery only for damages arising from those breaches falling within the limitations period.").

- 14 -

4894-0742-5238.2

      **C.**      **ITS Claims Regarding Recent 2024 City Actions Lack Essential Elements**

39.    ***ITS Lacks the Enforceable Contract Required for the Tort of Interference with Contract***. ITS incorrectly claims that the City's recent actions refusing requests to perform post-OBOT judgment are torts. These actions are consistent with and *required* by the law staying judgments pending appeal in California, as the City previously explained (Adv. Dkt. 25 at ¶¶64–66). The California court has now conclusively ruled that *the City's position is correct*. (See July 30, 2024 Order, attached hereto: "the effect of the judgment is mandatory in substance" and the judgment is therefore "automatically stayed" pending appeal). The court agreed that the "status quo" that is protected pending appeal is that "the City terminated the Ground Lease and Development Agreement." (*Id.* at 6–7.) All arguments made by ITS here as to why the California litigation does not stay the project on appeal (such as that the judgment was "self-executing", (Adv. Dkt. 42 at 21-23) were conclusively rejected by the California court. As a matter of California law, there is no currently enforceable contract on which to base this interference with contract claim, and the City's recent actions *cannot* be a tort.

40.    ***ITS Has No Response to its Failure to Plead the Independent Wrongful Act Beyond Breach of Contract.*** Finally, the City's Motion also explained why the claim for tortious interference with prospective economic relations (i.e., the business deals to be made from this project) also lacks a fundamental element: an independent wrongful act separate and apart from any alleged breach of contract. (Adv. Dkt. 25 at ¶¶67–68.) ITS now expressly predicates its claim on the conclusion reached by the California trial court that the City breached a contract with OBOT. (Adv. Dkt. 1 at ¶¶68–69; 42 at 23–24.) These actions simply cannot also support this tort, under blackletter law. *See Huviron Co., Ltd v. Cctvstar Inc., No. SACV 14-1009-DOC (ANx),* 2014 WL 12689221, at *4 (C.D. Cal. Nov. 25, 2014). ITS' Objection brief does not address this flaw at all, because ITS has no response. (Adv. Dkt. 42 at 23–24.)

- 15 -

Dated: August 9, 2024    By: */s/ April A. Wimberg*
April A. Wimberg
Ryne E. Tipton
DENTONS BINGHAM GREENBAUM LLP
3500 PNC Tower, 101 South Fifth Street
Louisville, Kentucky 40202
Phone: (502) 587-3719
Email: april.wimberg@dentons.com
ryne.tipton@dentons.com

Barbara Parker, City Attorney (SBN 69722)
Maria S. Bee, Chief Asst City Attorney (SBN 167716)
Jamilah Jefferson, Supervising Deputy City Attorney (SBN 219027)
THE CITY OF OAKLAND
One Frank Ogawa Plaza, 6th Floor
Oakland, California 94612
Phone: (510) 238-3601
Email: bparker@oaklandcityattorney.org
mbee@oaklandcityattorney.org
jjefferson@oaklandcityattorney.org

Monique D. Jewett-Brewster (SBN 217792)
HOPKINS & CARLEY, ALC
The Letitia Building
70 S First Street
San Jose, CA 95113-2406
Phone: (408) 286-9800
Facsimile: (408) 998-4790
Email: mjb@hopkinscarley.com

Danielle Leonard (SBN 218201)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Phone: (415) 421-7151
Email: dleonard@altshulerberzon.com

Attorneys for Defendant,
CITY OF OAKLAND

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was served electronically upon all parties in the electronic filing system in this Adversary Proceeding.

Dated: August 9, 2024          By: */s/ April A. Wimberg*
                                                   April A. Wimberg

4894-0742-5238.2