UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| INSIGHT TERMINAL SOLUTIONS, LLC *et al.* | Case No. 19-32231 |
| Debtors | (Jointly Administered) |
| INSIGHT TERMINAL SOLUTIONS, LLC, as the Reorganized Debtor, | Adv. Pro. No. 24-03007-jal |
| PLAINTIFF, | Judge Joan A. Lloyd |
| v. | |
| CITY OF OAKLAND, | |
| DEFENDANT. | |

**PLAINTIFF'S SUR-REPLY TO REPLY TO OBJECTION TO DEFENDANT CITY OF OAKLAND'S MOTION TO DISMISS**

Comes now the above-styled Plaintiff, Insight Terminal Solutions, LLC ("Plaintiff," "Debtor," or "ITS"), by counsel, and hereby files this brief Sur-Reply to Reply to Objection to Defendant City of Oakland's Motion to Dismiss ("Objection"). In support of this Sur-Reply, Plaintiff states as follows:

**SUMMARY**

1. On August 9, 2024, the City[1] filed its Reply to Plaintiff's Objection to Defendant City of Oakland's Motion to Dismiss [Adv. Proc. Doc. 47]. The Reply contains two general sets

---

[1] Capitalized terms not otherwise defined herein shall take the meaning ascribed to them in Plaintiff's Objection to Defendant City of Oakland's Motion to Dismiss that was filed on July 9, 2024 [Doc. 42].

1

of rebuttal arguments by the City in response to the Plaintiff's Objection. The City's first set of arguments focuses on the Court's post-confirmation jurisdiction. (*See generally* City Reply 1-9). The City's second set of arguments address the nature and substance of the Plaintiff's tort claims asserted against the City in this adversary proceeding. (*See generally* City Reply 9-15). As explained below and for the reasons stated previously in the Plaintiff's Objection to the Motion to Dismiss [Adv. Proc. Doc. 42], both sets of arguments fail due to the facts, circumstances and history associated with this bankruptcy, along with supporting and applicable case law.

2. Before addressing the specifics of the City's rebuttal set forth in its Reply, Plaintiff wishes to answer the fundamental question posed by the City during the July 11, 2024 status hearing for this litigation. During the status hearing, counsel for the City of Oakland asked "why are we here [in bankruptcy court?]". *See* July 11, 2024 Hearing Transcript ("Hr'g Tr.") attached hereto as Exhibit A, (Hr'g Tr. 8:15). The answer is quite simple and is the lynchpin for denying the City's motion to dismiss and allowing the Plaintiff to move forward with its tort claims against the City here in this proceeding.

3. The parties are here because of the Sub-Ground Lease. The City continues to improperly attack the Sub-Ground Lease by asserting that the Sub-Ground Lease is invalid and expired because the Ground Lease was terminated by the City in 2018. This incorrect argument is fatally flawed because the Court's prior ruling that the Sub-Ground Lease was assumed as part of a confirmed Chapter 11 plan inherently means that the Sub-Ground Lease was valid and unexpired when it was assumed by ITS pursuant to a confirmed Chapter 11 plan of reorganization and in accordance with Section 365(a) of the Bankruptcy Code, which only permits the assumption of an "<u>unexpired</u> lease" of the debtor. *See* 11 U.S.C. § 365(a) (emphasis added).

2

4. Within that context, and for the reasons stated below, this adversary proceeding is properly asserted here and the motion to dismiss should be denied.

## SUR-REPLY ARGUMENTS

I. **The Court Maintains Post-Confirmation Jurisdiction Over Plaintiff's Tort Claims**

   A. **The City Admits This Court Has Jurisdiction.**

5. The City's own words and actions confirm that this Court has jurisdiction over the claims asserted by ITS against the City in this adversary proceeding. Specifically, the Court can simply refer to the City's Objections to Competing Chapter 11 Plans and Assumption of Sub-Ground Lease [Doc. 276], which was filed by the City in the bankruptcy case on August 4, 2020, during the contested competing Chapter 11 plan confirmation process. In the City's Objections, the City asserted key acknowledgements and admissions that readily support this Court's jurisdiction over the claims asserted by Plaintiff in this proceeding.

