## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| INSIGHT TERMINAL SOLUTIONS, LLC, *et al.*[1], | Case No. 19-32231 |
| Debtors. | (Jointly Administered) |
| | |
| INSIGHT TERMINAL SOLUTIONS, LLC, as the Reorganized Debtor, | Adv. Proc. No. 24-03007-jal |
| Plaintiff, | Judge Joan A. Lloyd |
| v. | |
| CITY OF OAKLAND, | |
| Defendant. | |

## MEMORANDUM OPINION GRANTING MOTION TO DISMISS ADVERSARY PROCEEDING FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM

This matter is before the Court on a Motion to Dismiss (Adv. Dkt. 25) filed by Defendant the City of Oakland (the "City"). Among the many grounds offered for dismissal, the City contends the Court lacks subject matter jurisdiction over this proceeding. "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 74 U.S. 506, 514 (1869); *see also Tew v. ED&F Man Cap. Mkts., Ltd. (In re Tew)*, No. 23-05042, 2023 Bankr. LEXIS 2766, (Bankr. E.D. Ky. Nov.

---

[1] The Debtors in these chapter 11 cases are Insight Terminal Solutions, LLC (Case No. 19-32231) and Insight Terminal Holdings, LLC (Case No. 19-32232). The Court has ordered the joint administration of theses chapter 11 cases. The docket in this Case No. 19-32231 should be consulted for all matters affecting the above listed cases.

16, 2023).   Reorganized Debtor and Plaintiff Insight Terminal Solutions, LLC ("ITS" or

"Reorganized Debtor") brings a post-plan confirmation adversary proceeding against the City for

$1 billion in alleged lost future profits from a yet-to-be constructed or operated bulk commodity

terminal to be located in Oakland, California, alleging two California law business interference

torts.   Specifically, ITS claims that the City, starting back in 2014, interfered with private

development on City-owned land, for which ITS entered into a sublease ("Sublease") in late

2018.   ITS claims that the City terminated the Ground Lease with its business partner, the

primary tenant, in 2018, and now blames the City for its 2019 chapter 11 bankruptcy filing.

Thus, ITS, which is now based in California, seeks to vindicate California state law claims based

on conduct of a California entity, in California, and does not rely upon nor seek to vindicate

rights that "arise under" by the Bankruptcy Code or "arise in" this bankruptcy proceeding.   These

state law torts are not sufficiently related to this proceeding to invoke this Court's jurisdiction

post-confirmation.   The Court therefore agrees subject matter jurisdiction is lacking and grants

the Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1).

In addition, the City contends that even if this Court had jurisdiction, the two California

business tort claims asserted here by ITS would fail to state a claim as a matter of law, raising a

number of dispositive defenses, including the two-year of statute of limitations.   The Court

agrees that were it to reach these issues, it would find that ITS has not stated a valid claim, and

therefore also grants the Motion to Dismiss pursuant to Rule 12(b)(6).

## PERTINENT FACTS AND PROCEDURAL HISTORY

## I.      ITS' CHAPTER 11 BANKRUPTCY CASE.

ITS filed a voluntary chapter 11 petition on July 17, 2019 ("Petition Date") in the above-

captioned Court.   ITS was, at the time, a Kentucky entity originally created for purposes of

partnering with a California-based developer called Oakland Bulk and Oversized Terminal

("OBOT"), which was the primary leaseholder of City-owned land at the former Oakland Army Base in Oakland, California.  OBOT and ITS intended to partner in the development of a bulk terminal project.

In its Schedule A/B filed on August 22, 2019, ITS disclosed its interest as subtenant in a proposed sublease (the "Sublease") of 19 acres at the former Oakland Army Base, signed on September 24, 2018.  (Dkt. 63 at p. 10.)  The City is not a party to the Sublease.  ITS scheduled the current value of the Sublease as "unknown" in both its original and amended Schedule A/B. (*Id.*; Dkt. 105-1 at p. 3.)   ITS did not disclose any cause of action it may have held against the City as of the Petition Date in its original or amended Schedule A/B.  (Dkts. 63, 105-1.)   Nor did ITS list the City as a notice party in its petition or schedule the City as a creditor.  (Dkts. 1, 63, 105-1.)

On April 27, 2020, California-based Autumn Wind Lending, LLC ("AWL") filed its Disclosure Statement and plan of reorganization ("Plan"). (Dkts. 245, 245-1.)  According to the Disclosure Statement, the Sublease is ITS' "sole **potential** asset of substantial value".  (Dkt. 245, Art. III, ¶ A) (Emphasis added.)  AWL's Plan provides that all existing Interests in ITS shall be cancelled and rendered null and void as of its Effective Date, such that AWL shall be the sole member of the Reorganized Debtor when the Plan takes effect.   (Dkt. 245, Art. V, ¶ A; Art. VI, ¶ D.)

AWL's Plan also provides for payment in full of all allowed general unsecured claims through a cash contribution provided by AWL and guaranteed by AWL's solvent affiliate:

> **The Plan will be funded by** ITS' cash reserves as of the Petition Date, and **AWL's Cash Contribution of $5 million** for the benefit of Allowed Class 3 (General Unsecured Claims), **with any remaining funds to revert to AWL**. (*Id.*, Art. V, ¶ E.)
>
> …

Per the affidavit of Vikas Tandon, Chief Investment Officer of Ridgedale Partners, LLC, the ultimate parent of AWL and JMB Capital Partners Master Fund, L.P. ("Fund"), **the Fund has "unencumbered liquid assets in excess of $150 million" and will guarantee all Allowed Claims** (except certain "Subordinated Claims") **in excess of the Cash Contribution by AWL**. (*Id.*, Ex. B attached thereto, ¶¶ 1-2.)

AWL's Plan also expressly contemplates that the Reorganized Debtor would operate its

business post-confirmation without the need for the bankruptcy court's supervision or assistance:

> Except as otherwise explicitly provided in the Plan, **on the Effective Date, all property comprising the Estate (including Litigation Claims…) shall vest in the Reorganized Debtor** free and clear of all Claims, Liens, charges, interests, and encumbrances. Furthermore, as of and following the Effective Date, **the Reorganized Debtor may operate its business** and use, acquire, and dispose of property **and settle and compromise Claims, Interests, or Litigation Claims without supervision of the Bankruptcy Court**, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or the Confirmation Order.

(Dkt. 245, Art. VI, ¶ B) (Emphasis added.)

