**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | |
|---|---|
| In re:<br><br>INSIGHT TERMINAL SOLUTIONS, LLC, *et al.*,<br><br>       Debtors. | Chapter 11<br><br>Case No. 19-32231<br><br>(Jointly Administered)<br><br>Adv. Proc. No. 24-03007-jal |
| INSIGHT TERMINAL SOLUTIONS, LLC, as the Reorganized Debtor,<br><br>       Plaintiff,<br><br>   v.<br><br>CITY OF OAKLAND,<br><br>       Defendant. | Judge Joan A. Lloyd<br><br>**TO BE HEARD BY THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY** |

**DEFENDANT'S MOTION TO WITHDRAW THE REFERENCE**
**AND TRANSFER VENUE**

Defendant City of Oakland, California ("City") hereby moves this United States District Court for an order (1) withdrawing the reference by this Court to the United States Bankruptcy Court for the Western District of Kentucky of the above-captioned adversary proceeding, which involves California state law tort claims only, and no claims arising in or under federal bankruptcy law, under 28 U.S.C. § 157(d)), and (2) transferring these California claims to the more appropriate venue of the Northern District of California, under 28 U.S.C. § 1404(a).

First, this Court should withdraw the reference for cause. Plaintiff and Reorganized Debtor Insight Terminal Solutions, LLC ("ITS") brought this adversary proceeding against the City, a

1

California municipality, claiming that the City's actions with respect to property located in Oakland, California interfered with ITS's sublease for that property and prospective business relations for a development on that property.  (Adv. Dkt. No. 1.)  ITS, which has been based in Los Angeles since 2020, thus sued the City in bankruptcy court in Kentucky, four years after confirmation of its Chapter 11 plan, claiming two California law business torts, for events entirely arising in California *Id*.  The bankruptcy court recently denied the City's motion to dismiss these claims under Rules 12(b)(1) for lack of jurisdiction, and 12(b)(6) for failure to state a claim (Adv. Dkt. No. 56), and in so doing held that these California state law tort claims neither arise in nor under federal bankruptcy law, but are only "related to" the bankruptcy proceedings (*Id*. at 9).

All factors considered by courts in this Circuit to determine whether to withdraw the reference are met, namely:  1) the request is timely, in light of the bankruptcy court's November 21, 2024 order denying dismissal; 2) the state law claims, as confirmed by the bankruptcy court, require no resolution or interpretation of federal bankruptcy law and are therefore non-core and must be resolved by a district court; 3) the City has a right to a jury trial in a district court; 4) judicial economy warrants management of this litigation and these jury claims by a district court of general jurisdiction, not a bankruptcy court with no expertise in California law located 2,000 miles away from where the parties reside, all the evidence is located, and every relevant event took place.[1]  This case thus presents the unusual circumstance in which no good reason exists

---

[1] At the time of the 2019 Chapter 11 bankruptcy, ITS was owned and operated out of Kentucky by John Siegel.  (W.D. Kentucky Bankruptcy Case No. 19-32231, Dkt. No. 1.)  In 2020, the bankruptcy court confirmed the reorganization plan for ITS, awarded control of ITS to one of ITS's lenders, and ITS has been a California business entity located in Los Angeles, California ever since, with no connection to Kentucky at all.  (W.D. Kentucky Bankruptcy Case No. 19-32231, Dkt. Nos. 378, 379 (Plan Confirmation Order); *see also* Declaration of Jamilah Jefferson In Support of Motion to Withdraw the Reference and Transfer Venue ("Jefferson Decl."), Ex. C (current address Los Angeles, CA)).  Mr. Siegel subsequently died in 2022.  (W.D. Kentucky

for the bankruptcy court to manage this litigation, and good cause therefore warrants withdrawal of the reference.

Second, this Court should then transfer this action to the United States District Court for the Northern District of California, in which all relevant events occurred.  All pertinent factors weigh in favor of transfer:  1) The dispute centers on the City's actions, undertaken in Oakland, California, regarding a private development project on Oakland land and contracts executed in Oakland.  2) This failed development project has already been subject to extensive litigation in the Northern District of California and in the California state courts, all of which was funded by ITS. *E.g. Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, 321 F.Supp.3d 986, 989 (N.D. Cal. 2018) (*OBOT I*), *aff'd*, 960 F.3d 603 (9th Cir. 2020); *OBOT v. City of Oakland (OBOT II)* (Alameda County Superior Court Case No. RG18930929, Cal. Court of Appeal Nos. A169585, A170849); W.D. Kentucky Bankruptcy Case No. 19-32231, Dkt. Nos. 304, 336.  3) The claims ITS now raises are subject to a mandatory forum selection clause that require them to be heard in California.  ITS claims in this adversary proceeding that the City's actions in terminating the primary land lease (back in 2018) interfered with its sublease of the land and therefore its business prospects.  (Adv. Dkt. No. 1.)  Both of these contracts—the lease and sublease—contain mandatory forum selection clauses requiring that any dispute "directly or indirectly" arising from to those contracts be litigated in a court with situs in Oakland, CA.  (Jefferson Decl., Ex. A at § 38.9, Ex. B at § 38.9 (quoted at 6, *infra*).)  4) As evidenced by the bankruptcy court's recent ruling, the claims at issue raise significant issues of California law that should be resolved by a federal court

---

Bankruptcy Case No. 19-32231, Dkt. 444 (withdrawal of attorney in light of client death); *In re: Insight Terminal Solutions*, 657 B.R. 78, 88 (2024) (noting Siegel death in 2022).)  As ITS admits, ITS is a "single-purpose entity," formed to conduct business with respect to the property in Oakland, California.  (Adv. Dkt. 42 at 12.)

experienced with the law of its home state.  (Adv. Dkt. No 56 at 15-18.)  5) Kentucky has no connection whatsoever to the issues in dispute.