6. As a preliminary matter, the City has explicitly acknowledged during its participation in the bankruptcy case that the Sub-Ground Lease was the Debtor's "sole material asset." (City Obj. 8-9). In addition, the City admitted that it was attempting to determine that the Sub-Ground Lease is invalid, and specifically asserted the following in relevant part:

> ITS' rights under the aptly titled Sub-Ground Lease are entirely dependent on OBOT's rights under the Ground Lease — issues which are squarely before the California courts for adjudication . . .
>
> As explained above, the City takes the position that the Sub-Ground Lease is not subject to assumption in connection with confirmation of the competing Plans . . .
>
> In the instant cases, neither the Debtors nor AWL may resurrect and assume the Sub Ground Lease if the Ground Lease terminated prepetition. There can be no dispute that the termination of the Ground Lease is the subject of active litigation. **If the California court determines that the Ground Lease was, in fact, terminated in 2018, there is nothing left for the plan proponents to assume.**

3

(City Obj. 11-12 (emphasis added).)

7. The City's Objection, including its arguments in opposition to the assumption of the Sub-Ground Lease, were overruled by the Court, and the Sub-Ground Lease was assumed as a critical component of AWL's Confirmed Plan. Notwithstanding this Court's overruling of the City's Confirmation Objection, the City persists with its attack on the Sub-Ground Lease, which by direct and immediate extension, is an attack on the order confirming AWL's Chapter 11 Plan of Reorganization [Doc. 245-1] for ITS (the "Confirmation Order") that authorized and directed assumption of the Sub-Ground Lease. (*See* Confirmation Order [Doc. 379] ¶¶ 6.b., 15.)

8. During the July 11 status hearing, the City tactically mischaracterized the City's Confirmation Objection as a "placeholder objection," notwithstanding the fact that the Objection was <u>twelve</u> pages and included thorough briefing and arguments opposing the assumption of the Sub-Ground Lease and the confirmation of ITS's and AWL's competing plans. (Hr'g Tr. 18:8). The Plaintiff asserts that this "placeholder" moniker for the City's Objection is a strategic attempt by the City to mask the fact that the City was substantively involved and materially invested in its Objection to the Plan as a party-in-interest to the bankruptcy case.

9. Moreover, it should come as no surprise that the parties are here before this Court to resolve claims arising from the City's attack of the Sub-Ground Lease given the City's long-standing and continuing pattern of unjust and unlawful hostility toward the Debtor's development Project. In fact, this foreseeable possibility was foreshadowed by the Debtor at the inception of the bankruptcy. During ITS's and AWL's contested litigation over AWL's motion to dismiss the bankruptcy case, ITS asserted the following in its Objection to the Motion to Dismiss [Doc. 61]:

> The root cause of the Debtors' unresolved matters with OBOT and Autumn Wind stems from the "Oakland Overburden", an apt moniker appropriately utilized by this Court during the first day

4

> hearings in these Chapter 11 Cases. The gist of the Oakland Overburden is that Oakland city officials oppose the transportation and export of coal from the Project Terminal that is contemplated under ITS's development and operational plans for the Project under the Sublease . . . .
>
> The Debtors believe that, with sufficient time in these Chapter 11 Cases, they can negotiate resolutions with the City of Oakland that will allow the Project to move forward and enhance the value of the Sublease for the benefit of the Debtors' creditors. **However, if the Debtors cannot consensually remediate the Oakland Overburden by collaborating and partnering with the City of Oakland, then the Debtors further assert that this Court is or can be empowered to adjudicate or otherwise address the West Gateway Master Development Agreement dispute, which directly affects the [Sub-Ground Lease] that stems from the Agreement, along with any other Oakland Overburden issues.**

(*See* ITS's Obj. to AWL's Motion to Dismiss ¶¶ 28, 35; emphasis added.)

10. The City is well aware that the Sub-Ground Lease, the Debtor's key asset, is the kryptonite to its opposition to this Court's jurisdiction. Tellingly, the City hides from this debilitating weakness by avoiding it at all costs. To that end, the City meekly makes a mere two references to the "Sub-Ground Lease" or "Sublease" through the body of fifteen pages of Reply brief content. (City Reply ¶¶ 8, 17.) As to jurisdiction, the City says so much by saying so little when it comes to the unexpired Sub-Ground Lease, the critical asset and foundation of AWL's reorganization for ITS.