The Plan broadly defines the term "Litigation Claims" to include "any and all actions"

that ITS could assert against "any Person or any entity" "prior to the Petition Date or during [its]

case":

> **"Litigation Claims"** means <u>any and all actions, claims, proceedings, causes of action, suits</u>, accounts, demands, controversies, agreements, promises, **rights to legal remedies, rights to equitable remedies, rights to payment and claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, and whether asserted or assertable directly or derivatively, in law, equity or otherwise, including actions brought prior to the Petition Date, actions under chapter 5 of the Bankruptcy Code, including any Avoidance Action, and actions <u>against any Person or entity</u>** for failure to pay for products or services provided or rendered by the Debtor, all claims, suits or proceedings relating to enforcement of the Debtor's intellectual property rights, including patents, copyrights and trademarks, and all claims or causes of action seeking recovery of the Debtor's or the Reorganized Debtor's accounts receivable or other receivables or rights to payment created or arising in the ordinary course of the Debtor's or the Reorganized Debtor's businesses, **based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case, including through the Effective Date**.

(Dkt. 245, Art. I, ¶ A.40) (Emphasis added.)

Finally, the Plan reserves the Court's **<u>non-exclusive</u>** jurisdiction over all matters arising out of, and relating to, the Chapter 11 Cases and the Plan, including the jurisdiction to:

> (i) adjudicate **any and all adversary proceedings … that may be commenced or maintained pursuant to the Chapter 11 Case, the Plan, or that were the subject of proceedings before the Bankruptcy Court, prior to the Effective Date**, and all controversies and issues arising from or relating to any of the foregoing (*see id.*, Art. IX, ¶ A.2.); and (ii) hear and determine **disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order**.

(Dkt. 245, Art. IX, ¶¶ A.2, A.8) (Emphasis added.)

ITS filed a competing plan of reorganization on May 26, 2020, followed by an amended plan of reorganization on June 19, 2020. (Dkts. 217, 247.)  While ITS' plans contained several, pertinent provisions similar to those in AWL's Plan, ITS proposed to fund its plan through a future cash contribution of approximately $50 million by the State of Utah.  (Dkt. 247 at p. 21, Exh. A.)   Neither AWL nor ITS proposed to fund their plans with any litigation proceeds from the City.

On November 3, 2020, the Court entered its order confirming AWL's Plan (the "<u>Confirmation Order</u>") (Dkt. 379.)  On November 5, 2020, AWL filed its notice confirming that the Effective Date of the Plan occurred on the same date. (Dkt. 381.)   As set forth in ITS' Post-confirmation Reports filed with this Court, allowed general unsecured claims in the total amount of $238,293 have been paid in full.  (*See, e.g.,* Dkt. 541 at p. 7.)

## II.   THE COMPLAINT INITIATING THIS ADVERSARY PROCEEDING.

On March 11, 2024, ITS filed its adversary complaint against the City, alleging two California state law business interference torts.  (Adv. Dkt. 1.)  ITS largely reaches back in time to allege that City action and events prior to bankruptcy, leading up to the City's November 2018 termination of its lease with the primary leaseholder OBOT, caused ITS to file for bankruptcy in 2019.

OBOT and the City have been engaged in federal and state court litigation over their respective alleged contract breaches with respective to the West Gateway land and terminal project since 2016.  In 2024, a California trial court entered judgment on a breach of contract claim in favor of OBOT, and the City appealed.  ITS alleges in its Complaint to this Court, that it requested the City move forward with the project subsequent to the California ruling in favor of its business partner, and the City refused, claiming the judgment was stayed pending appeal.

The allegations regarding the City's actions terminating the Ground Lease with OBOT in 2018, and refusing ITS' request to move forward in late 2023, are the operative allegations on which ITS bases its claim that the City has tortiously interfered with contract and prospective business operations for this project.

As put forth in the Complaint, in 2013, the City and California Capital Investment Group ("CCIG"), an Oakland-based real estate development firm chosen by the City to help develop the former Army Base, entered into a 2013 Development Agreement ("DA") which governed the regulatory framework that would apply to the development projects on the City's former Army Base property.  (Adv. Dkt. 1 at ¶¶ 2, 18, 20-21.)   In June 2016, the City invoked the DA provisions for new health and safety regulations to pass an Ordinance and Resolution regulating the storage and handling of coal in Oakland, including at the proposed West Gateway project, resulting in the first litigation between OBOT and the City.  (*Id*. at ¶¶ 30-31 & Ex. B pp. 4-33.)

In December 2016, OBOT sued the City in federal court in California, challenging the City's authority to enact and apply the coal Ordinance and Resolution to the project, including as a breach of the DA.  *Oakland Bulk & Oversized Terminal, LLC v. City of Oakland* ("*OBOT I*"), Case No. 16-cv-07014-VC (N.D. Cal.).  (Adv. Dkt. 1 at ¶¶ 30-31 & Ex. B pp. 4-33.)   In May 2018, the Court concluded the City had not met the requisite standard for imposing new health and safety legislation, and ruled the City thereby breached the DA.  (*OBOT I*, 321 F. Supp. 3d at

988-89; *see also* Adv. Dkt. 1 at ¶¶ 30-31 & Ex. B pp. 4-33.)  The City appealed, and the Ninth

Circuit eventually affirmed.  *Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*

("*OBOT II*")*,* 960 F.3d 603, 607 (9th Cir. 2020); *see also* Adv. Dkt. 1 at ¶¶ 32-33.

The outside deadline set forth in the Ground Lease for OBOT to commence construction

of the terminal and related rail was August 14, 2018.   (Adv. Dkt. 1 at ¶ 35 & Ex. B at 34.)

OBOT failed to meet that deadline, claiming *force majeure* extension based on actions including

the 2016 Ordinance that were known or foreseeable at the time of the Ground Lease.  (*Id*. at ¶¶35-

36 & Ex. B at 34.)  The City rejected those claims, called default and terminated the Ground

Lease pursuant to the contract terms on November 22, 2018.  (*Id.*)

In December 2018, after the City terminated the Ground Lease, OBOT sued the City

again in state court, the Alameda County Superior Court (the "Superior Court"), this time for

hundreds of millions of dollars.  (*OBOT v. City of Oakland* ("*OBOT III*"), Alameda County

Superior Court Consolidated Case Nos. RG18930929 and RG20062473; Adv. Dkt. 1 at ¶ 39 &

Ex. B.)   OBOT initially pled both contract and tort claims, including tortious interference with

the Sublease.  (Adv. Dkt. 25-1, Ex. A [City Request for Judicial Notice, Ex. A (Alameda

Superior Court's *Order Sustaining Defendant's Demurrer to Complaint*)].[2])  On May 16, 2019,

the Superior Court dismissed the tort claims on the ground that OBOT had failed to identify a

statutory predicate for suing the City in tort and otherwise failed to state a claim.  OBOT did not

attempt to reallege those torts in its operative amended complaint, upon which the California

court conducted trial.  (Adv. Dkt. 1, Ex. B.)