In sum, now that the bankruptcy court has determined that these claims will not in fact be dismissed, all factors warrant transfer of these state-law claims to California.[2]

## BACKGROUND

### The Oakland, California Property and Related Development Contracts

The dispute between ITS and the City arises out of a series of contracts pertaining to a piece of waterfront City-owned land, formerly part of the Oakland Army Base, on which ITS and its business partner Oakland Bulk and Oversized Terminal, LLC ("OBOT") failed to build a promised bulk commodity shipping terminal.  (Adv. Dkt. No. 1 (ITS Complaint) at 2-4; *see also id*., Ex. B (November 23, 2023 order of California state court in litigation between OBOT and the City.)[3]

Between 2012 and 2016, the City and OBOT entered into a series of development contracts culminating in a 66-year lease of the property in question.  (Adv. Dkt. No. 1, Ex. B at 35-36.)  In the 2016 lease, OBOT agreed to build a bulk commodity terminal by particular deadlines.  (*Id*. at 47-49.)  The contract provided OBOT two and a half years to commence construction.  (*Id*.)

In the meantime, also in 2016, the Oakland City Council enacted legislation regulating coal, a commodity that OBOT and ITS wanted to ship through this terminal.  In response, OBOT sued the City in the Northern District of California for breach of contract.  *OBOT I*, 321 F. Supp.

---

[2] The City is filing this motion in the bankruptcy court pursuant to the Local Rules.  The City, however, has not consented to the jurisdiction of the bankruptcy court to enter final orders in this proceeding, reserves all arguments regarding that court's jurisdiction, and nothing in this request is intended to confer upon the bankruptcy court any jurisdiction that would not otherwise exist.

[3] The facts are from the record before the bankruptcy court for this adversary proceeding, the record for which includes a number of orders from the main bankruptcy docket and California proceedings.

at 991.  OBOT prevailed in May 2018, when the federal court concluded that the resolution applying the ordinance to this project was not supported by sufficient evidence to show detrimental health and safety impacts and therefore breached the contract restrictions on new regulations.  *Id.* at 1009.  The Court also recognized that the *ordinance* was not a breach of contract, and expressly recognized that the City, relying on additional evidence, could attempt again to apply it to the project in the future.  *Id*. at 1009, 1011.  The City appealed, and the Ninth Circuit affirmed in a divided opinion.  *OBOT I*, 960 F.3d 603 (9th Cir. 2020).

In 2018, while the federal litigation was pending, the construction deadlines in the Ground Lease lapsed.  (Adv. Dkt. No. 1, Ex. B at 34.)  OBOT failed to commence construction of the terminal.  (*Id.*)  The City noticed OBOT's default.  (*Id.* at 80.)  OBOT responded that its delay was excused by events of force majeure, which the City rejected.  (*Id.* at 80, 83–86.)  In November 2018, the City ultimately invoked the early termination provisions of the contract and terminated the lease.  (*Id*. at 86.)

Meanwhile, in September 2018, while the parties were disputing OBOT's default, OBOT entered into a sublease with ITS.  (*Id.* at 81; *see also* Jefferson Decl., Ex. B (excerpts from ITS Sublease, incorporated into ITS Complaint)).  OBOT intended that sublease to turn over all responsibility for the construction and operation of the disputed terminal to ITS.  (Adv. Dkt. No. 1 at ¶ 4; Jefferson Decl., Ex. B.)  Under the terms of the primary lease, any sublease, such as the one with ITS, was required to assume any of OBOT's obligations to and agreements with the City. (Jefferson Decl., Ex. B at §§ 37.9.1, 37.9.2.)[4]  Among those agreements was a forum selection

---

[4] In section 37.9.1 of the ITS sublease, ITS agreed: "This Sublease is subject and subordinate in all respects to the Master Lease and the rights of Master Landlord thereunder…".  (*Id*.)  In section 37.9.2, ITS further agreed:  "As between Master Landlord and Subtenant, Subtenant shall comply with all obligations of "Tenant" under the Master Lease…".  (*Id.*)  And, in section

clause requiring that any dispute "be litigated in courts having situs within the City of Oakland."
(Jefferson Decl., Ex. A at § 38.9, Ex. B at § 38.9.)  Thus, the primary lease and the ITS sublease
contain nearly identical forum selection clauses:

> 38.9 Governing Law; Selection of Forum. This Sublease is entered into in the City of
> Oakland, State of California, and shall be governed by, and interpreted in accordance with,
> the laws of the State of California, without reference to its conflict of laws provisions. As
> part of the consideration for entering into this Sublease, the Parties agree that all actions or
> proceedings **arising directly or indirectly** under this Sublease shall be litigated in courts
> having situs **within the City of Oakland**, and the Parties hereby irrevocably consent and
> submit to the jurisdiction and venue of **any such local, state or federal court**…

(Jefferson Decl., Ex. B at § 38.9 (emphasis added), Ex. A § 38.9.)

<u>OBOT, Backed by ITS, Pursues State Court Litigation Regarding the Oakland Property</u>

Shortly after the November 2018 termination of the primary lease (and while the above-
referenced federal litigation (*OBOT I*) was pending), OBOT sued the City again in California state
court.  *OBOT II*, Alameda County Superior Court Case No. RG18930929; *see also OBOT II*,
California First District Court of Appeal Case Nos. A169585 and A170849; Adv. Dkt. No 1, Ex.
A.  ITS funded that litigation, just as it had the preceding federal lawsuit.  (W.D. Kentucky
Bankruptcy Case No. 19-32231, Dkt. Nos. 304 (including all exhibits), 336 (including all
exhibits).)