**B**.  **Applicable and Relevant Case Law Supports Bankruptcy Court Jurisdiction.**

11. The City also contorts or mischaracterizes various bankruptcy cases to argue that the Court lacks jurisdiction, as detailed below.

12. For example, the City cites *In re Equipment Finders, Inc. of Tennessee*, 473 B.R. 720 (Bankr. M.D. Tenn. 2012) in support of its opposition to this Court's jurisdiction. In that case, the court rejected "related to" jurisdiction where the reorganized debtor sued two non-creditors:

5

(a) for state law and contract claims; (b) six months post-confirmation; (c) where the plan was not dependent on litigation proceeds; and (d) where the confirmed plan vested all property in the reorganized debtor upon confirmation, such that after confirmation no estate nor any trust or fund existed for benefit of debtor's creditors." (*See* Reply ¶ 5; *see also Equip. Finders*, 473 B.R. 720 at 734.) In fact, the City's assessment of *Equipment Finders* ignores critical analysis from the court addressing the scope of the bankruptcy courts' broad "related to" jurisdictional reach. When examining related to jurisdiction, the court in *Equipment Finders* explained that "'related to' jurisdiction in the post confirmation period expands or contracts depending on the relationship between" the debtor and defendant, the confirmed plan, and the impact the matter will have on performance of the plan. *Equip. Finders,* 473 B.R. 720, at 731. The court continued to explain that in the facts before it, there was no "related to" jurisdiction because the disputes were not referenced in the amended plan or disclosure statement, and the secured creditors will not be affected by the outcome of the litigation; and therefore concluded that "[u]nder any construct of post confirmation jurisdiction . . . the adversary proceeding lies beyond bankruptcy court subject matter jurisdiction." *Id.* at 734. Here, the facts are the exact opposite. The status of the Sub-Ground Lease, which was confirmed under a Chapter 11 plan, was attacked by the City during the confirmation process as noted above and remains under continuing attack by the City now.

    13. In addition, the City cites *In re Wolverine Radio Co.*, 930 F.2d 1132, 1142 (6th Cir. 1991) in support of its jurisdictional arguments, asserting that the court in that case found that "situations may arise where an extremely tenuous connection to the estate would not satisfy the jurisdictional requirement.'" (*See* Reply ¶ 4.) *Wolverine Radio*, 930 F.2d 1132, at 1142 (internal quotations omitted). The City further claims that this is the situation in the case at hand. In fact, the court in *Wolverine Radio* failed to detail what would constitute a "tenuous connection", and

actually supported other courts that have found that a court will have "jurisdiction over proceedings that 'could conceivably have any effect' on the debtor." *Id*. Ultimately, the court found that because (i) the debtor had agreed pursuant to the plan to indemnify the third party whose interest was affected, and (ii) the debtor could be affected by the controversy and could be bound by res judicata or collateral estoppel, it was unable to conclude that there would be "no conceivable effect" and found there to be jurisdiction. *Id.* at 1143. In actuality, *Wolverine Radio* is favorable to ITS because that court ultimately found that the correct standard for a finding of jurisdiction is that the controversy "could conceivably have any effect on the debtor," *id.* at 1142 (internal quotations omitted), a very low standard which is clearly met in this case (contrary to the City of a "high hurdle for related to jurisdiction" that is not supported by its cited cases). The dispute over the Sub-Ground Lease is central to the Debtor's Plan and future. The Plaintiff will prove at trial that the City caused actual monetary and economic harm to the Debtor and is liable for that harm.

14.  The City also relies on *Valley Historic L.P. v. Bank of New York*, 486 F.3d 831, 836-37 (4th Cir. 2007) to oppose "related to" jurisdiction. (*See* Reply ¶ 6.) In *Valley Historic L.P.* the Fourth Circuit found that there was "no conceivable bankruptcy administration purpose to be served by the Debtor's adversary proceeding because the Plan made no provision for the use of any recovery from the adversary proceeding but instead provided for the satisfaction of the Debtor's obligations entirely from the post-petition rents and earnings of the Debtor through the operation of its real estate." *Valley Historic L.P*, 486 F.3d at 837 (internal quotations omitted). Unlike the reorganized debtor in *Valley Historic L.P.*, ITS paid creditors with third-party funding, and is being deprived of post-effective date earnings due to the City's attack on the Debtor's primary asset, the assumed Sub-Ground Lease, which ITS cannot monetize as contemplated under the AWL Confirmed Plan.