---

[2] Both parties provided the Court with filings from the California state court litigation:  ITS attached a judgment and order on liability to its Complaint (Adv. Dkt. 1, Ex. A and B), and the City requested judicial notice of three additional documents from that litigation (Adv. Dkt. 25-1, Ex. A).  The Court agrees these documents are either incorporated by reference into the Complaint or proper subjects of judicial notice and therefore may be considered in resolving this Motion.

After a bench trial, the Superior Court determined that OBOT had failed to meet the contract construction deadlines, but concluded that events of *force majeure* after May 15, 2018 warranted granting an extension, and therefore ruled the City's termination of the Ground Lease was a breach.  (Adv. Dkt 1, Ex. B.)   OBOT asserted its right to elect either a specific performance remedy of a contract deadline extension plus $20 million in equitable damages, or $160 million in present-day value of its claimed approximately $1 billion in lost future profits from the Sublease over the life of the Ground Lease as contract damages.  (Adv. Dkt. 25-1, Ex. A.)  The Superior Court rejected OBOT's lost profits claims as entirely speculative and granted zero dollars in lost future profits (including both the $20 million in incidental damages and reducing the $160 million in contract damages to $300,000 in actual costs).  (*Id.*)  After OBOT elected specific performance remedy of a contract extension, the Superior Court entered judgment on January 23, 2024.  (Adv. Dkt. 1, Ex. A.)  The City filed its notice of appeal of the Superior Court's judgment the same day.  (Adv. Dkt. 25-1, Ex. C.)

Although ITS alleges that the City's actions on which it now bases these claims were "proven at trial twice before, in both federal and state courts" (and therefore known to ITS for years), it nonetheless now asserts that it is only the knowledge of the January 23, 2024 state court judgment that triggered its ability to file suit against the City.  (Adv. Dkt. 1, ¶¶ 1, 9.)  ITS also omitted certain exhibits from the Superior Court record, including that court's ruling on demurrer dismissing OBOT's identical tort claims (Dkt. 25-1, Ex. A), the court's decision on remedy, rejecting all of OBOT's claimed lost profits (valued at approximately $1 billion, reduced to present value of $160 million) as entirely speculative (*id.*, Ex. B), and the City's appeal (*id.*, Ex. C.)  On the heels of OBOT losing those claims, ITS now also seeks here over $1 billion in lost future profits, arising from the very same alleged City behavior (Adv. Dkt. 1, ¶ 62.)

**DISCUSSION**

## I.    THE COURT HAS JURISDICTION TO DECIDE THE PENDING MOTION.

Bankruptcy courts are courts of limited jurisdiction. *E.g.*, *Wasserman v. Immormino (In re Granger Garage, Inc.),* 921 F.2d 74, 77 (6th Cir. 1990) (citations omitted) ("The subject matter jurisdiction of the bankruptcy court is limited to that which congress specifically grants.").  A federal court must assess its subject matter jurisdiction in each case. *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 376-77 (1940); *Pratt v. Ventas, Inc*., 365 F.3d 514, 521 (6th Cir. 2004) ("'The court has the authority to pass upon its own jurisdiction . . . .'" (citation omitted)).

## II.    THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THIS PROCEEDING.

ITS broadly alleges in conclusory fashion that "[j]urisdiction is proper under 28 U.S.C. § 1334(b)."  (Adv. Dkt. 1, ¶ 13.)   However, this Court concludes that this proceeding neither "arises under" the Code, "arises in" ITS' chapter 11 case, and is insufficiently "related to" ITS' bankruptcy case to confer this Court with subject matter jurisdiction over ITS' Complaint.  ITS has failed to provide this Court with any valid basis for this Court to assert jurisdiction over the California state law tort claims ITS now brings against the City, a non-creditor entity, more than four years post-plan confirmation.

### A.    The legal standard applicable to motions under Civil Rule 12(b)(1).

Defendant City seeks relief under Civil Rule 12(b)(1), incorporated into this proceeding under Bankruptcy Rule 7012(b).  When subject matter jurisdiction is challenged pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the plaintiff has the burden of proving jurisdiction by a preponderance of the evidence in order to survive the motion.  *Moir v. Greater*

*Cleveland Reg'l Transit Auth*., 895 F.2d 266, 269 (6th Cir. 1990).   As succinctly summarized by the Eastern District of Kentucky bankruptcy court:

> There are multiple federal statutes that define the scope of the bankruptcy court's subject-matter jurisdiction. First, under 28 U.S.C. § 1334(b), "the district courts shall have original but not exclusive jurisdiction of all civil proceedings **arising under** title 11, or **arising in** or **related to** cases under title 11." Second, 28 U.S.C. § 157(a) authorizes the district courts to refer "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 ... to the bankruptcy judges for the district."

*Elam v. Nationstar Mortg., LLC (In re Elam)*, Adv. Pro. No. 21-00098, 2022 Bankr. LEXIS 1340, at *8-9 (Bankr. W.D. Tenn. May 4, 2022), *aff'd, Elam v. Nationstar Mortg., LLC (In re Elam)*, No. 22-8012, 2023 Bankr. LEXIS 2135 (B.A.P. 6th Cir. Aug. 29, 2023) (emphasis added.)   "Without jurisdiction the court cannot proceed at all in any cause.   Jurisdiction is the power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."   *Tew v. ED&F Man Cap. Mkts., Ltd. (In re Tew)*, No. 23-05042, 2023 Bankr. LEXIS 2766, at *3 (Bankr. E.D. Ky. Nov. 16, 2023) (citations omitted) (dismissing post-confirmation adversary proceeding for lack of subject matter jurisdiction).