In the state court action, OBOT challenged the City's rejection of its force majeure claims
and the resultant termination of the lease, asserting both breach of contract and business tort causes
of action.  (Adv. Dkt. No. 1, Ex. B.)  The court dismissed the business tort claims for failure to
state a claim, and the City counter-claimed for breach of contract against OBOT.  (Adv. Dkt. No.
25-1, Ex. A.)   Unlike another OBOT sublessee—Oakland Global Retail Enterprise, LLC

---

37.9.5(b), ITS further agreed:  "In no event will the term of this Sublease extend beyond the term
of the Master Lease."  (*Id.*)

("OGRE")—which also sued for third-party breach of contract and business torts in 2018, ITS chose not intervene or otherwise sue the City in California state court. (*Id*.; Adv. Dkt. No. 1, Ex. A.)

ITS 2019 Chapter 11 Bankruptcy

Following defaults on money owed to OBOT and others, ITS filed a voluntary chapter 11 petition in the Western District of Kentucky Bankruptcy Court on July 17, 2019. (Case No. 19-32231, Dkt. No. 1.) Among the entities to which ITS owed money was a lender called Autumn Wind Lending ("AWL"), which was based in Los Angeles, California. (*Id.* Dkt. No. 13.)

ITS did not list the City as a notice party, or schedule the City as a creditor. (*Id.* Dkt. Nos. 1; 63 at 8-18; 105-1 at 1-5.) Nowhere in the bankruptcy filings did ITS identify or claim City liability to it for business torts, let alone torts worth $1 billion. (*Id*.)

AWL initially moved to dismiss the bankruptcy, claiming it was a sham filing by Mr. Siegel "commenced as a stalling tactic to allow Siegel to continue his efforts to benefit himself and retain the Sublease in what is essentially a two-party dispute involving quintessential state law issues." (*Id.* Dkt. No. 13.) AWL concluded that there "is no proper bankruptcy purpose served by the Debtors seeking to forestall the exercise of the legal and contractual rights of the Lender, the Debtors' primary creditor." (*Id.*) AWL later competed for control of ITS, filing a plan of reorganization. (*Id*. Dkts. 245, 245-1.) Neither that plan, nor ITS's competing plan, identified any potential claims against the City (notwithstanding the ongoing litigation concerning the City's 2018 termination of OBOT's lease). (*Id*. Dkt Nos. 245, 245-1, 217.)[5]

---

[5] Subsequent to these plan filings, having been alerted (not by ITS) to the pending bankruptcy, the City submitted a plan objection, to alert the bankruptcy court to the ongoing California state court litigation over the City's termination of the primary lease and the resulting impact on the ITS Sublease. (W.D. Kentucky Bankruptcy Case No. 19-32231, Dkt. No. 276.) The bankruptcy court noted and rejected that objection in confirming the AWL plan. (*Id.* Dkt. No. 379.)

In November 2020, the bankruptcy court confirmed AWL's plan, awarding AWL control of ITS.  (*Id.* Dkt. 379.)  Again, nothing in the Court's approval of the plan was contingent in any way on receipt of damages from any state law claims against the City.  (*Id.*)  Since plan confirmation in 2020, ITS has been owned, controlled, and operated in Los Angeles, by AWL and its LA-based owners.  *Supra* at p. 2 n.1.

None of the post-plan confirmation bankruptcy proceedings conducted by the court since 2020 have involved the City, or the disputes regarding ITS's business tort claims against the City.

<u>Resolution of the California State Court Litigation</u>

In 2023, the California trial court ruled for OBOT, concluding that the City should have granted a force majeure exception and extended the construction deadlines.  (Adv. Dkt. No. 1, Ex. B.)  OBOT then sought nearly a billion dollars in future lost profit damages (reduced to present day value), a figure derived entirely from the revenue under the ITS sublease.  (Adv. Dkt. No. 25-1, Ex. B (December 22, 2023 order of California state court).)  In December 2023, at the conclusion of the damages phase of the trial, the court awarded zero dollars in lost profits, concluding that OBOT's damages figure was entirely speculative and unsupported by admissible evidence.  (*Id.*; Adv. Dkt. 1, Ex. A (Judgment).)  The City appealed the adverse judgment on liability.  *See OBOT II*, California First District Court of Appeal Case Nos. A169585, A170849. OBOT did not cross-appeal any issues.  (*Id.*)[6]

---

[6] As recently as this past Friday, counsel for OBOT, who are the same counsel as represents ITS in this adversary proceeding, claimed to the California Court of Appeal that it should expedite the pending appeal of *OBOT II* because of *the impact on ITS and its ability to do business on the Oakland property in dispute:*

> The City has refused to process building permit applications for OBOT and OBOT's subtenant, Insight Terminal Solutions ("ITS"). Consequently, OBOT and ITS continue to miss market opportunities and incur additional carrying costs that could be offset if the project were allowed to move forward.

As discussed further below, while the City's appeal was pending, ITS filed the present adversary proceeding in the Kentucky bankruptcy court, with ITS now claiming lost profits of "approximately $1 billion" derived again from the alleged value of the ITS sublease at the time of the 2019 bankruptcy.  (Adv. Dkt. No. 1 at ¶ 10.)[7]

OBOT and ITS also demanded the City move forward with project approvals while the appeal was pending.  (Adv. Dkt. No. 1.)  The City declined, in light of well-established California law staying mandatory injunctions pending appeal, and because if the City prevails on appeal, it would terminate the OBOT-ITS development project.  This issue was put to rest by the trial court, which ruled in July 2024 that the City was not required to proceed with the project pending appeal, and further ordered the parties not to alter the status quo until the appeal was finally resolved. (Adv. Dkt. No. 47-1.)

The state court litigation is currently pending on appeal.  *See OBOT II,* California First District Court of Appeal Case Nos. A169585 and A170849.  Resolution of that appeal will determine whether OBOT's lease remains in place, or whether the termination of that lease was indeed proper such that the land should revert to the City.  And because any right ITS might have to sublease the land from OBOT is entirely derivative of OBOT's right to the primary lease, ITS's interest in developing the property hinges on the outcome of the pending state court litigation.