15. In short, the City's attacks on the Court's jurisdiction are baseless and must be rejected.

## II. The Court Maintains Post-Confirmation Jurisdiction Over Plaintiff's Tort Claims

### A. The City's Reply Mischaracterizes the Facts and Distorts the Law to Manufacture a Baseless Argument on Statutory Basis.

16. The City cannot dispute that in California a "public entity and its employees [may] be held liable for intentional interference with prospective economic advantage and trade libel." *City of Costa Mesa v. D'Alessio Invs., LLC* (2013) 214 Cal. App. 4th 358, 378. That conclusion stems from California Government Code section 820 (allowing public employees to be liable for acts or omissions to the same extent as private persons) and Govt. Code § 815.2 (allowing public entities to be liable for the acts or omissions of its employees acting within the scope of their employment). *See H & M Assocs. v. City of El Centro* (1980) 109 Cal.App.3d 399, 406–07. Plaintiff's claims are statutorily permitted.

17. The City's reply brief does not address *Costa Mesa* head on, simply asserting that the California Superior Court previously "rejected this *exact* argument in the OBOT litigation." (Reply ¶ 31 (emphasis in original).) First, that ruling was on a different complaint brought by a different party based on different circumstances that occurred at different times. To imply some sort of preclusive effect here is disingenuous. Further, the City overreaches and ignores what the California Superior Court actually said. In sustaining the demurrer, the Court only summarized each party's arguments and did not state the specific basis for sustaining the demurrer. Indeed, the Court acknowledged that "[c]ourts have noted that it is 'possible for a public entity and its employees to be held liable for intentional interference with prospective economic advantage and trade libel,'" quoting <u>and not rejecting</u> *Costa Mesa*. (*See* Ex. A (Dkt. 25-1) at 39.) The City's

mischaracterization of the Superior Court's handling of *Costa Mesa* does nothing to negate its holding.

18.     In another unavailing attempt to escape *Costa Mesa*, the City cites three cases as "the great weight of authority" that it claims hold the opposite (Reply ¶ 31). But each case is inapposite. In *Oliveira*, the court first held that the *pro se* plaintiff failed to exhaust his administrative remedies and dismissed on that basis alone. *Oliveira v. Cnty. of Madera*, No. 1:16-cv-01626-DAD-SKO, 2017 WL 550060, at *7 (E.D. Cal. Feb. 2, 2017). The Court then stated, in *dicta*, that the tort claims would also fail because the *pro se* plaintiff had failed to state the statutory basis pursuant to which the individual employees would be immune under Section 821.6, which explicitly immunizes public employees from involvement in prosecutions (but not other torts). *Id.* at *7-8. Similarly, in *VNT Property 1*, the Court dismissed the tort claims against the City of Buena Vista "[b]ecause the City Employees are immune" for their role in a code enforcement investigation so "the City is also [i]mmune under the Claims Act." *VNT Property 1, LLC v. City of Buena Park*, No. SA CV 15-0007-DOC (RNBx), 2015 WL 12762257, at *10-*11 (C.D. Cal. Aug. 11, 2015). Specifically, because Section 821.6 of the Claims Act provides express immunity for prosecuting an administrative proceeding, the City was not liable in *VNT Property* for tort damages. Here, however, the City has refused to fulfill its administrative duty in processing permits, and Section 821.6 is inapplicable. Finally, in *Bekele*, the interference claims were dismissed because the complaint was wholly deficient: "Nowhere does plaintiff allege a valid contract between plaintiff and a third party. Thus, plaintiff's claims for intentional and negligent interference with contractual rights fail." *Bekele v. Ford*, No. C 11–01640 WHA, 2011 WL 4368566, at *11 (N.D. Cal. Sept. 17, 2011).

9

19. None of the City's cases displace *Costa Mesa*'s holding that a public entity can be liable for intentional interference with prospective economic advantage; *Costa Mesa* should be followed here.