### B.    This civil proceeding does not arise under the Bankruptcy Code.

"The phrase 'arising under title 11' describes those proceedings that involve a cause of action created or determined by a statutory provision of title 11 . . . ." *In re Trans-Industries, Inc.*, 419 B.R. 21, 26-27 (Bankr. E.D. Mich. 2009) (citations omitted); *Mich. Employment Sec. Comm'n (In re Wolverine Radio Co.),* 930 F.2d 1132, 1144 (6th Cir. 1991) (stating civil proceedings "arising under" title 11 "involve causes of action created or determined by a statutory provision of title 11"), e.g., an action to avoid a preferential transfer under § 547 of the Code. *Moyer v. Bank of America (In re Rosenberger)*, 400 B.R. 569, 572-73 (Bankr. W.D. Mich.

2008).  The only claims alleged by ITS in the complaint are torts that plainly arise under state law, not the Bankruptcy Code.

**C.     This civil proceeding does not "arise in" a case under the Bankruptcy Code.**

Civil proceedings "arising in" a case under title 11 "are those that, by their very nature, could arise only in bankruptcy cases." *In re Wolverine Radio*, 930 F.2d at 1144.   Proceedings arising in a case under Title 11 "are not based on any right expressly created by Title 11, but nevertheless, would have no existence outside of the bankruptcy," such as "administrative matters; counterclaims by the estate against persons filing claims against the estate; orders to turn over property of the estate and determinations of the validity, extent or priority of liens." *McDaniel v. ABN AMRO Mortgage Group,* 364 B.R. 644, 647 (Bankr. S.D. Ohio 2007).  The claims asserted in the complaint are state law tort claims that are commonly asserted in civil litigation between business parties outside of the bankruptcy context, and therefore do not qualify for this jurisdiction.  *Tew*, 2023 Bankr. LEXIS 2766, at *16-17.

**D.     This post-confirmation proceeding is insufficiently "related to" a case under the Bankruptcy Code.**

A bankruptcy court's jurisdiction over a civil proceeding as "related to" a bankruptcy case constitutes the "outer limits of the district court's referral to its bankruptcy judges[.]" *Evans & Assoc. v. Macnichol (In re Macnichol)*, 240 B.R. 731, 732 (Bankr. S.D. Ohio 1999).  Thus, the Supreme Court has made clear that "a bankruptcy court's 'related to' jurisdiction cannot be limitless" and "bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308, n.6 (1995).

For cases brought post-confirmation, "[a]t the most literal level, it is impossible for the bankrupt debtor's estate to be affected by a post-confirmation dispute because the debtor's estate ceases to exist once confirmation has occurred."  *Papas v. Buchwald Capital Advisors, LLC, et*

*al. (In re Greektown Holdings, LLC)*, 728 F.3d 567, 577 (6th Cir. 2013) (quoting, *inter alia*, *Resorts Int'l Financing, Inc. v. Binder (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 165 (3d Cir. 2004)). Sixth Circuit courts therefore confirm that jurisdiction over a related proceeding diminishes after chapter 11 plan confirmation. *See, e.g., Tew*, at 20-21; *In re St. James Nursing & Physical Rehab. Ctr., Inc*., 645 B.R. 220, 249-50 (Bankr. E.D. Mich. 2022); *In re CS DIP, LLC*, Case No. 12-01573 (jointly administered), 2015 Bankr. LEXIS 3435, at *27 (Bankr. M.D. Tenn. Oct. 9, 2015). In addition, courts refer to post-confirmation jurisdiction as "sharply" reduced, "somewhat" reduced, "fairly narrow," and "pared down." *See In re Ventilex USA, Inc*., 509 B.R. 140, 143 (Bankr. S.D. Ohio 2014); *CS DIP, LLC*, 2015 Bankr. LEXIS 3435, at *33; *In re Wisper, LLC*, Case No. 13-10770, 2015 Bankr. LEXIS 2505, at *14-16 (Bankr. W.D. Tenn. Feb. 13, 2015); *Eastland Partners, Ltd. P'ship v. Brown (In re Eastland Partners Ltd. P'ship)*, 199 B.R. 917, 919-20 (Bankr. E.D. Mich. 1996).

The post-confirmation test for "related to" jurisdiction is exacting, requiring a "*close nexus* to the bankruptcy plan or proceeding." *See Thickstun Bros. Equip. Co. v. Encompass Servs. Corp. (In re Thickstun Bros. Equip. Co.)*, 344 B.R. 515, 521 (B.A.P. 6th Cir. 2006) (emphasis added). To satisfy this standard, a dispute must affect an "integral part of the bankruptcy proceeding." *See E. Ky. Power Coop*., 2006 WL 6351092, at *2; *see also Valley Historic Ltd. P'ship v. Bank of N.Y*., 486 F.3d 831, 837 (4th Cir. 2007).

In the seminal case adopting the "close nexus" standard, the Third Circuit explained: "Matters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus." *Resorts Int'l*, 372 F.3d at 167. Stated another way, a civil proceeding is only "related to" a case under title 11 "*if the outcome could conceivably have an effect on the estate being administered in bankruptcy*." *Greektown Holdings*, 728 F.3d at 577 (citations omitted) (emphasis added).

As recently examined in the *Tew* case from the Eastern District, courts also assess whether "related to" jurisdiction exists using a variety of factors.  *See, e.g., Tew,* 2023 Bankr. LEXIS 2766, *17; *BWI Liquidating Corp. v. Rialto (In re BWI Liquidating Corp.),* 437 B.R. 160 (Bankr. D. Del. 2010); *Equip. Finders, Inc. v. Fireman's Fund Ins. Co. (In re Equip. Finders, Inc.)*, 473 B.R. 720, 733-34 (Bankr. M.D. Tenn. 2012) (collecting cases).  Potential contribution of a litigation damages award to a debtor's assets does not qualify as "related to" jurisdiction.  *Id*. at *22-23 (citing *Equip. Finders, Inc.*, 473 B.R. 720.)

ITS attempts to create a connection between its current tort claims and this bankruptcy proceeding by claiming that the City's actions in 2018 caused the 2019 ITS bankruptcy.  Indeed, in the *Tew* case, the Eastern District recently rejected a claim that an allegation that the defendant's actions caused the bankruptcy was sufficient to invoke related to jurisdiction.  *Id.,* 2023 Bankr. LEXIS 2766, *35-37.  This case presents an even stronger basis for rejecting jurisdiction, based on the following factors, which all weigh against jurisdiction:

### 1.      The City is neither a notice party nor creditor in ITS' case.

As is clear from the main case docket, the City did not file a proof of claim; ITS did not schedule the City as holding a file a prepetition claim; and ITS did not even include the City as a notice party.  Nor did ITS (or AWL) ever schedule any contingent or unliquidated claims against the City.   While the City objected to confirmation of either of the competing plans proposed by ITS and AWL (*see* Dkt. 276), it did not do so as a creditor or because it had any other relationship with the Debtor or the Plan (but to inform the Court, as a third-party, of facts regarding then-pending state court litigation).  (*Id*.)  As the City's connection to this case is minimal at best, this factor militates against jurisdiction.