Current 2024 Adversary Proceeding

---

*See* Jefferson Decl. ¶ 10.  These are exactly the same economic issues that ITS is now attempting to re-litigate in bankruptcy court here in Kentucky in this case.

[7] In contrast, at the time of the bankruptcy, ITS told the court the sublease asset was valued at $1,000,001 to $10 million and estimated liabilities of $10,000,001 to $50 million.  (W.D. Kentucky Bankruptcy No. 19-32231, Dkt. 1 at 3.)

In March 2024, four years after confirmation of its chapter 11 plan, ITS filed the present adversary proceeding.  (Adv. Dkt. 1.)  ITS sued the City for two business torts:  tortious interference with contract (based on the OBOT-ITS sublease), and tortious interference with prospective economic relations (again, based on the sublease)—the same torts that OBOT unsuccessfully asserted in *OBOT II*.  (Adv. Dkt. 1; *see id.* 25-1, Ex. A.)  ITS now claimed that the City's actions from 2014-2018, culminating in the termination of the OBOT lease, caused ITS to go bankrupt.  (*Id.*)  ITS also claimed that the City committed a further tort in 2024 by failing to move the development project forward pending the state court appeal, which, as discussed above, is the same argument that the state trial court rejected when it ordered OBOT and the City to maintain the status quo pending appeal.  (*Id.*)

The City immediately moved to dismiss.  (Adv. Dkt. 25.)  The City argued that the bankruptcy court lacked post-confirmation jurisdiction over these state law torts because, under governing Sixth Circuit law, this business dispute did not arise in, arise under, or relate to the bankruptcy. (*Id.*)  The City also argued that ITS failed to state a claim because (1) its claims are plainly time-barred because they are based on acts undertaken in 2018 of which ITS was well aware (having funded the state court litigation since its inception); (2) the City is immune under California's sovereign immunity statutes for municipalities; and (3) ITS otherwise did not plead required elements of its claims.  (*Id.*)  ITS's responsive arguments on the merits of these claims cited cases that it claimed conflicted with the law the City cited, requiring the bankruptcy court to resolve multiple contested issues of California law.  (Adv. Dkt. 42.)

The bankruptcy court held argument on October 16, 2024.  (Adv. Dkt. 51.)  On November 21, 2024, the court signed ITS's proposed order without alteration, denying the City's motion to dismiss.  (Adv. Dkt. 56.)

In ruling that the bankruptcy court had post-confirmation jurisdiction, the Court held that the claims did not arise under or in federal bankruptcy law, but were instead only "related to" the bankruptcy. (Adv. Dkt. 56 at 9.) In rejecting the City's arguments that ITS's claims were time-barred and otherwise failed to state a claim, the Court made several rulings contrary to existing California appellate precedent. (*Id.*; see Adv. Dkt. 54 (City Proposed Statement of Decision).)[8]

## ARGUMENT

### I.     This Court Should Withdraw the Reference

District courts have "original jurisdiction over bankruptcy cases and related proceedings." *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 670 (2015). While they may refer such cases to bankruptcy judges, district courts retain the authority to "'withdraw' a reference to the bankruptcy court 'on [their] own motion or on timely motion of any party, for cause shown.'" *Id.* (quoting 28 U.S.C. § 157(d)). Courts evaluating whether to withdraw a reference consider several factors, including: "(1) whether the right to a jury trial exists; (2) whether the matter is core or non-core; (3) promoting judicial economy; (4) promoting uniformity in bankruptcy administration; (5) reducing forum shopping and confusion; (6) conserving the creditor's and debtor's resources; and (7) expediting the bankruptcy process." *Sergent v. McKinstry*, 472 B.R. 387, 404 (E.D. Ky. 2012). Each of these factors weighs decidedly in favor of withdrawing the reference here.[9]

---

[8] The City does not agree with the bankruptcy court's ruling that post-confirmation "related to" jurisdiction exists in this case, or the rulings on the merits issues (which alter existing California law), and reserves all rights with respect to those arguments on review. For purposes of this motion, however, the City assumes as it must that the claims pursuant to the bankruptcy court's denial of a motion to dismiss are going to proceed.

[9] This motion is timely filed as there would have been "no need to submit [it] had the [City] prevailed on [it's motion to dismiss] before the Bankruptcy Court," which was denied on November 21, 2024. *In re Schlein*, 188 B.R. 13, 15 (E.D. Pa. 1995) (motion to withdraw timely when filed five weeks after denial of motions to transfer and abstain). The City very promptly filed this motion within *one week* of receiving that ruling.

***Non-Core Proceeding.*** Whether a proceeding is core or non-core is the "most important factor" in deciding whether to withdraw the reference "because 'efficiency, uniformity and judicial economy concerns are largely subsumed within it.'" *Gecker v. Marathon Fin. Ins. Co., RRG*, 391 B.R. 613, 615 (N.D. Ill. 2008); *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993) (same). That is because while bankruptcy courts are empowered to fully adjudicate core proceedings—those which "either invoke[] a substantive right created by federal bankruptcy law or … could not exist outside of the bankruptcy'" (*In re Lowenbraun*, 453 F.3d 314, 320 (6th Cir. 2006))—as to non-core proceedings, they "may only 'submit proposed findings of fact and conclusions of law,' which the district courts review de novo" (*Wellness Int'l*, 575 U.S. at 671 (quoting 28 U.S.C. § 157(c)(1)). A non-core proceeding will therefore invariably come before a district court for final adjudication.