    **B.    The City Stretches the Facts and Law to Argue that the Claims are Time-Barred.**

20. The City's reply brief distorts the law and facts to argue that the claims are time-barred. First, judicial estoppel is not strictly limited to instances where the party's position was adopted by the court. "Though perhaps **not necessarily confined** to situations where the party asserting the earlier contrary position there prevailed, it is obviously more appropriate in that situation." *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1167 (4th Cir. 1982) (emphasis added); *see also Jackson v. Cnty. of Los Angeles* (1997) 60 Cal. App. 4th 171, 183 n.8 ("[J]udicial estoppel is an equitable doctrine . . . . Consequently, we cannot rule out the possibility that, in a future case, circumstances may warrant application of the doctrine even if the earlier position was not adopted by the tribunal.") (citations omitted). The doctrine is designed "to protect the integrity of the judicial process," "prevent[] fraud on the courts," disallow "a party from changing its position over the course of judicial proceedings when such positional changes have an adverse impact on the judicial process," and "protect against a litigant playing fast and loose with the courts." *Gottlieb v. Kest* (2006) 141 Cal. App. 4th 110, 131 (citations and internal quotations omitted). "It seems patently wrong to allow a person to abuse the judicial process by first [advocating] one position, and later, if it becomes beneficial, to assert the opposite." *Jackson v. Cnty. of Los Angeles* (1997) 60 Cal. App. 4th 171, 181 (quoting Comment, *The Judiciary Says, You Can't Have It Both Ways: Judicial Estoppel—A Doctrine Precluding Inconsistent Positions* (1996) 30 Loyola L.A. L.Rev. 323, 327) (alteration in original).

21. Here, the City represented to this Court that the California court would determine the parties' rights under the contract and plan proponents could rely upon that ruling: "If the California court determines that the Ground Lease was, in fact, terminated in 2018, there is nothing left for the plan proponents to assume." (City Confirmation Objection at 12.) The opposite is equally true—if the California court determines (as the Superior Court has) that the Ground Lease was not terminated and that the City acted in bad faith, then ITS' claims are viable. Plaintiff detrimentally relied upon this assertion and forestalled bringing its claims here. The City should be judicially estopped from now reversing field and contradicting its prior representations to this Court.

22. Second, the City imputes knowledge to Plaintiff that it did not, and could not, have to falsely set an earlier date to trigger discovery of the causes of action. Plaintiff was not a party to the contracts between OBOT and the City, which were the subject of the California state court litigation. Although Plaintiff believed the City was taking improper action, it could not know if those actions comported with the terms of the contracts with OBOT prior to a judicial determination. Because Plaintiff could not know that the City acted in bad faith and breached the contracts until the Superior Court ruled, Plaintiff did not have sufficient knowledge until that ruling. *See April Enter., Inc. v. KTTV* (1983) 147 Cal. App. 3d 805, 832 (holding that the discovery rule applies where breaches "can be, and are, committed in secret and, moreover, where the harm flowing from those breaches will not be reasonably discoverable by plaintiffs until a future time"). And upon the Court issuing that decision, Plaintiff timely brought this action.

23. Further, the City's argument that Plaintiff lacks the essential element of an enforceable contract while the case is stayed pending appeal (Reply ¶ 39) only serves to confirm that the statute of limitations was not triggered in 2018; the City is contradicting its own position

11

as it attempts to have its cake and eat it too. The City is wrong that the improper termination of the contracts has not already been rescinded. Staying the judgment while the City attempts to appeal it does not equate to overturning the judgment. The Superior Court decision simply temporarily stayed *enforcement* of the judgment; nothing negates the fact that the City has now been adjudicated—for the first time—to have breached the contracts. It is that fact that is relevant to giving Plaintiff here the knowledge that the City's bad acts give rise to causes of action for interference.

24. Plaintiff sufficiently alleges a continuing violation. The Complaint makes clear that as soon as the Superior Court issued its Statement of Decision finding the City breached the contract, the City resumed its course of conduct in refusing to issue an estoppel certificate and NDA and refused to issue permits—the exact improper actions it had taken in 2018. (Compl. ¶¶ 58-60.) The City now claims that too much time had passed between its bad acts to be of reasonable frequency. But this is only because the City's improper actions brought the project to a standstill. The City cannot use the fact that its actions in November 2018 caused significant delay to the project that ceased all activity when it resumed that very same violative activity once the Superior Court ruled that the termination was improper. The City's actions are part of the same course of conduct and are a continuing violation.