### 2.      ITS reorganized in bankruptcy.

The rationale for the narrowing of "related to" jurisdiction post-confirmation starts with the premise that a reorganized debtor is emancipated by the confirmation of a reorganization plan.  Upon confirmation, the reorganized debtor emerges and enters the marketplace in its reincarnated form.  "From that point forward, it is just like any other corporation; 'it must protect its interests in the way provided by the applicable non-bankruptcy law,' without any special swaddling."  *See Tew*, 2023 Bankr. LEXIS at *26-27 (quoting *Boston Reg'l Med. Ctr., Inc. v. Reynolds (In re Boston Reg'l Med. Ctr., Inc.)*, 410 F.3d 106-07).  To permit otherwise would risk an unwarranted expansion of federal court jurisdiction but also "would unfairly advantage reorganized debtors by allowing such firms to funnel virtually all litigation affecting them into a single federal forum."  *Boston Reg'l Med. Ctr.*, 410 F.3d at 106.  This case is a prime example of exactly that:  the Reorganized Debtor (now based in California) engaging in forum shopping rather than properly adjudicating California state law claims against a California city in California courts.

AWL confirmed its Plan of reorganization in November 2020, to take ownership and control of ITS through the cancellation of its interests as of the Effective Date and the issuance of New Membership Interests under the terms of the Plan to develop or actively market and sell the Sublease.  (Dkt. 245, Art. II, at 4-5.)  As AWL (standing in ITS' shoes post-confirmation) undisputedly opted to "reenter the marketplace," as compared to a debtor that liquidated its assets and stopped operating, this second factor weighs heavily against finding "related to" jurisdiction over this proceeding.

### 3.      The causes of action in the complaint are not "rooted in" bankruptcy.

As articulated by the Eastern District of Kentucky Bankruptcy Court, "[p]ertinent to whether 'related to' jurisdiction exists is whether a complaint's allegations concern activity in or

leading to the bankruptcy case.   If the claims in a proceeding are rooted in bankruptcy, a stronger argument exists to find 'related to' jurisdiction…. ¶ Conversely, when causes of action are not rooted in bankruptcy and could be pursued outside of bankruptcy, a connection between the proceeding and the bankruptcy case or plan is more tenuous." *Tew*, 2023 Bankr. LEXIS 2766, at *29-31 (dismissing for lack of subject matter jurisdiction where civil RICO and state law claims asserted against defendant did not pertain to activity in debtors' bankruptcy case). Examples of cases "rooted in" bankruptcy include a scheme to defraud debtors involving a sham chapter 11 case, *id*. (citing *Tang v. Citic Capital Holdings Ltd.*, Case No. 21-17008-JXN-AME, 2022 U.S. Dist. LEXIS 184505, at *18 (D.N.J. Oct. 7, 2022)), and the transfer of a plan asset without notice in a chapter 11 sale and confirmation process*. Id.*

In contrast, exactly as in *Tew*, the tort claims at issue here "do not pertain to activity in Debtors' bankruptcy case" at all, but rather alleged conduct well before the bankruptcy proceedings (the City's termination of the Ground Lease in November 2018) and well after (the 2024 City inaction post-judgment in light of the stay). *Id*., 2023 Bankr. LEXIS 2766, *30-31. As in *Tew*, an allegation that the actions of the City somehow led to the bankruptcy does not suffice*. Id.* at *31 (concluding claims were not "rooted in" the bankruptcy where "Plaintiffs allege Defendant's conduct in 2012-2015 subjected Debtors to litigation initiated in 2018, which, due to mounting legal fees, ultimately forced Debtors to seek bankruptcy protection in 2020."). Thus, this factor also strongly supports dismissal.

### 4.    ITS' claims do not have a close nexus with the bankruptcy.

Ancillary litigation arising out of post-confirmation conduct does not provide a sufficient nexus to warrant "related to" jurisdiction over a resulting adversary proceeding. *See, e.g., Resorts Int'l*, 372 F.3d at 163, 169-71 (rejecting argument that malpractice claims by liquidating trustee against accounting firm providing audit reports post-confirmation were related to the

underlying bankruptcy case).  Similarly, "claims based on pre-petition conduct that were asserted post-confirmation, but could have been brought prior to confirmation[,] lack a nexus sufficient to confer jurisdiction upon the bankruptcy court." *Fairchild Liquidating Trust v. New York (In re Fairchild Corp.),* 452 B.R. 525, 531-32 (Bankr. D. Del. 2011) (concluding "a breach of contract claim based on pre-petition conduct filed post-confirmation belongs to the reorganized debtor, without regard to when and how the claim arose." (footnotes omitted)).

ITS asserts claims, for the first time, post-plan confirmation, that largely challenge pre-confirmation actions.  And, ITS never asserted prior to plan confirmation that the City caused its bankruptcy, and it cannot invent that belated (and implausible) allegation now, post-confirmation, in a transparent effort to manufacture bankruptcy jurisdiction.  And, ITS' only claims that are not facially time-barred are based on alleged City conduct in late 2023 and 2024, which cannot possibly have played any role in ITS' bankruptcy filing in 2019.

In addition, as in *Tew*, "One aspect of the analysis is simple here; none of the claims in the complaint would require a reviewing court to interpret Debtors' Plan or to enforce any of its provisions."  (*Id.,* 2023 Bankr. LEXIS 2766, at *29-31.)  This action does not involve the enforcement of any orders issued by this Court in the bankruptcy case, nor will resolution of the ITS' claims require this Court to address the "interpretation, implementation, consummation, execution, or administration" of the Plan.  (*See* Dkt. 245, Art. IX, ¶¶ A.1., A.8.)

Moreover, even if ITS could pursue a recoverable claim against the City, the Plan does not provide for ITS to use any such proceeds to increase creditor recoveries thereunder.  In fact, the outcome of this adversary proceeding would have zero impact to the estate.  Under the terms of the Plan confirmed nearly four years ago, AWL provided funding through a cash contribution sufficient to pay all allowed general unsecured claims; its funding even was guaranteed by its solvent affiliate.  (Dkt. 245-1, Art. VI, ¶¶ D., E.)  As the Class 3 General Unsecured Claims

under the Plan are unimpaired (*see id.*, Art. III, ¶ B.), and the Plan was substantially consummated, the outcome of this litigation therefore has no nexus (let alone a "close nexus") to the Plan or ITS' bankruptcy case.