In its November 21, 2024 order denying the City's motion to dismiss, the bankruptcy court held that this post-confirmation case involving two California state law tort claims does not arise in or under bankruptcy law (Adv Dkt. 56 at 9–11), and is therefore indisputably a non-core proceeding. *See, e.g.*, *Stern v. Marshall*, 564 U.S. 462, 477 (2011) (cases falling under a bankruptcy court's "related to" jurisdiction cannot be core); *In re Skyline Concrete Floor Corp.*, 410 B.R. 564, 2008 WL 114462, *1–2 (E.D. Mich. Jan.8, 2008) (where "all of the claims in this adversary proceeding involve rights created by state law," the matter is "non-core").[10]

As numerous courts in the Sixth Circuit have concluded, the presence of non-core state-law claims weighs strongly in favor of withdrawing the reference. *E.g.*, *Antioch Co. Litig. Tr. v. Morgan*, No. 3:10-CV-156, 2012 WL 5845003, at *1-*2 (S.D. Ohio Nov. 19, 2012); *Skyline*, 410

---

[10] Plaintiff's concession that this proceeding does not arise in or under federal bankruptcy law is perforce a concession that this case is a non-core proceeding under *Stern*. (Adv. Dkt. 42 at 10.)

B.R. at 567; *Messinger v. Chubb Grp. of Ins. Companies*, No. 04-25219, 2007 WL 1466835, at *2-*3 (N.D. Ohio May 16, 2007).  The state law claims at issue here—which do implicate any federal law, let alone bankruptcy law—should be resolved by a district court of general jurisdiction.

*Jury Trial.* The City unquestionably has a right to a jury trial on ITS's state law business tort claims, and has not and will not consent to the bankruptcy court's jurisdiction.  *See* Judicial Council of California Civil Jury Instructions No. 2201-02; *Della Penna v. Toyota Motor Sales*, *U.S.A., Inc.*, 11 Cal. 4th 376 (1995).  Given that the trial court has rejected the City's 12(b)(1) and 12(b)(6) arguments, this case—which implicates a morass of disputed facts and thorny questions of California law—will proceed towards that trial.

Where a litigant "has a jury trial right … cause to withdraw the reference 'automatically exists' regardless of the remaining factors." *Sergent*, 472 B.R. at 405.  Indeed, failure to withdraw the reference under such circumstances can be an abuse of discretion. *In re Cinematronics, Inc.*, 916 F.2d 1444, 1451 (9th Cir. 1990); *see id.* (collecting cases holding that withdrawal appropriate where there is jury demand); *In re The VWE Grp., Inc.*, 359 B.R. 441, 451 (S.D.N.Y. 2007) (a "finding that the claim is non-core coupled with defendants' jury demand is sufficient cause to withdraw the reference").  That is because, absent the parties' consent, district courts must oversee all jury trials arising from bankruptcy court proceedings.  28 U.S.C. § 157(e).

The question therefore becomes not *if* but *when* to withdraw the reference.  For all the other reasons explained in this Motion, this Court should withdraw the reference now so that the case can be immediately transferred to the appropriate forum, and thereby relieve the bankruptcy court of any further obligation to manage the numerous California law issues that will be presented in the lead up to trial.

13

*Judicial Efficiency & Party Resources.*  If this Court does not withdraw the reference and transfer this case, it will be saddled with overseeing a protracted jury trial implicating an array of California state law tort, contract, and immunity doctrines.  In so doing, this court would be required to review and potentially revisit judgment calls with respect to California law made by the bankruptcy court in resolving pre-trial matters.  The bankruptcy court is not better equipped to manage or adjudicate this litigation; this task falls squarely within the ambit of the district courts.  Where, as here, "the proceeding is 'non-core'… 'courts have often concluded that judicial economy is better served by withdrawing the reference and allowing a court of general jurisdiction to resolve the matter.'"  *In re Church St. Health Mgmt.*, LLC, No. 3:12-CV-00677, 2012 WL 4035971, at *4 (M.D. Tenn. Sept. 10, 2012).

Further, in this case, plaintiff challenges the very same City conduct that was the subject of *OBOT II*.  The trial in that case was over two months long, involved testimony from over a dozen witnesses, and hundreds of exhibits.  There is every reason to expect that any trial in this case would be similarly resource-intensive, and duplicating and reviewing the pre-trial decisions made by the bankruptcy court (which this court must) will only add to that burden.

There is also no good reason *this* District Court must bear this burden.  The Northern District of California, by contrast, is well-situated to oversee this case.  Unlike this Court, it is deeply familiar with the California state law doctrines at the heart of this proceeding, including a sensitive question of California's sovereign immunity about which there is an arguable conflict of authority.  Indeed, in litigating the motion to dismiss for failure to state a claim, both parties relied heavily on authorities from the Northern District of California resolving questions of California law.  (*E.g.* Adv. Dkt. 25 at 20, 22; *id.* Dkt. 42 at 18, 20; *id.* Dkt. 47 at 9.)  The Northern District is

also familiar with this development project and the development contracts from resolving disputes between ITS's business partner OBOT and the City in *OBOT I*. *Infra* at p. 23.

Relocating this conflict to California would also economize the parties' resources: the parties all reside in California, every shred of evidence and all of the relevant conduct occurred in the Northern District of California, and ITS agreed to bring cases involving its sublease in that district. *Infra* at pp. 19-22. A trial in Kentucky would accordingly impose an unjustified cost on the parties and this Court with no countervailing benefit. Fellow district courts within the Sixth Circuit and elsewhere have withdrawn the reference and transferred cases in similar circumstances. *E.g. Nukote Int'l, Inc. v. Off. Depot, Inc.*, No. 3:09-0921, 2009 WL 3840482, at *2-*9 (M.D. Tenn. Nov. 16, 2009) (granting motion to withdraw reference and transferring case to out-of-circuit district court to oversee non-core proceeding implicating state law issues); *ResCap Liquidating Tr. v. RBC Mortg. Co.*, No. 14 CIV. 4457 AKH, 2014 WL 8103896, at *2-*4 (S.D.N.Y. July 18, 2014) (withdrawing reference on state law claims and transferring to district dictated by forum selection clause); *CapRock Milling & Crushing, LLC v. Perdue Agribusiness LLC*, No. 2:24-CV-G38-Z, 2024 WL 4582903, at *4-*7 (N.D. Tex. Oct. 25, 2024) (similar); *Lagrou v. Monterey Fin. Servs., LLC*, No. 3:18CV283-HEH, 2018 WL 4903259, at *3-*5 (E.D. Va. Oct. 9, 2018) (withdrawing the reference and transferring proceeding involving non-core claims to district "where the circumstances in the Amended Complaint allegedly occurred").