C. **The City's Argument that Essential Elements are Lacking is Just Wrong.**

25. Finally, the City argues that Plaintiff's claims fail because a breach of contract is not an adequate independent act. "These actions simply cannot also support this tort, under blackletter law," the City proclaims, citing *Huviron Co., Ltd v. CCTVSTAR Inc.*, No. SACV 14-1009-DOC (ANx), 2014 WL 12689221, at *4 (C.D. Cal. Nov. 25, 2014). (Reply ¶ 40.)

12

26. The City is wrong. No contract between the City and ITS exists and ITS has not asserted a breach of contract claim against the City. Rather, ITS alleges that the City has interfered with ITS' contract with OBOT. California courts recognize the viability of tortious interference claims against a third-party's interference with a plaintiff's existing contract with another party. *Ixchel Pharma v. Biogen* (2020) 9 Cal. 5th 1130. Unlike here, *Huviron* deals with allegations *between co-parties to a contract*, and an allegation that the breach of that contract caused the counter-claimant to lose contracts with other third parties. *Id*. at *1. The counter-claimants' first two causes of action were for breach of contract and breach of the duty of good faith and fair dealing and the court held that the interference claims were wholly duplicative of the breach claims. *Id.* at *1, *4. Not so here. As the City admits, "[t]he City has never had any contractual or business relationship with ITS." (Mot. ¶ 46.) Plaintiff has not, and cannot, allege a breach of contract claim against the City because no contract between these parties exists; the interference claims are not duplicative.

27. Plaintiff has adequately alleged claims against the City, and those claims should proceed. If, alternatively, the Court finds dismissal warranted, Plaintiff respectfully requests leave to amend its pleadings.

## CONCLUSION

28. During the July 11 status hearing on the City's motion to dismiss, counsel for the City audaciously asserted that "[t]he law will decide in California whether [the Sub-Ground Lease] is valid or not." (Hr'g Tr. 35:17-18.) This bold assertion directly challenges this Court's prior plan confirmation ruling from four years ago that authorized the assumption of the Sub-Ground Lease. That ruling implicitly recognized that the Sub-Ground Lease was, in fact, not terminated due to the inherent nature of assumable leases under Section 365(a) of the Bankruptcy Code, which only permits the assumption of <u>unexpired</u> leases.

13

29. Plaintiff also reiterates that the jurisdiction of this Court is clearly established based on the City's voluntary participation in the bankruptcy proceeding (including its failure to object to the retention of jurisdiction in AWL's Chapter 11 Plan of Reorganization), the related-to nature of the claims, and the broad jurisdiction retained under the Confirmation Plan. Moreover, ITS's claims are timely and well-pled, as they are not barred by the California Tort Claims Act, statute of limitations, or any automatic stay pending appeal. The City's actions have created a continuous violation, and ITS's claims are rooted in both pre- and post-bankruptcy conduct by the City. Therefore, the City's motion to dismiss should be denied.

Dated: August 16, 2024                                                     Respectfully submitted,

*/s/ Robert M. Hirsh*
Robert M. Hirsh
NORTON ROSE FULBRIGHT US, LLP
1301 Avenue of the Americas
New York, New York 10019-6022
Telephone: (212) 318-3400
Robert.hirsh@nortonrosefulbright.com

*/s/ Barry W. Lee*
Barry W. Lee
MANATT PHELPS & PHILLIPS, LLP
One Embarcadero Center, 30th Floor
San Francisco, California 94111
Telephone: (415) 291-7450
bwlee@manatt.com

*/s/ Skyler M. Sanders*
Skyler M. Sanders (pro hac vice in pending)
PARSONS BEHLE & LATIMER
36 Professional Plaza, Suite 200
Rexburg, Idaho 83440
Telephone: (208) 557-1953
ssanders@parsonsbehle.com

-and-

/s/ *Andrew D. Stosberg*
Andrew D. Stosberg
GRAY ICE HIGDON, PLLC
3939 Shelbyville Road, Suite 201
Louisville, Kentucky 40207
Telephone: (502) 625-2734
astosberg@grayice.com

*COUNSEL FOR PLAINTIFF*
*INSIGHT TERMINAL SOLUTIONS, LLC*

## CERTIFICATE OF SERVICE

    It is hereby certified that on August 16, 2024 a true and correct copy of the foregoing was served electronically through the Court's CM/ECF system to all parties having entered an appearance in this proceeding, including Defendant's counsel.

                                                                */s/ Andrew D. Stosberg*
                                                                COUNSEL FOR THE PLAINTIFF