The confirmed Plan does not preserve jurisdiction over ITS' claims.

In tandem with the "close nexus" requirement, some courts examine whether a plan "preserves" subject matter jurisdiction over the claims at issue. *See, e.g., Tew,* 2023 Bankr. LEXIS 2766 at *35-36 (collecting cases); *see also Ventilex*, 509 B.R. at 143; *Shandler v. DLJ Merch. Banking, Inc. (In re Insilco Techs., Inc.)*, 330 B.R. 512, 525 (Bankr. D. Del. 2005). Here, the retention of jurisdiction provision in the Plan does not specifically identify or describe, any claim ITS may have or bring against any party, let alone identify these claims against the City. (Dkt. 245-1, Art. VII, ¶ K.) Generic language regarding ITS' right to pursue claims against unidentified third parties is wholly insufficient to preserve ITS's non-bankruptcy claims against the City in this forum. *See, e.g., BWI Liquidating Corp.*, 437 B.R. at 165-66 ("a Plan must specifically describe a cause of action in order to retain 'related to' jurisdiction.").

As all of the factors identified in the Sixth Circuit doctrine as pertaining to "related to" jurisdiction weigh against jurisdiction, the Court finds that it lacks post-confirmation subject matter jurisdiction over ITS' complaint. The Court therefore grants the City's motion to dismiss ITS' complaint pursuant to Civil Rule 12(b)(1).

## III. ITS HAS NOT STATED A CLAIM UNDER CALIFORNIA LAW

Even if this Court were to assume jurisdiction over this proceeding, it also dismisses ITS' complaint for failure to state a claim under California law, for each of the following reasons: 1) ITS' claims are time-barred to the extent they rest on events outside of the two-year statute of limitations; 2) California law bars suing a public entity in directly tort without any statutory basis, as ITS has attempted to do here; 3) the City's more recent actions pled in the Complaint

(refusing to move the development forward while an appeal is pending in California state court) are not a tort where there is no enforceable contract with which to interfere; and 4) ITS cannot base its business interference claims in California on a predicate of only on an alleged breach of contract by the City.

### A.    Claims Arising from City Actions from 2014 to 2018 Are Plainly Time-Barred

The statute of limitations under California law for the business interference torts ITS attempts to assert here is two years.  Cal. Gov. Code § 945.6(a)(2); *Lundeen Coatings Corp. v. Dep't of Water & Power*, 232 Cal. App. 3d 816, 827 (1991); *DC Comics v. Pac. Pictures Corp.*, 938 F. Supp. 2d 941, 948 (C.D. Cal. 2013).  The operative events pled by ITS occurred far longer than two years prior to the filing of the complaint in April 2024.  ITS claims that the City caused its bankruptcy in 2019, relying on events alleged from 2014 to 2018, when the City terminated the Ground Lease for the West Gateway land with ITS' business partner OBOT.  The ITS claims based on alleged City action from 2014 through 2018 are plainly facially time-barred. *See Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013) ("[D]ismissal is warranted if 'the allegations in the complaint affirmatively show that the claim is time-barred'").

None of ITS' arguments save these time-barred allegations.  ITS' primary argument appears to be that it could not have known the basis of its claims until a California state court resolved the City's legal liability for breach of the Ground Lease in late 2023, the litigation between the City and OBOT.  But the City correctly argues that the discovery rule only tolls a statute of limitations if a party is unaware of essential *facts, not legal theories.*   As the California Supreme Court has explained, a plaintiff "discovers the cause of action when he at least suspects *a factual basis, as opposed to a legal theory, for its elements*, even if he lacks knowledge thereof—when, simply put, he at least suspects that someone has done something wrong to him." *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397-98 (1999) (emphasis added) (citations omitted);  *see*

*also See, e.g.*, *Shropshire v. Fred Rappoport Co.*, 294 F. Supp. 2d 1085, 1101 (N.D. Cal. 2003) (finding "no authority" under California law to support the argument that "under the discovery rule, the interference claims did not accrue … even though the plaintiff is aware of the facts giving rise to injury—until a legal determination has been made in a separate action as to the wrongfulness of a defendant's conduct"); *Cypress Semiconductor Corp. v. Superior Ct.*, 163 Cal. App. 4th 575, 585 (2008) ("It is not the law that accrual of a cause of action depends upon the existence, as a matter of fact, of a winning claim."). ITS' claim does not (and cannot, as discussed further below), turn on the state court's decision that the City is liable for breach of contract. ITS' claim relies on the *facts*, that it has pled, which it was plainly aware of as of 2018.

ITS also argues, without basis, that the City is estopped from raising a statute of limitations defense, but that is easily rejected. The City said nothing about potential torts against it earlier in the bankruptcy proceedings (likely because **ITS failed to disclose these contingent claims in its schedules**) and is in no way estopped from defending against them now. Finally, ITS also argues the City has committed a continuing violation. The facts plead by ITS, where the operative events that ITS claims caused its damages occurred back in 2018 (when the City terminated the primary lease for the development), followed by six years of litigation with OBOT, and then the City's refusal to disturb an appeal, are not a continuing violation of the sort that tolls a statute of limitations.

ITS also pleads more recent acts – specifically, inaction – by the City in late 2023 and 2024 as the basis for this tort. Specifically, ITS says that following a state court decision against the City and in favor of business partner OBOT, ITS and OBOT demanded the City move forward with the development project, and the City said no. The inaction about which ITS complains is explained by the City as its adherence to California law staying judgments pending appeal, an interpretation of law that was confirmed by order of the state court in which that

litigation is pending.  (Adv. Dkt. 25-1 at pp. 23-25.)   For the reasons discussed in the following section, any alleged torts based on the City's more recent actions, within the statute of limitations, fail for additionally dispositive reasons.