***Remaining Factors.*** The remaining factors all weigh in favor of withdrawing the reference from the bankruptcy court to manage this state law litigation. Withdrawing the reference will not risk creating any disuniformity in bankruptcy law because the only issues to be adjudicated are state law causes of action that have no connection to any bankruptcy doctrine. *Nukote*, 2009 WL 3840482, at *6. Withdrawing the reference and transferring the case will not promote forum

shopping as neither Kentucky nor its federal courts have any connection to the legal issues implicated by this case, while transferring the case to the Northern District of California would honor the forum selection clause that both parties consented to.  *Infra* at pp.19-20.  Finally, relocating the litigation to the geographic locus of the underlying dispute will only expedite the proceeding, including disposing of legal and logistical barriers that might otherwise delay or prevent the parties and witnesses from appearing in a Kentucky court.  *Infra* at p. 22.

## II.    The Northern District of California Is the Proper District Court to Preside Over This Litigation

The circumstances of this case overwhelmingly favor transfer to the Northern District of California.  ITS agreed to a mandatory forum selection clause requiring any disputes "directly or indirectly" arising from the ITS sublease of land for the disputed project to be filed *in Oakland*, and ITS's California state law claims have no meaningful connection to Kentucky.  Every relevant fact, legal issue, and party is rooted in California.  The Northern District is the most appropriate venue to hear this case.

This transfer is well within this Court's authority and discretion.  This Court may, "in the interest of justice" and "[f]or the convenience of parties and witnesses" transfer "any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  This transfer provision serves to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense" by ensuring that cases are heard in the venue best suited to their particular circumstances.  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quotations omitted).  Accordingly, this Court has "broad discretion to 'adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness.'"  *Fausz v. Experian Info. Sols., Inc.*, No. 3:17-CV-00665-GNS, 2018

WL 3313016, at *2 (W.D. Ky. July 5, 2018) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).[11]

### A.  Venue is Proper in the Northern District of California

Under section 1404(a), this court must first consider "whether the action 'might have been brought' in the transferee court."  *Kay v. Natl. City Mortg. Co.*, 494 F. Supp. 2d 845, 849 (S.D. Ohio 2007).  That requirement is met here.  The bankruptcy court held that the district courts, including the Northern District of California, have subject matter jurisdiction under 28 U.S.C. § 1334(b) because the dispute is sufficiently related to ITS's bankruptcy.[12]  The City is subject to the personal jurisdiction of that district, which includes Oakland and Alameda County.  Finally, venue is proper in that district because the City resides in California and all of the events giving rise to the claim, including execution of the relevant contracts, took place within that district.  28 U.S.C. § 1391(b)(1), (2); *supra* at p.15.

### B.  The Balance of Interests Overwhelmingly Favors Transfer

"Once it is determined that a case could have been brought in the transferee court, the issue becomes whether transfer is justified under the balance of the language of § 1404(a), which analyzes whether transfer is justified for 'the convenience of parties and witnesses' and 'in the interest of justice.'"  *Kay*, 494 F.Supp.2d at 849.  This Court must consider both public and private interests.  *Washburn v. Garner*, No. 04-cv-228, 2005 WL 1907530, at *1 (W.D. Ky. Aug. 10, 2005).  Private interests include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing,

[11] Should this Court deny withdrawal of the reference, the City moves the bankruptcy court in the alternative for this proceeding to be transferred to the Northern District of California pursuant to Fed. R. Bankr. P. 7087 and 28 U.S.C. § 1412, for all the same reasons.
[12] The City assumes without conceding that this decision is correct for the purposes of this motion.

witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive," *id.* at 850 (citing *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241 n.6 (1981)).  Public interests include "docket congestion, the burden of trial to a jurisdiction with no relation to the cause of action, the value of holding trial in a community where the public affected live, and the familiarity of the court with controlling law," *id.* (quoting *Jamhour v. Scottsdale Ins. Co.*, 211 F. Supp. 2d 941, 945 (S.D. Ohio 2002)).

The court should also consider whether the parties have agreed to a forum selection clause. The Supreme Court has instructed that "the presence of a forum selection clause … will be a significant factor that figures centrally into the district court's calculus" with respect to transfer. *Stewart*, 487 U.S. at 29; *see Viron Intern. Corp. v. David Boland, Inc.*, 237 F. Supp. 2d 812, 816 (W.D. Mich. 2002).  While typically the defendant bears the burden of demonstrating that transfer is appropriate, where, as here, there is a valid forum selection clause, the burden shifts to the party seeking to avoid it and "is considered to be a heavy burden to meet."  *Elite Physicians Services, LLC v. Citicorp Payment Services, Inc.*, No. 1:05-CV-344, 2006 WL 752536, at *3 (E.D. Tenn. Mar. 17, 2006); *see also, e.g., In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989) (per curiam) ("the venue mandated by a choice of forum clause rarely will be outweighed by other 1404(a) factors").  ITS cannot meet that burden.