**B.      Cities Cannot Be Sued Directly in Tort in California**

ITS' complaint asserts two California tort claims directly against the City, in seeming defiance of blackletter California law that "there is no common law tort liability for public entities in California." *In re Groundwater Cases*, 154 Cal. App. 4th 659, 688 (2007); *see also Freeny v. City of San Buenaventura*, 216 Cal. App. 4th 1333, 1346 (2013) (cities are "presumptively immune from tort liability"). The only tort liability for public entities in California is that created specifically by statute: "direct tort liability of public entities must be based on a specific statute declaring them to be liable." *Eastburn v. Reg'l Fire Prot. Auth.*, 31 Cal. 4th 1175, 1183 (2003); see Cal. Gov. Code §815 ("*Except as otherwise provided by statute*: (a) A public entity is *not liable* for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person.") (emphasis added); *id.*, Legis. Comm. Comments ("[T]he practical effect of this section is to eliminate any common law governmental liability for damages arising out of torts.").  California law requires that a complaint must specifically plead the statutory basis for any tort claim against a city to state a claim: to "state a cause of action, every fact essential to the existence of statutory liability must be pleaded with particularity, including the existence of a statutory duty." *Herd v. Cnty. of San Bernardino*, 311 F. Supp. 3d 1157, 1171 (C.D. Cal. 2018) (applying California law); *Lopez v. S. Cal. Rapid Transit Dist.*, 40 Cal. 3d 780, 795 (1985).

Here, ITS has pled that it complied with the procedures of the California Torts Claims Act by serving a notice letter, but has failed to pled *any* statutory basis for asserting two business interference torts against the City.  (Adv. Dkt. 1.)  As the City correctly argues, that is fatal under

long-standing California authority.  Because ITS' Complaint fails to assert any statutory basis for the City's liability for these business torts (*Id.*, ¶¶ 65-88), its claims therefore must be dismissed. *See Nahas v. City of Mountain View*, 2005 WL 2739303, at *7, 9 (N.D. Cal. Oct. 24, 2005) (dismissing tortious interference claims against a public entity for failure to identify any statutory basis for liability and reminding plaintiffs of their Rule 11 obligations); *Oliveira v. Cnty. of Madera*, 2017 WL 550060, at *7 (E.D. Cal. Feb. 9, 2017) (dismissing tortious interference claims identifying no statutory basis for liability); *VNT Prop. 1, LLC v. City of Buena Park*, 2015 WL 12762257, at *11 (C.D. Cal. Aug. 11, 2015) (same); *Bekele v. Ford*, 2011 WL 4368566, at *11 (N.D. Cal. Sept. 17, 2011) (same).

Despite the City's argument pointing out that one cannot sue a city directly in tort in California, ITS did not amend its complaint to assert any statutory basis, at any time in the approximately seven months since the City's motion was served.  *See Stanley v. W. Michigan Univ.*, 105 F.4th 856, 867 (6th Cir. 2024) (standard for denying leave to amend includes: "undue delay, bad faith, or dilatory motive"; "failure to cure"; "undue prejudice"; or "futility of amendment").  ITS has had "ample opportunity to amend the complaint, but has failed to do so." *Nino v. Flagstar Bank, FSB*, 766 Fed. App'x 199, 204 (6th Cir. 2019).  The City's May 1, 2024 Motion put ITS on notice months ago and ITS never amended its Complaint.  Even more, ITS and its counsel have been on notice since at least *2019*, when the California state court dismissed its business partner OBOT's identical tort claims for exactly this reason (in litigation funded by ITS and in which OBOT was represented by ITS' now-counsel). (Adv. Dkt. 25-1 at p. 39.)

ITS argues that it should be forgiven for failing to pled or amend to state the statutory basis, because it has pointed to statutes in its Opposition brief.  The Court is not inclined to grant this request, but regardless, the City's argument that the statutes named by ITS do not create a specific statutory waiver of government immunity appears to this Court to be correct.

None of the three statutory provisions now cited by ITS actually waives cities' immunity for business interference torts.  Cal. Government Code §815.2 provides a basic vicarious liability standard for acts of City employees; Cal. Government Code §820 makes employees themselves liable for torts; and Cal. Civil Code §1714 is the general tort standard applicable to private individuals. (Adv. Dkt. 42 at 16-17.)  ITS thus seeks to piggyback these together: arguing that people are liable in tort, and the City is liable for the acts of its people; and *therefore, because the City is run by people,* the Legislature impliedly waived liability for these specific business torts, notwithstanding never enacting any statute doing so.  This argument would create tort liability for any kind of tort, because a city is run *by people*, which plainly inconsistent with the California law requiring specific statutory authorization for a waiver of governmental immunity. ITS goes too far, without any actual statute in California authorizing these torts.

ITS also tries to convince this Court that under California law, governmental liability in tort is the "rule" rather than the "exception."  However, as the City correctly points out, the case on which ITS relies for this proposition, *Muskopf v. Corning Hospital Dist*., 55 Cal. 2d 211, 219 (1961) [Adv. Dkt. 42 at 16], was decided *in 1961*, two years prior to the California Tort Claims Act *of 1963*, which established the exact opposite. *Trinkle v. California State Lottery*, 71 Cal. App. 4th 1198, 1202 (1999) ("The statute amounts to a legislative declaration that governmental immunity from suit is the rule and liability the exception."). Countless cases recognize *Muskopf* as superseded. *E.g.*, *State Dep't of State Hosps. v. Superior Ct.*, 61 Cal. 4th 339, 347 (2015); *Cnty. of Santa Clara v. Superior Ct.*, 14 Cal. 5th 1034, 1046 (2023).

ITS cites a single case from the appellate court in California, *City of Costa Mesa v. D'Alessio Invs., LLC*, 214 Cal. App. 4th 358, 377 (2013) for the proposition that a city's immunity has been waived for these business torts, but this Court notes that this decision contains no reasoning or analysis.   The City points out that the California court handling the

litigation between the City and OBOT rejected this *exact* argument in dismissing OBOT's tort claims against the City (*see* Adv. Dkt. 25-1 at p. 39, Exh. A) (rejecting OBOT's identical argument based on *Costa Mesa*). This Court follows the California authority requiring a specific statutory waiver of governmental immunity, and concludes that ITS' general statutes, saying *nothing* about suing cities for these business torts, are not sufficient.