### 1.  ITS Agreed to Venue in California

While ordinarily a plaintiff's choice of forum carries some weight in the analysis, that consideration is overridden where, as here, the plaintiff has consented to a forum selection clause. *Stewart,* 487 U.S. at 31 (forum selection clause "represents the parties' agreement as to the most proper forum"); *see Clayton v. Heartland Res., Inc.*, No. 3:08-cv-0513, 2008 WL 2697430, at *3

18

(M.D. Tenn. June 30, 2008).[13]  The City and OBOT previously agreed, in the primary lease, that Oakland would be the venue for any disputes arising "directly or indirectly" from the contract, whether claims arose in state or federal court.  (Jefferson Decl., Ex. A at § 38.9.)  When ITS agreed to its sublease with OBOT, and thereby attempted to assume OBOT's obligations to the City, it also agreed that Oakland would be the venue for any claims arising "directly or indirectly" from that sublease.  (Jefferson Decl., Ex. B at § 38.9.)  ITS's entire adversary complaint arises from what it contends to be interference with its rights under this sublease, thereby allegedly diminishing the value of the sublease.  (Adv. Dkt. 1.)  Indeed, the entire basis for its arguments to the bankruptcy court for "related to" jurisdiction, which the bankruptcy court endorsed, was that the main asset ITS claimed in bankruptcy was this sublease.  (Adv. Dkt. 42 at 12; Dkt. 56).

ITS has thus already agreed that California is the proper venue for this dispute, and there is no reason to excuse it from that agreement now.  None of the other factors to be balanced by this Court outweigh this agreement, and indeed, all factors support transfer.

### 2.    This Business Dispute Lies Entirely in California

This case centers on a California project, California-based entities and contracts entered into in California and governed, by agreement, by California law.

1. The development project.  The dispute centers on a failed development project for a bulk shipping terminal that ITS and its business partner OBOT (who holds the primary lease with the City) agreed to build on City-owned land in Oakland, CA.  No aspect of this project involves Kentucky.

---

[13] Even under the usual standard, the plaintiff's choice of forum is not dispositive.  *DeMoss v. First Artists Prod. Co., Ltd.*, 571 F. Supp. 409, 413 (N.D. Ohio 1983) ("Courts in this circuit do not assign the plaintiff's choice [of forum] paramount importance, but simply treat it as one factor to be weighed equally with other relevant factors.").

2. <u>The parties</u>.  OBOT and its parent company are California companies, ITS itself is a Delaware LLC with its principal place of business in Los Angeles, and the City of Oakland is a California public entity.  Even the bankruptcy court described ITS as a "single-purpose entity created to develop the terminal pursuant to the Sub-Ground Lease."  Adv. Dkt. 56 at 12.  ITS's only purpose was to develop a California project for a California city on California land.  No party is located in Kentucky.

3. <u>The contracts</u>.  Both the primary lease and the ITS sublease were executed in Oakland, California and were governed by California law.  The forum selection clauses that the parties agreed to in the relevant agreements underscore this connection.  *Supra* at p. 19.  And ITS has already conceded that California law governs its tort claims.  (Adv. Dkt. 42 at 15–25 (applying California law).)  No relevant contracts involve Kentucky.

4. <u>ITS's claims</u>.  ITS claims that the City took certain action in 2018 (terminating the OBOT lease) and 2023–2024 (refusing to advance the development project pending appeal of the California state court litigation) that it claims were tortious.  (Adv. Dkt. 1 ¶¶ 65–88.)  All of that conduct took place in Oakland, California.  (*Id*.)  Indeed, *every* material event alleged in the complaint occurred in California.  And, as discussed above, the claims do not involve, in any way, issues of bankruptcy law.  Nothing about these claims involves Kentucky.

5. <u>No Kentucky connection</u>.  ITS has had no connection with Kentucky since plan confirmation by the bankruptcy court in 2020.  The only reason that ITS was able to initiate this proceeding in Kentucky at all is because its now deceased previous manager/owner, John Siegel, operated the business out of Kentucky.  *Supra* at p. 2 n.1.  Prior to his death, Siegel lost the company in bankruptcy to Autumn Wind Lending, a California LLC that operates out of Los Angeles.  *Id.*  Those bankruptcy proceedings commenced in 2019, and Autumn Wind's plan of

reorganization for ITS was confirmed on November 5, 2020.  *Supra* at p. 8.  Since then, none of the parties to this proceeding have had any connection to Kentucky other than litigating residual issues in bankruptcy court regarding the rights of certain creditors, that have no relevance to the dispute with the City.

### 3.  The Witnesses and Evidence Are Located in California

"The convenience of witnesses is said to be a primary, if not the most important, factor in passing on a motion to transfer under § 1404(a)."  *Midwest Motor Supply Co., Inc. v. Kimball*, 761 F. Supp. 1316, 1319 (S.D. Ohio 1991) (quoting *Houk v. Kimberly-Clark Corp.*, 613 F. Supp. 923, 928 (W.D. Mo. 1985)).  Nearly every material witness in this case—primarily current and former city employees, and ITS and OBOT principals—lives in California.  "It is obviously more convenient for witnesses to testify closer to home, and additional distance means additional travel, meal, and lodging costs, as well as additional time away from the witnesses' regular employment."  *SQIP, LLC v. Cambria Co., LLC*, No. 4:23-CV-202-SDJ, 2024 WL 1346498, at *4 (E.D. Tex. Mar. 29, 2024).  There is no compelling reason to require those witnesses, several of whom are public servants, to suffer that inconvenience here.

The availability of compulsory process also weighs in favor of transfer.  Because none of these material witnesses reside in the Western District of Kentucky, this Court would not be able to compel their attendance.  The Northern District of California, however, would have subpoena power over nearly every witness who might be called to testify.  "The fact that the transferee venue is a venue with usable subpoena power here weighs in favor of transfer, and not only slightly."  *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009).

Moreover, the evidence and property at issue are in California.  Courts consider the "ease of access to proof and the possibility of view of the premises" when deciding transfer motions.