### C.    Defendant City's Actions Consistent with a Stay Pending Appeal Ordered by the California State Courts Are Not a Tort

ITS argues that the City is liable in tort for interference with contract and prospective economic relations because the City refused to move the development project forward after OBOT prevailed on its breach of contract claim. What remains after removing the time-barred claims is ITS' contention that the City recently, post-state court judgment, refused to alter the status quo to move the project forward by recognizing the Sublease. (Adv. Dkt. 1 at ¶¶ 9, 40.) But **the termination of these contracts is exactly the legal issue pending on appeal**. To state a claim for tortious interference with contract under California law, a plaintiff must plead "a *valid* contract between plaintiff and a third party." *Pac. Gas & Elec. Co. v. Bear Stearns & Co.,* 50 Cal. 3d 1118, 1126 (1990) (emphasis added); *see also Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Village Square Venture Partners,* 52 Cal. App. 4th 867, 879-80 (Cal. App. 4th Dist. 1997) "[A] cause of action for intentional interference with contractual relations requires an underlying enforceable contract.") (emphasis added). Courts strictly enforce this pleading requirement to avoid "blur[ring] the analytical line between the two interference torts" and in "recognition that the 'formally cemented economic relationship' created by an 'existing contract' is entitled to greater solicitude than a relationship falling short of that." *Bed, Bath & Beyond of La Jolla, Inc.,* 52 Cal. App. 4th at 879 *(quoting Della Penna v. Toyota Motor Sales, U.S.A., Inc.,* 11 Cal. 4th 376, 392 (1995)). Therefore, "[i]f there is no enforceable contract, for whatever reason," there is no intentional interference with contract claim. *PMC, Inc. v. Saban Ent., Inc.,* 45 Cal. App. 4th

579, 602 (Cal. App. 2d Dist. 1996), *disapproved of on other grounds by Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal. 4th 1134 (2003) (emphasis in original); see also Rest. 2d, Torts § 766, Comment f. ("The particular agreement must be in force and effect at the time of the breach that the actor has caused.").

The City's recent actions refusing requests to perform post- OBOT judgment are not torts. These actions are consistent with and **required** by the law staying judgments pending appeal in California, as the City previously explained (Adv. Dkt. 25-1 at ¶¶ 64–66). The California court has now conclusively ruled that **the City's position is correct**: "the effect of the judgment is mandatory in substance" and the judgment is therefore "automatically stayed" pending appeal). The court agreed that the "status quo" that is protected pending appeal is that "the City terminated the Ground Lease and Development Agreement." (Adv. Dkt. 47 (attaching July 30, 2024 Order), at 6–7.)[3]   All arguments made by ITS here as to why the California litigation does not stay the project on appeal (such as that the judgment was "self-executing", (Adv. Dkt. 42 at 21-23) were conclusively rejected by the California court.  If that court's judgment is stayed pending appeal (which it is, because the court said it was), then there is no enforceable contract with which the City could have interfered.  As a matter of California law, there is no currently enforceable contract on which to base this interference with contract claim, and the City's recent actions *cannot* be a tort.

### D.    Business Torts Cannot Be Predicated Solely on an Alleged Breach of Contract

ITS claims it brings its tort claims to this Court **because** the City was held to have breached the Ground Lease with OBOT.   It is black-letter law in California that "[t]o establish a claim for interference with prospective economic advantage … a plaintiff must plead that the

---

[3] The Court also agrees this Order of the California state court is appropriate subject for judicial notice.

defendant engaged in an independently wrongful act." *Korea Supply Co.*, 29 Cal. 4th at 1158 (citing Della Penna, 11 Cal. 4th at 392-93 (1995)). If "the sole conduct alleged to support the interference with an economic advantage [is] essentially allegations giving rise to a breach of contract claim," plaintiff cannot state a tort claim for that conduct. *Huviron Co., Ltd v. Cctvstar Inc.*, No. SACV 14-1009-DOC (ANx) 2014 WL 12689221, at *4 (C.D. Cal. Nov. 25, 2014); *see also Applied Equip. Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 515; *Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.*, 47 Cal. App. 4th 464, 478 (Cal. App. 1st Dist. 1996); *Khoury v. Maly's of California, Inc.*, 14 Cal. App. 4th 612, 618 (Cal. App. 2d Dist. 1993) *Lange v. TIG Ins. Co.*, 68 Cal. App. 4th 1179, 1185– 88 (Cal. App. 2d Dist. 1998).  ITS has pled no other wrongful act here, and cites no cases in which a defendant is liable for business torts caused by a breach of contract.  ITS has therefore failed to state a claim for this reason as well.

## CONCLUSION

For all the reasons explained above, the Court lacks "arising in" and "arising under" subject matter jurisdiction over this adversary proceeding.  Applying pertinent factors, the Court concludes that it also lacks "related to" jurisdiction over this adversary proceeding.  Bearing in mind the Sixth Circuit's admonition that situations may arise in which an extremely tenuous connection to the estate will not be sufficient to establish "related to" jurisdiction, *Wolverine Radio*, 930 F.2d at 1142, this adversary proceeding has an extraordinarily tenuous—if any—connection to the confirmed Plan.  Defendant City has also conclusively shown that this Complaint also fails to state any claim under California law, because, among other problems, claims arising from 2018 actions of Defendant City are time-barred, and the more recent actions of the City complained about here lack essential elements of this tort, even if a plaintiff could directly sue a city in tort under California law, which it cannot.

Accordingly, the Motion is GRANTED in its entirety.   The Court will dismiss this adversary proceeding pursuant to Civil Rule 12(b)(1) for a lack of subject matter jurisdiction under 28 U.S.C. § 1334(b), and Civil Rule 12(b)(6) for failure to state any valid claim.  A separate order will be entered concurrent with this opinion.


TENDERED BY:

/s/ *April A. Wimberg*
      April A. Wimberg
      Ryne E. Tipton
      DENTONS BINGHAM GREENBAUM LLP
      3500 PNC Tower, 101 South Fifth Street
      Louisville, Kentucky 40202
      Phone:   (502) 587-3719
      Email:   april.wimberg@dentons.com
             ryne.tipton@dentons.com

      Barbara Parker, City Attorney (SBN 69722)
      Maria Bee, Chief Asst City Attorney (SBN 167716)
      Jamilah Jefferson, Supervising Deputy City Attorney (SBN 219027)
      THE CITY OF OAKLAND
      One Frank Ogawa Plaza, 6th Floor
      Oakland, California 94612
      Phone:   (510) 238-3601
      Email:   bparker@oaklandcityattorney.org
             mbee@oaklandcityattorney.org
             jjefferson@oaklandcityattorney.org

      Monique D. Jewett-Brewster (SBN 217792)
      LATHROP GPM LLP
      The Letitia Building
      70 S First Street
      San Jose, CA  95113-2406
      Phone:      (408) 286-9800
      Facsimile:   (408) 998-4790
      Email:   mjb@lathropgpm.com

Danielle Leonard (SBN 218201)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Phone: (415) 421-7151
Email:  dleonard@altshulerberzon.com

Attorneys for Defendant,
CITY OF OAKLAND