*Jamhour*, 211 F. Supp. 2d at 947; *accord Cardinal Square, LLC v. Envelop Group, LLC*, No. 3:18-CV-423-CHB, 2018 WL 5636165, at *2 (W.D. Ky. Oct. 31, 2018) (granting a motion to transfer where the property at issue was 171 miles from the district court).  A Kentucky trial would be conducted nearly 2,000 miles away from the West Gateway property, causing the parties to incur considerable additional time and resources.  And no material evidence is in Kentucky, so neither party would be inconvenienced by a transfer away from this venue.

    **4.**    **California Courts and Citizens Have a Paramount Interest in this Case**

       Public interests also heavily favor transfer to the Northern District of California, where both the state and public have a profound interest in having this case tried there.

       Because ITS is suing a municipality in tort, this case raises critical questions of California law regarding sovereign immunity and the susceptibility of California municipalities to lawsuits.  While the bankruptcy court endorsed the minority view that cities may be sued for business torts, other courts, including the Northern District, have rejected that conclusion.  *See Nahas v. City of Mt. View*, No. 03-cv-05057 2005 WL 2739303, at *9 (N.D. Cal. Oct. 24, 2005).  The requisite statutory basis required by the California Government Claims Act for such a waiver of sovereign immunity for such business tort claims is, at best, murky.  *See id.* (reminding plaintiffs of their Rule 11 obligations for failing to plead a statutory basis, as ITS did here).  This legal issue is critical for future relationships between public and private entities in California, and would best be heard by judges who are familiar with the doctrinal backdrop and implications of such a decision.  While the courts of this district are certainly capable of resolving such questions, "[t]he Supreme Court has acknowledged the advantages … of having federal judges who are the most familiar with the governing state law deciding legal disputes subject to state law."  *Sallyport Glob. Services, Ltd. v. Arkel Intl., LLC*, 78 F. Supp. 3d 369, 375–76 (D.D.C. 2015) ("it has long been

recognized that: 'There is an appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.'") (citing *Van Dusen*, 376 U.S. at 645).

Transferring this case to the Northern District of California would also promote judicial economy.   The Northern District has already held one trial about issues stemming from the development project and contracts related to ITS's claims here.  *See OBOT I*, 321 F. Supp. 3d 986, *aff'd*, 960 F.3d 603.   The court is therefore already familiar with the extensive history of this project.   The Western District of Kentucky, on the other hand, would have to start from scratch, which would be particularly time-consuming and wasteful given the complexity of the issues at play.

Similar considerations bear on the public's interest in having the case heard in the Northern District of California, as opposed to the relatively far-flung Western District of Kentucky.   This suit could have major implications for the City of Oakland, and the San Francisco Bay Area, where this project and the prior litigation has garnered considerable public attention.   The public and the press would be very hard pressed to attend trial in Kentucky.   The interests of justice dictate that the California citizens who will be directly impacted by this lawsuit be given every opportunity to observe and participate in the proceedings, which will be all but impossible if the case is heard in Kentucky.

Conversely, the interests of justice also suggest that the Kentucky courts should not be forced to bear the burden of ITS's blatant forum shopping by using its resources to hold a trial for this dispute.   ITS had no obligation to file in Kentucky as opposed to the California state courts, in which it funded OBOT's litigation for years.   The underlying concern regarding the burden on

this Court of ITS's forum-shopping is particularly acute: the California state court trial in *OBOT II* (which was prosecuted by the same counsel bringing this case on behalf of ITS) took more than two months to complete.  The Court would save substantial time and resources—both for it and the members of the Kentucky public that would be called upon for jury service—by transferring this case to a more appropriate venue:  "Jury duty is a burden that ought not be imposed upon the people of a community which has no relation to the litigation."  *Bascom v. Maxim Integrated Products, Inc.*, 534 F. Supp. 2d 700, 705 (W.D. Tex. 2008) (quoting *Koehring Co. v. Hyde Constr. Co.*, 324 F.2d 295, 296 (5th Cir. 1963)).

## CONCLUSION

For all the foregoing reasons, the City respectfully requests that this Court grant its motion, withdraw the reference to the bankruptcy court and transfer this litigation to the U.S. District Court for the Northern District of California.

*[remainder of page intentionally left blank]*

Dated:  November 27, 2024          By:  /s/  *April A. Wimberg*
                                   April A. Wimberg
                                   Ryne E. Tipton
                                   DENTONS BINGHAM GREENBAUM LLP
                                   3500 PNC Tower, 101 South Fifth Street
                                   Louisville, Kentucky 40202
                                   Phone:  (502) 587-3719
                                   Email:  april.wimberg@dentons.com
                                           ryne.tipton@dentons.com

                                   Barbara Parker, City Attorney (SBN 69722)
                                   Maria S. Bee, Chief Asst City Attorney
                                   (SBN 167716)
                                   Jamilah Jefferson, Supervising Deputy City
                                   Attorney (SBN 219027)
                                   THE CITY OF OAKLAND
                                   One Frank Ogawa Plaza, 6th Floor
                                   Oakland, California 94612
                                   Phone:   (510) 238-3601
                                   Email:  bparker@oaklandcityattorney.org
                                           mbee@oaklandcityattorney.org
                                           jjefferson@oaklandcityattorney.org

                                   Monique D. Jewett-Brewster (SBN 217792)
                                   HOPKINS & CARLEY, ALC
                                   The Letitia Building
                                   70 S First Street
                                   San Jose, CA  95113-2406
                                   Phone:      (408) 286-9800
                                   Facsimile:   (408) 998-4790
                                   Email:  mjb@hopkinscarley.com

                                   Danielle Leonard (SBN 218201)
                                   ALTSHULER BERZON LLP
                                   177 Post Street, Suite 300
                                   San Francisco, CA 94108
                                   Phone: (415) 421-7151
                                   Email:  dleonard@altshulerberzon.com

                                   Attorneys for Defendant,
                                   CITY OF OAKLAND

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing was served electronically upon all parties in the electronic filing system.

Dated:  November 27, 2024          By:  /s/ *April A. Wimberg*
                                         April A. Wimberg