**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| INSIGHT TERMINAL SOLUTIONS, LLC, *et al*., | Case No. 19-32231 |
| | (Jointly Administered) |
| Debtors. | Adv. Proc. No. 24-03007-jal |
| INSIGHT TERMINAL SOLUTIONS, LLC, as the Reorganized Debtor, | Judge Joan A. Lloyd |
| Plaintiff, | **TO BE HEARD BY THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY** |
| v. | |
| CITY OF OAKLAND, | |
| Defendant. | |

**DECLARATION OF JAMILAH JEFFERSON IN SUPPORT OF CITY'S MOTION TO WITHDRAW THE REFERENCE AND TRANSFER VENUE**

I, Jamilah Jefferson, declare as follows:

1. I am employed by the City of Oakland ("City") as a Supervising Deputy City Attorney in the Office of the Oakland City Attorney. I am a member in good standing of the State Bar of California, and counsel of record in this matter. The contents of this declaration are based on my personal knowledge, and if called to testify I would competently testify thereto.

2. I provide this declaration in support of the City's Motion to Withdraw the Reference and Transfer Venue in the above-captioned matter.

3. In my role as Supervising Deputy City Attorney, I am familiar with the parties and contracts for the City-owned land in the former Oakland Army Base, including the West Gateway property and the leases and subleases for that property.

4. On February 16, 2016, the City executed a Ground Lease for the City-owned West Gateway property with Oakland Bulk & Oversized Terminal LLC ("OBOT"), which is a public document maintained by the City in its records. A true and correct copy of excerpts from that Ground Lease pertinent to the City's Motion is attached here to as **Exhibit A.**

5. On September 24, 2018, OBOT and Insight Terminal Solutions ("ITS") jointly submitted a sublease to the City for review pursuant to the terms of the OBOT Ground Lease. A true and correct copy of excerpts from that sublease is attached hereto as **Exhibit B.**

6. Both the OBOT Ground Lease and ITS Sublease were executed in Oakland, California, and involve land located in Oakland, California.

7. OBOT and its owners California Capital Investment Group ("CCIG") are currently located within the geographical jurisdiction of the U.S. District Court for the Northern District of California.

8. The City and OBOT have spent the last several years litigating the City's decision to terminate the Ground Lease in 2018 after OBOT failed to meet its contractual obligations under

that lease in California state courts.  I was counsel of record in that litigation, which went to trial in 2023. The first phase of that trial, which resolved the parties' liabilities with respect to their competing breach of contract claims, commenced on July 10, 2023 and concluded on October 11, 2023.  The second phase, which resolved OBOT's claims for damages and injunctive relief, commenced on November 28, 2023 and concluded on December 1, 2023.  Every witness who testified on behalf of the City during that trial lived in California at that time.  In addition, my understanding from testimony at that trial and court filings is that OBOT's and ITS's key principals, Mr. Phil Tagami and Mr. Vikas Tandon, live in California.

9.  A true and correct copy of the most recent filing by ITS with the California Secretary of State, which was downloaded from the Secretary of State's public website for corporate information at my direction on November 26, 2024, lists the principal business address of ITS in Los Angeles, California, is attached hereto as **Exhibit C.**

10. The California state trial court issued its final judgment in favor of OBOT in that litigation on January 23, 2024, which the City immediately appealed.  Following the completion of briefing, on November 22, 2024, OBOT filed a motion to expedite the appellate proceedings in that case, arguing in part that delays in resolution of the appeal were adversely impacting ITS's economic prospects for the sublease.  In that motion, OBOT argued: "The City has refused to process building permit applications for OBOT and OBOT's subtenant, Insight Terminal Solutions ("ITS"). Consequently, OBOT and ITS continue to miss market opportunities and incur additional carrying costs that could be offset if the project were allowed to move forward." California First District Court of Appeal, Case Nos. A169585, A170849, Motion to Expedite Appeal filed Nov. 22, 2024 at 4.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 26th day of November, 2024 in Oakland, California.

*/s/ Jamilah Jefferson*

Jamilah Jefferson

Supervising Deputy City Attorney, City of Oakland

# Exhibit A

ARMY BASE GATEWAY REDEVELOPMENT PROJECT

GROUND LEASE
FOR
WEST GATEWAY,

between

THE CITY OF OAKLAND

("City" or "Landlord")

and

OAKLAND BULK AND OVERSIZED TERMINAL, LLC

("Developer" or "Tenant")

Dated as of February 16, 2016

2.10.2016

EXHIBIT
0003

OBOT000166

## Table of Contents

ARTICLE 1.    PREMISES; TERM ...............................................................................3
    1.1    Premises. ..........................................................................................3
    1.2    Term of Lease ...................................................................................5
    1.3    Definitions.........................................................................................5
    1.4    Relationship of Lease to LDDA ..........................................................6
    1.5    Grant of Port Rail Terminal Access and Other Ancillary Rights ...............6
    1.6    Reserved Easements and Other Post-Commencement Date Title Matters. ...........7
    1.7    OBOT Wharf and Rail Improvements. ..................................................8

ARTICLE 2.    RENT ..............................................................................................9
    2.1    Tenant's Covenant to Pay Rent............................................................9
    2.2    Base Rent .........................................................................................9
    2.3    Participation Rent............................................................................10
    2.4    Manner of Payment..........................................................................12
    2.5    No Abatement or Setoff....................................................................12
    2.6    Interest on Delinquent Rent ..............................................................12
    2.7    Late Charges ...................................................................................12
    2.8    Additional Rent................................................................................13
    2.9    Net Lease ........................................................................................13
    2.10    No Security Deposit..........................................................................13

ARTICLE 3.    USES...............................................................................................14
    3.1    Permitted Uses of Premises ...............................................................14
    3.2    Advertising and Signs.......................................................................14
    3.3    Limitations on Uses by Tenant. ..........................................................15
    3.4    Premises Must Be Used ....................................................................16

ARTICLE 4.    TAXES AND OTHER IMPOSITIONS .................................................16
    4.1    Payment of Possessory Interest, Taxes and Other Impositions ...............16
    4.2    Landlord's Right to Pay.....................................................................18
    4.3    Right of Tenant to Contest Impositions and Liens ................................18
    4.4    Landlord's Right to Contest Impositions .............................................19

ARTICLE 5.    COMPLIANCE WITH LAWS.............................................................19
    5.1    Compliance with Laws and Other Requirements ..................................19

OBOT000167

5.2        Regulatory Approvals .................................................................................................20

ARTICLE 6.        IMPROVEMENTS ..........................................................................................22

6.1        Scope and Timing of Minimum Project...................................................................22

6.2        Other Requirements for Initial Improvements.........................................................25

6.3        Additional Funds and City's Contingent Reimbursement Obligations ...................33

6.4        Landlord's Right to Approve Additional Construction ...........................................35

6.5        Minor Alterations.....................................................................................................36

6.6        Tenant Improvements ..............................................................................................36

6.7        Title to Improvements..............................................................................................37

ARTICLE 7.        MANAGEMENT; REPAIR AND MAINTENANCE .......................................37

7.1        Management and Operating Covenants ...................................................................37

7.2        Tenant's Duty to Maintain .......................................................................................37

7.3        Costs of Repairs, Etc................................................................................................38

7.4        East of Wake Rail Improvements; BNSF Rail Improvements .................................38

ARTICLE 8.        UTILITY SERVICES .....................................................................................38

8.1        Utility Services.........................................................................................................38

ARTICLE 9.        DAMAGE OR DESTRUCTION.......................................................................39

9.1        Definitions................................................................................................................39

9.2        General; Notice; Waiver. .........................................................................................40

9.3        Rent after Damage or Destruction ..........................................................................40

9.4        Tenant's Obligation to Restore ................................................................................40

9.5        Rights of Landlord ...................................................................................................43

9.6        Tenant's Election to Restore or Partially Terminate Lease Under Certain
           Circumstances...........................................................................................................44

9.7        Effect of Partial Termination ..................................................................................46

9.8        No Release of Tenant's Obligations .........................................................................47

9.9        Benefit of Landlord..................................................................................................47

ARTICLE 10.        CONDEMNATION.......................................................................................47

10.1        Definitions...............................................................................................................47

10.2        General.....................................................................................................................48

10.3        Notice.......................................................................................................................48

10.4        Waiver......................................................................................................................49

10.5        Total Condemnation.................................................................................................49

ii

| | | |
|---|---|---|
| 10.6 | Substantial Condemnation | 49 |
| 10.7 | Partial Condemnation | 50 |
| 10.8 | Allocation of Condemnation Award | 51 |
| 10.9 | Condemnation Restoration | 52 |
| 10.10 | Temporary Condemnation | 55 |
| 10.11 | Relocation Benefits, Personal Property | 55 |
| 10.12 | Benefit of Landlord | 55 |
| 10.13 | Landlord's Power of Eminent Domain | 55 |
| ARTICLE 11. | LIENS | 56 |
| 11.1 | Liens | 56 |
| 11.2 | Mechanics' Liens | 56 |
| ARTICLE 12. | ASSIGNMENT AND SUBLETTING | 56 |
| 12.1 | Assignment and Transfer | 56 |
| 12.2 | Assignment of Sublease Rents | 63 |
| 12.3 | Permitted Transfers without Landlord Consent | 63 |
| 12.4 | Subletting by Tenant | 64 |
| 12.5 | Non-Disturbance of Subtenants, Attornment, Sublease Provisions | 65 |
| 12.6 | New Lease; Amendment to this Lease | 66 |
| 12.7 | Subdivision | 66 |
| ARTICLE 13. | INDEMNIFICATION OF LANDLORD | 67 |
| 13.1 | Indemnification of Landlord | 67 |
| 13.2 | Immediate Obligation to Defend | 67 |
| 13.3 | Not Limited by Insurance | 68 |
| 13.4 | Survival | 68 |
| 13.5 | Other Obligations | 68 |
| 13.6 | Defense | 68 |
| 13.7 | Release of Claims Against Landlord | 68 |
| ARTICLE 14. | INSURANCE | 68 |
| 14.1 | Tenant Insurance Requirements | 68 |
| ARTICLE 15. | HAZARDOUS MATERIALS | 69 |
| 15.1 | City's Disclosure | 69 |
| 15.2 | Developer Responsibilities during Term | 71 |
| 15.3 | Army-Retained Conditions | 71 |

iii

OBOT000169

| | 15.4 | Regulatory Reopeners; City and Developer Responsibilities | 71 |
| | 15.5 | Remediation; City and Developer Coordination | 72 |
| ARTICLE 16. | | DELAY DUE TO FORCE MAJEURE | 75 |
| | 16.1 | Delay Due to Force Majeure | 75 |
| ARTICLE 17. | | LANDLORD'S RIGHT TO PERFORM TENANT'S COVENANTS | 76 |
| | 17.1 | Landlord May Perform in Emergency | 76 |
| | 17.2 | Landlord May Perform Following Tenant's Failure to Perform | 76 |
| | 17.3 | Tenant's Obligation to Reimburse Landlord | 76 |
| ARTICLE 18. | | EVENTS OF DEFAULT; TERMINATION | 77 |
| | 18.1 | Events of Default | 77 |
| | 18.2 | Special Provisions Concerning Mortgagees and Events of Default | 78 |
| | 18.3 | Special Cure Rights | 78 |
| ARTICLE 19. | | REMEDIES | 78 |
| | 19.1 | Landlord's Remedies Generally | 78 |
| | 19.2 | Right to Keep Lease in Effect | 78 |
| | 19.3 | Right to Terminate Lease | 80 |
| | 19.4 | Continuation of Subleases and Other Agreements | 81 |
| ARTICLE 20. | | EQUITABLE RELIEF | 81 |
| | 20.1 | Landlord's Equitable Relief | 81 |
| | 20.2 | Tenant's Equitable Relief | 81 |
| ARTICLE 21. | | NO WAIVER | 82 |
| | 21.1 | No Waiver by Landlord or Tenant | 82 |
| | 21.2 | No Accord or Satisfaction | 82 |
| ARTICLE 22. | | DEFAULT BY LANDLORD; TENANT'S REMEDIES | 82 |
| | 22.1 | Default by Landlord; Tenant's Exclusive Remedies | 82 |
| ARTICLE 23. | | TENANT'S RECOURSE AGAINST LANDLORD | 83 |
| | 23.1 | No Recourse Beyond Value of Property Except as Specified | 83 |
| | 23.2 | No Recourse Against Specified Persons | 83 |
| ARTICLE 24. | | LIMITATIONS ON LIABILITY | 83 |
| | 24.1 | Waiver of Consequential Damages | 83 |
| | 24.2 | Limitation on Landlord Liability Upon Transfer | 83 |
| | 24.3 | No Recourse Against Specified Persons | 84 |
| | 24.4 | No Landlord Liability | 84 |

iv

OBOT000170

24.5    No Liability for Actions of ORA ................................................................................84
ARTICLE 25.    ESTOPPEL CERTIFICATES BY TENANT ........................................84
25.1    Estoppel Certificate by Tenant.................................................................................84
ARTICLE 26.    ESTOPPEL CERTIFICATES BY LANDLORD ....................................85
26.1    Estoppel Certificate by Landlord .............................................................................85
ARTICLE 27.    APPROVALS BY LANDLORD ..........................................................85
27.1    Approvals by Landlord .............................................................................................85
27.2    Fees for Review ........................................................................................................86
ARTICLE 28.    NO MERGER OF TITLE ...................................................................86
28.1    No Merger of Title ....................................................................................................86
ARTICLE 29.    QUIET ENJOYMENT .......................................................................86
29.1    Quiet Enjoyment .......................................................................................................86
ARTICLE 30.    SURRENDER OF PREMISES ...........................................................86
30.1    End of Lease Term ....................................................................................................86
ARTICLE 31.    HOLD OVER ...................................................................................87
31.1    No Right to Hold Over...............................................................................................87
31.2    No Right to Relocation Assistance ...........................................................................88
31.3    Transition ..................................................................................................................88
ARTICLE 32.    NOTICES ........................................................................................88
32.1    Notices ......................................................................................................................88
32.2    Form and Effect of Notice ........................................................................................89
ARTICLE 33.    INSPECTION OF PREMISES BY LANDLORD ...................................90
33.1    Entry..........................................................................................................................90
33.2    Exhibit for Lease.......................................................................................................90
33.3    Notice, Right to Accompany.....................................................................................90
33.4    Rights of Subtenants .................................................................................................91
ARTICLE 34.    MORTGAGES ..................................................................................91
34.1    No Mortgage Except as Set Forth Herein .................................................................91
34.2    Leasehold Liens ........................................................................................................91
34.3    Notice of Liens..........................................................................................................92
34.4    Limitation of Mortgages ...........................................................................................92
34.5    Interest Covered by Mortgage ..................................................................................94
34.6    Qualified Lender ........................................................................................................94

v

OBOT000171

| 34.7 | Rights Subject to Lease | 94 |
| 34.8 | Required Provisions of any Mortgage | 95 |
| 34.9 | Notices to Mortgagee | 95 |
| 34.10 | Mortgagee's Right to Cure | 96 |
| 34.11 | Transfer of Mortgage | 100 |
| 34.12 | Appointment of Receiver | 101 |

ARTICLE 35.    NO JOINT VENTURE ............................................ 101

| 35.1 | No Joint Venture | 101 |

ARTICLE 36.    REPRESENTATIONS AND WARRANTIES .......... 101

| 36.1 | Representations and Warranties of Tenant | 101 |
| 36.2 | Landlord Representations and Warranties | 102 |

ARTICLE 37.    SPECIAL PROVISIONS ........................................ 103

| 37.1 | Non-Discrimination | 103 |
| 37.2 | Mitigation Measures | 104 |
| 37.3 | Alcohol, Firearms, Tobacco Product Advertising Prohibition | 104 |
| 37.4 | Waiver of Relocation Assistance Rights | 104 |
| 37.5 | Campaign Contribution Limits | 104 |
| 37.6 | Community Benefits | 104 |
| 37.7 | Other Requirements | 105 |
| 37.8 | Additional Rail Matters | 105 |
| 37.9 | City's Additional Covenants Derived From Waiver of LDDA Conditions Precedent | 107 |

ARTICLE 38.    GENERAL ............................................................. 110

| 38.1 | Time of Performance | 110 |
| 38.2 | Interpretation of Agreement | 110 |
| 38.3 | Successors and Assigns | 111 |
| 38.4 | No Third Party Beneficiaries | 111 |
| 38.5 | Real Estate Commissions | 111 |
| 38.6 | Counterparts; Facsimiles | 111 |
| 38.7 | Entire Agreement | 111 |
| 38.8 | Amendment | 112 |
| 38.9 | Governing Law; Selection of Forum | 112 |
| 38.10 | Recordation | 112 |

OBOT000172

PTX-68-7

38.11 Extensions by Landlord ........................................................................................... 112

38.12 Further Assurances .................................................................................................. 112

38.13 Attorneys' Fees ....................................................................................................... 112

38.14 Lease Effectiveness ................................................................................................. 113

38.15 Severability; Survival .............................................................................................. 113

38.16 Cooperation in the Event of Legal Challenge .......................................................... 113

38.17 Incident Management, Notifications and Reports ..................................................... 113

38.18 Books and Records and Inspection .......................................................................... 114

38.19 Public Disclosure .................................................................................................... 115

38.20 Dispute Disclosure .................................................................................................. 115

ARTICLE 39. RIGHT OF FIRST REFUSAL ............................................................................ 115

39.1 Grant of Right ......................................................................................................... 115

ARTICLE 40. DEFINITION OF CERTAIN TERMS .................................................................. 116

OBOT000173

**PTX-68-8**

## GROUND LEASE
## FOR
## WEST GATEWAY

THIS GROUND LEASE (this "Lease") is entered into on February 16, 2016 by and between the CITY OF OAKLAND, a municipal corporation, (the "City" or "Landlord"), and OAKLAND BULK AND OVERSIZED TERMINAL, LLC, a California limited liability company (the "Developer" or "Tenant"). Landlord (or City) and Tenant (or Developer) are hereinafter sometimes referred to individually as a "Party" and collectively as the "Parties."

### RECITALS

THIS LEASE IS MADE WITH REFERENCE TO THE FOLLOWING FACTS AND CIRCUMSTANCES:

A.  These Recitals refer to and use certain capitalized terms that are defined in Article 40 of this Lease.

B.  City is the owner of that certain real property located in a portion of the former Oakland Army Base, comprised of approximately 33.84 acres of land, improvements, and appurtenances, and commonly referred to by the Parties as the West Gateway. Pursuant to that certain Oakland Army Base Title Settlement and Exchange Agreement, dated as of or about June 30, 2006, all of the West Gateway was freed from the public trust for commerce, navigation and fisheries ("Public Trust"), the terms and conditions of Chapter 657 of the Statutes of 1911, as amended ("1911 Grant"), and other statutory restrictions, with the exception of the approximately 16.7 acre parcel located within the West Gateway commonly referred to by the parties as "Parcel E", which was impressed with the Public Trust and the terms and conditions of the 1911 Grant by patent from the State of California.

C.  On or about December 4, 2012, City, Oakland Redevelopment Successor Agency ("ORSA") and Prologis CCIG Oakland Global, LLC, a Delaware limited liability company ("Prologis/CCIG"), executed that certain Lease Disposition and Development for the Army Base Gateway Redevelopment Project, dated effective as of December 4, 2012 (the "Original LDDA"). On or about August 30, 2013, pursuant to ORSA Resolution No. 2013-020, approval of the Oakland Oversight Board, Department of Finance, and California State Lands Commission, ORSA transferred the portion of the former Oakland Army Base then owned by ORSA (known as Parcel E) by quitclaim deed recorded as Document No. No. 2013-295093 to City along with all of ORSA's rights or obligations relating to the former Oakland Army Base, and thereafter had no further rights or obligations under the Original LDDA. On or about October 17, 2013, City and Prologis/CCIG entered into that certain First Amendment to Army Base Gateway Redevelopment Project Lease Disposition and Development Agreement (the "LDDA First Amendment"). On or about December 3, 2013, City and Prologis/CCIG entered into that certain letter agreement (the "LDDA Second

1

OBOT000174

**PTX-68-9**

Amendment"). On or about June 13, 2014, City, Prologis/CCIG and Tenant entered into that certain Partial Assignment and Assumption (West Gateway) of the Lease Disposition and Development Agreement whereby Tenant succeeded to all of Prologis/CCIG's rights and obligations with respect to the West Gateway under the Original LDDA, as amended. On or about February 16, 2016, City, Prologis/CCIG, Tenant, CCIG Oakland Global, LLC ("CCIGOG") entered into that certain Partial Assignment and Assumption (MH-1 Lease Area) of the Lease Disposition and Development Agreement whereby CCIGOG succeeded to all of Prologis/CCIG's rights and obligations with respect to the MH-1 Lease Area under the Original LDDA, as amended. On or about February 16, 2016, City, Prologis/CCIG, Tenant, CCIGOG and Prologis Mesquite, LLC entered into that certain Partial Assignment and Assumption (East Gateway/New Central Gateway) of the Lease Disposition and Development Agreement whereby Prologis Mesquite, LLC succeeded to all of Prologis/CCIG's rights and obligations with respect to the East Gateway and the New Central Gateway Lease Area under the Original LDDA as amended. On or about February 16, 2016, City, Prologis/CCIG, Tenant, CCIGOG and Prologis Mesquite, LLC entered into that certain Third Amendment to Army Base Gateway Redevelopment Project Lease Disposition and Development Agreement (the "LDDA Third Amendment"). The Original LDDA, as so amended (the "LDDA"), provides, among other things, for the execution and delivery by the Parties, upon satisfaction or waiver by the applicable party of conditions precedent set forth therein, of a ground lease by City to Developer (or an Affiliate of Developer) of the West Gateway (the "Phase"), and the development thereon of certain improvements consistent with the Scope of Development attached hereto as Exhibit 3.1 and the provisions of this Lease (the "Project").

D.    All conditions precedent to the execution and delivery of this Lease, as set forth in the LDDA, have been satisfied or waived by the Parties in accordance with the LDDA.

E.    This Lease is being made in conformance with and pursuant to the authority given to City in the City Charter. The conveyance by ground lease of the Phase to the Developer was authorized by Council Ordinance No. 13131 C.M.S., dated July 3, 2012, ORSA Resolution No. 2012-006 C.M.S., dated October 2, 2012 and City Council Ordinance No. 13283 C.M.S, dated December 16, 2014. This Lease, as it pertains to Parcel E, is also consistent with the Public Trust and the terms and conditions of the 1911 Grant. In addition, the rents due to the City under Article 2 of this Lease are allocable between Parcel E and the remainder of the Premises for purposes of the City's compliance with its obligations under Section 6306 of the Public Resources Code.

NOW, THEREFORE, in consideration of the foregoing recitals and the covenants and mutual obligations contained in this Lease, and in reliance on Tenant's representations and warranties set forth herein, Landlord and Tenant hereby agree as follows:

2

OBOT000175

**PTX-68-10**

power or to recover any damages as may be permitted by law resulting from the exercise of such power.

ARTICLE 11. LIENS

11.1 Liens. Tenant shall not create or permit the attachment of, and shall promptly following notice, discharge (or cause to be removed of record by the posting of a bond in the amount required by Law) at no cost to Landlord, any lien, security interest, or encumbrance on the Premises or Tenant's leasehold estate, other than (i) this Lease, other permitted Subleases and Permitted Title Exceptions, (ii) liens for non-delinquent Impositions (excluding Impositions which may be separately assessed against the interests of Subtenants), except only for Impositions being contested as permitted by Section 4, (iii) Mortgages permitted under Section 34, (iv) Mortgages encumbering the subleasehold interests of Subtenants, provided no such Mortgage encumbers Tenant's leasehold estate unless such Mortgage is permitted under Section 34, (v) liens created by or on behalf of Landlord during the Term, and (vi) liens of mechanics, material suppliers or vendors, or rights thereto, for sums which under the terms of the related contracts are not at the time due or which are being contested as permitted by Article 4. The provisions of this Section do not apply to liens created by Tenant on its Personal Property.

11.2 Mechanics' Liens. Nothing in this Lease shall be deemed or construed in any way as constituting the request of Landlord, express or implied, for the performance of any labor or the furnishing of any materials for any specific improvement, alteration or repair of or to the Premises or the Improvements, or any part thereof. Tenant agrees that at all times when the same may be necessary or desirable, Tenant will take such action as may be required to prevent the enforcement of any mechanic's or similar liens against the Premises, Tenant's leasehold interest, or Landlord's fee interest in the Premises for or on the account of labor, services or materials furnished to Tenant, or at Tenant's request. Tenant shall provide such advance written notice of any Additional Construction such as shall allow Landlord from time to time to post a notice of non-responsibility on the Premises. If Tenant does not, within sixty (60) days following the imposition of any such lien, cause the same to be released of record, it shall be a material default under this Lease, and Landlord shall have, in addition to all other remedies provided by this Lease or by Law, the right but not the obligation to cause the same to be released by such means as it shall deem proper, including without limitation, payment of the claim giving rise to such lien. All sums paid by Landlord for such purpose and all reasonable expenses incurred by Landlord in connection therewith shall be payable to Landlord by Tenant within thirty (30) days following written demand by Landlord. Notwithstanding the foregoing, Tenant shall have the right to contest any such lien in good faith, if, within sixty (60) days following the imposition of such lien, Tenant, at no cost to Landlord, posts a bond in the statutory amount sufficient to remove such lien from record, or posts other security reasonably acceptable to Landlord.

ARTICLE 12. ASSIGNMENT AND SUBLETTING

12.1 Assignment and Transfer.

12.1.1 Consent of Landlord. Except as otherwise expressly permitted in this Article 12, Tenant, its successors and permitted assigns shall not (i) suffer or permit any

56

OBOT000230

**PTX-68-65**

Significant Change to occur, or (ii) assign, sell, lien, encumber, sublease, or otherwise transfer all or any part of Tenant's interest in and to this Lease or leasehold either voluntarily or by operation of law (either or both (i) and (ii) above, a "Transfer"), without the prior written consent of Landlord as set forth herein and the satisfaction, or written waiver thereof by Landlord (which waiver shall be in Landlord's sole and absolute discretion), of all conditions precedent set forth in this Article 12. It is the intent of this Lease, to the fullest extent permitted by law and equity and excepting only in the manner and to the extent specifically provided otherwise in this Lease, that no Transfer of this Lease, or any interest therein, however consummated or occurring, and whether voluntary or involuntary, may operate, legally or practically, to deprive or limit Landlord of or with respect to any rights or remedies or controls provided in or resulting from this Lease with respect to the Premises and the construction of the Improvements that Landlord would have had, had there been no such Transfer. Without limiting the preceding provisions of this Section 12.1.1, it shall in any instance be reasonable for Landlord to withhold its consent to any Transfer proposed by Tenant (each, a "Proposed Transfer") to the extent that any such Proposed Transfer would serve to so deprive or limit Landlord with respect to its rights under this Lease.

The Parties acknowledge that any Transfer of all or a portion of the Railroad R/O/W Property shall also be subject to the requirements of Section 37.8.1.

12.1.2 Total Transfer. Except as otherwise expressly permitted in Section 12.1.7.2.3 or Section 12.3, Tenant shall not effect any Transfer of the entire Lease or leasehold (each an "Total Transfer"), including any Total Transfer by means of a Significant Change, without Landlord's prior written consent, which may be withheld, delayed or conditioned in Landlord's sole and absolute discretion. The preceding reference to Section 12.1.7.2.3 shall not, under any circumstances, be deemed to permit any Significant Change without Landlord's prior written consent, which may be withheld, delayed or conditioned in Landlord's sole and absolute discretion.

12.1.3 Partial Transfers. Except as otherwise expressly permitted in Section 12.3, Tenant shall not effect any Transfer of less than the entire Lease or leasehold (each a "Partial Transfer"), including any Partial Transfer by means of a Significant Change, without Landlord's prior written consent, which shall not be unreasonably withheld, delayed or conditioned by Landlord if all conditions precedent set forth in Section 12.1.4 are satisfied or waived in writing by Landlord (which waiver shall be in Landlord's sole and absolute discretion).

12.1.4 Conditions. Notwithstanding any provision herein to the contrary (excepting Section 12.1.10), any Transfer is subject to the satisfaction in full, or the written waiver thereof by Landlord (which waiver shall be in Landlord's sole and absolute discretion), of all of the following conditions precedent and covenants of Tenant, all of which are hereby agreed to be reasonable as of the Commencement Date and the date of any Proposed Transfer:

12.1.4.1 Tenant provides Landlord with at least sixty (60) days prior written notice of the Proposed Transfer;

12.1.4.2 Landlord determines, in its reasonable judgment, that the proposed transferee (A) has the financial capacity to own the Project and operate, use and

57

OBOT000231

maintain the Premises in accordance with the Lease and otherwise to perform all of Tenant's obligations under this Lease that are applicable to the interest in the Lease or leasehold that is subsumed within the Transfer; and (B) has sufficient experience and reputation in the operation, use and maintenance of projects of a type and size comparable to the Project. In the case of a Partial Transfer, such qualifications of the proposed transferee shall be assessed with respect the portion of the Premises and applicable obligations under the Lease subsumed within the proposed Partial Transfer;

12.1.4.3    any proposed transferee, by instrument in writing (which may, at the election of Landlord in its sole and absolute discretion, constitute or include a new lease agreement directly between Landlord and such proposed transferee), for itself and its successors and assigns, and expressly for the benefit of Landlord, must expressly assume all of the obligations of Tenant under this Lease and any other agreements or documents entered into by and between Landlord and Tenant relating to the Project, or the portion of the Premises that will be subsumed within the Proposed Transfer, and must agree to be subject to all of the covenants, conditions and restrictions to which Tenant is subject under such documents with respect to the Premises or portion thereof that will be subsumed within the Proposed Transfer;

12.1.4.4    all instruments and other legal documents involved in effecting the Transfer shall have been submitted by Tenant to Landlord for review, including the agreement and instruments of sale, assignment, transfer, or equivalent, any Regulatory Approvals (including, but not limited to, any necessary Regulatory Approvals under, or exemptions from, the Subdivision Map Act), and Landlord shall have approved such documents which approval shall not be unreasonably withheld, delayed or conditioned;

12.1.4.5    Tenant shall comply with the provisions of Section 12.1.5 and, to the extent applicable in the event of a Partial Transfer to a Non-Affiliate Transferee or a Total Transfer to a Non-Affiliate Transferee, Section 12.1.7.1 or 12.1.7.2 as applicable;

12.1.4.6    there shall be no uncured Event of Default or Unmatured Event of Default on the part of Tenant under this Lease uncured or any of the other documents or obligations to be assigned to the proposed transferee, or if uncured, Tenant or the proposed transferee have made provisions to cure the Event of Default, which provisions are satisfactory to Landlord in its sole and absolute discretion;

12.1.4.7    the proposed transferee has demonstrated to Landlord's reasonable satisfaction that the proposed transferee is subject to the jurisdiction of the courts of the State of California;

12.1.4.8    the Proposed Transfer is not in connection with any transaction for purposes of syndicating the Lease, such as a security, bond or certificates of participation financing as determined by Landlord in its sole and absolute discretion but expressly excluding the public trading of shares on the open market;

12.1.4.9    in the event of a Proposed Transfer that is proposed by Tenant to include any Subdivision of the Property or the Premises, with respect to such portion of the

58

OBOT000232

PTX-68-67

38.8 Amendment. Neither this Lease nor any of the provisions hereof may be terminated, amended or modified except by a written instrument executed by the Parties.

38.9 Governing Law; Selection of Forum. This Lease is entered into in the City of Oakland, State of California, and shall be governed by, and interpreted in accordance with, the laws of the State of California, without reference to its conflict of laws provisions. As part of the consideration for Landlord's entering into this Lease, Tenant agrees that all actions or proceedings arising directly or indirectly under this Lease may, at the sole option of Landlord, be litigated in courts having situs within the City of Oakland, and Tenant hereby irrevocably consents and submits to the jurisdiction and venue of any such local, state or federal court, and consents that any service of process in such action or proceeding may be made by personal service upon Tenant wherever Tenant may then be located, or by certified or registered mail directed to Tenant at the address set forth herein for the delivery of notices.

38.10 Recordation. This Lease will not be recorded by either Party. The Parties agree to execute and record in the Official Records a Memorandum of Lease in the form attached hereto as Exhibit 38.10. Promptly upon Landlord's request following the expiration of the Term or any other termination of this Lease, Tenant shall deliver to Landlord a duly executed and acknowledged quitclaim deed suitable for recordation in the Official Records and in form and content satisfactory to Landlord and the City Attorney, for the purpose of evidencing in the public records the termination of Tenant's interest under this Lease. Landlord may record such quitclaim deed at any time on or after the termination of this Lease, without the need for any approval or further act of Tenant.

38.11 Extensions by Landlord. Upon the request of Tenant, Landlord may, by written instrument, extend the time for Tenant's performance of any term, covenant or condition of this Lease or permit the curing of any default upon such terms and conditions as it determines appropriate, including but not limited to, the time within which Tenant must agree to such terms and/or conditions, provided, however, that any such extension or permissive curing of any particular default will not operate to release any of Tenant's obligations nor constitute a waiver of Landlord's rights with respect to any other term, covenant or condition of this Lease or any other default in, or breach of, this Lease or otherwise effect the time of the essence provisions with respect to the extended date or other dates for performance hereunder.

38.12 Further Assurances. The Parties hereto agree to execute and acknowledge such other and further documents as may be necessary or reasonably required to express the intent of the Parties or otherwise effectuate the terms of this Lease. The City Administrator of the Landlord is authorized to execute on behalf of the Landlord any closing or similar documents and any contracts, agreements, memoranda or similar documents with Tenant, State, regional and local entities or enter into any tolling agreement with any Person that are necessary or proper to achieve the purposes and objectives of this Lease, if the City Administrator determines, after consultation with the City Attorney, that the document or agreement is necessary or proper and is in the Landlord's best interests.

38.13 Attorneys' Fees. If either Party hereto fails to perform any of its respective obligations under this Lease or if any dispute arises between the Parties hereto concerning the meaning or interpretation of any provision of this Lease, then the defaulting Party or the Party

112

OBOT000286

**PTX-68-121**

IN WITNESS WHEREOF, the Parties have executed this Lease as of the day and year first above written.

**DEVELOPER/TENANT:**

OAKLAND BULK AND OVERSIZED
TERMINAL, LLC,
a California limited liability company

By: California Capital & Investment Group,
Inc., a California corporation

Its: Sole Member

By: _____

Name: PHILIP TAGAMI

Title: CEO

**CITY/LANDLORD:**

CITY OF OAKLAND,
a municipal corporation

By: _____
      City Administrator

APPROVED AS TO FORM:

BARBARA PARKER, City Attorney

By:_____
      Dianne M. Millner
      Deputy City Attorney

City Resolution Nos.13131 C.M.S and 13283
C.M.S.

136

OBOT000310

IN WITNESS WHEREOF, the Parties have executed this Lease as of the day and year first above written.

**DEVELOPER/TENANT:**

OAKLAND BULK AND OVERSIZED
TERMINAL, LLC,
a California limited liability company

By: California Capital & Investment Group,
Inc., a California corporation

Its: Sole Member

By: _____

Name: _____

Title: _____

**CITY/LANDLORD:**

CITY OF OAKLAND,
a municipal corporation

By: _____

City Administrator

APPROVED AS TO FORM:

BARBARA PARKER, City Attorney

By: _____

Dianne M. Millner
Deputy City Attorney

City Resolution Nos.13131 C.M.S and 13283
C.M.S.

136

OBOT000311

# Exhibit B

# ARMY BASE GATEWAY REDEVELOPMENT PROJECT

## SUB-GROUND LEASE
## FOR
## WEST GATEWAY,

between

## OAKLAND BULK AND OVERSIZED TERMINAL, LLC

### ("Sublandlord")

and

## INSIGHT TERMINAL SOLUTIONS, LLC

### ("Subtenant")

Dated as of September 24, 2018

WGW-ITS (9/20/18)

## TABLE OF CONTENTS

Page

ARTICLE 1      PREMISES; TERM ........................................................................................ 3

    1.1     Premises ..................................................................................................... 3

    1.2     Term of Sublease ....................................................................................... 5

    1.3     Definitions.................................................................................................. 6

    1.4     Relationship of Sublease to LDDA.......................................................... 6

    1.5     Grant of Port Rail Terminal Access and Other Ancillary Rights ........... 6

    1.6     Reserved Easements and Other Post-Commencement Date Title Matters............ 7

    1.7     Subtenant Wharf Improvements ............................................................... 8

    1.8     Access Disclosure ..................................................................................... 9

ARTICLE 2      RENT ....................................................................................................... 10

    2.1     Subtenant's Covenant to Pay Rent.......................................................... 10

    2.2     Base Rent Under Ground Lease............................................................... 10

    2.3     Participation Rent..................................................................................... 12

    2.4     Sublease Base Rent .................................................................................. 13

    2.5     Balloon Rent ............................................................................................ 16

    2.6     Manner of Payment.................................................................................. 17

    2.7     No Abatement or Setoff........................................................................... 17

    2.8     Interest on Delinquent Rent .................................................................... 17

    2.9     Late Charges ............................................................................................ 17

    2.10    Additional Rent........................................................................................ 18

    2.11    Net Sublease............................................................................................ 18

    2.12    Security Deposit....................................................................................... 18

    2.13    Sublease Bonus Rent................................................................................ 20

    2.14    Reduction in Rent .................................................................................... 21

ARTICLE 3      USES ....................................................................................................... 21

    3.1     Permitted Uses of Premises ..................................................................... 21

    3.2     Advertising and Signs ............................................................................. 22

    3.3     Limitations on Uses by Subtenant .......................................................... 22

    3.4     Premises Must Be Used ........................................................................... 23

    3.5     No Commodity Guarantees..................................................................... 23

-i-




**TABLE OF CONTENTS**
(continued)

Page

| | | |
|---|---|---|
| ARTICLE 4 | TAXES AND OTHER IMPOSITIONS | 23 |
| 4.1 | Payment of Possessory Interest, Taxes and Other Impositions | 23 |
| 4.2 | Sublandlord's Right to Pay | 25 |
| 4.3 | Right of Subtenant to Contest Impositions and Liens | 25 |
| 4.4 | Sublandlord's Right to Contest Impositions | 26 |
| ARTICLE 5 | COMPLIANCE WITH LAWS | 26 |
| 5.1 | Compliance with Laws and Other Requirements | 26 |
| 5.2 | Regulatory Approvals | 27 |
| ARTICLE 6 | IMPROVEMENTS | 30 |
| 6.1 | Scope and Timing of Minimum Project | 30 |
| 6.2 | Other Requirements for Initial Improvements | 32 |
| 6.3 | Additional Funds and City's Contingent Reimbursement Obligations | 38 |
| 6.4 | Sublandlord's Right to Approve Additional Construction | 39 |
| 6.5 | Minor Alterations | 41 |
| 6.6 | Subtenant Improvements | 41 |
| 6.7 | Title to Improvements | 41 |
| ARTICLE 7 | MANAGEMENT; REPAIR AND MAINTENANCE | 42 |
| 7.1 | Management and Operating Covenants | 42 |
| 7.2 | Subtenant's Duty to Maintain | 42 |
| 7.3 | Costs of Repairs, Etc. | 42 |
| 7.4 | Sublandlord's Covenants | 43 |
| ARTICLE 8 | UTILITY SERVICES | 43 |
| 8.1 | Utility Services | 43 |
| ARTICLE 9 | DAMAGE OR DESTRUCTION | 43 |
| 9.1 | Definitions | 43 |
| 9.2 | General; Notice; Waiver | 44 |
| 9.3 | Rent after Damage or Destruction | 45 |
| 9.4 | Subtenant's Obligation to Restore | 45 |
| 9.5 | Rights of Sublandlord | 48 |

-ii-





**TABLE OF CONTENTS**
(continued)

Page

| | | |
|---|---|---|
| 9.6 | Subtenant's Election to Restore or Partially Terminate Sublease Under Certain Circumstances | 49 |
| 9.7 | Effect of Partial Termination | 51 |
| 9.8 | No Release of Subtenant's Obligations | 52 |
| 9.9 | Benefit of Sublandlord | 52 |
| ARTICLE 10 | CONDEMNATION | 52 |
| 10.1 | Definitions | 52 |
| 10.2 | General | 53 |
| 10.3 | Notice | 53 |
| 10.4 | Waiver | 53 |
| 10.5 | Total Condemnation | 54 |
| 10.6 | Substantial Condemnation | 54 |
| 10.7 | Partial Condemnation | 55 |
| 10.8 | Allocation of Condemnation Award | 55 |
| 10.9 | Condemnation Restoration | 57 |
| 10.10 | Temporary Condemnation | 60 |
| 10.11 | Relocation Benefits, Personal Property | 60 |
| 10.12 | Benefit of Sublandlord | 60 |
| ARTICLE 11 | LIENS | 60 |
| 11.1 | Liens | 60 |
| 11.2 | Mechanics' Liens | 61 |
| ARTICLE 12 | ASSIGNMENT AND SUBLETTING | 61 |
| 12.1 | Assignment and Transfer | 61 |
| 12.2 | Assignment of Sub-Sublease Rents | 68 |
| 12.3 | Permitted Transfers without Sublandlord Consent | 68 |
| 12.4 | Sub-Subletting by Subtenant | 69 |
| 12.5 | Non-Disturbance of Sub-Subtenants, Attornment, Sub-Sublease Provisions | 70 |
| 12.6 | New Sublease; Amendment to this Sublease | 71 |
| 12.7 | Subdivision | 72 |

-iii-





**PTX-801-4**

**TABLE OF CONTENTS**
(continued)

Page

ARTICLE 13     INDEMNIFICATION OF INDEMNIFIED PARTIES ................................. 72

13.1    Indemnification of Indemnified Parties ............................................... 72

13.2    Immediate Obligation to Defend ........................................................ 73

13.3    Not Limited by Insurance .................................................................. 73

13.4    Survival ............................................................................................. 73

13.5    Other Obligations ............................................................................. 73

13.6    Defense ............................................................................................. 74

13.7    Release of Claims Against Indemnified Parties................................... 74

ARTICLE 14     INSURANCE.................................................................... 74

14.1    Subtenant Insurance Requirements..................................................... 74

ARTICLE 15     HAZARDOUS MATERIALS ........................................... 74

15.1    City's Disclosure............................................................................... 74

15.2    Subtenant Responsibilities During Term ............................................ 76

15.3    Army-Retained Conditions ................................................................ 76

15.4    Regulatory Reopeners; City and Subtenant Responsibilities................ 77

15.5    Remediation; City and Subtenant Coordination ................................. 77

ARTICLE 16     DELAY DUE TO FORCE MAJEURE .............................. 82

16.1    Delay Due to Force Majeure.............................................................. 82

ARTICLE 17     SUBLANDLORD'S RIGHT TO PERFORM TENANT'S
COVENANTS ................................................................. 82

17.1    Sublandlord May Perform in Emergency ........................................... 82

17.2    Sublandlord May Perform Following Subtenant's Failure to Perform.... 82

17.3    Subtenant's Obligation to Reimburse Sublandlord............................. 83

ARTICLE 18     EVENTS OF DEFAULT; TERMINATION ....................... 83

18.1    Events of Default .............................................................................. 83

18.2    Special Provisions Concerning Mortgagees and Events of Default ....... 84

18.3    Special Cure Rights........................................................................... 84

ARTICLE 19     REMEDIES...................................................................... 85

19.1    Sublandlord's Remedies Generally.................................................... 85

19.2    Right to Keep Sublease in Effect ....................................................... 85

-iv-





**TABLE OF CONTENTS**
(continued)

Page

| | | |
|---|---|---|
| 19.3 | Right to Terminate Sublease | 86 |
| 19.4 | Continuation of Subleases and Other Agreements | 87 |
| ARTICLE 20 | EQUITABLE RELIEF | 88 |
| 20.1 | Sublandlord's Equitable Relief | 88 |
| 20.2 | Subtenant's Equitable Relief | 88 |
| ARTICLE 21 | NO WAIVER | 88 |
| 21.1 | No Waiver by Sublandlord or Subtenant | 88 |
| 21.2 | No Accord or Satisfaction | 88 |
| ARTICLE 22 | DEFAULT BY SUBLANDLORD; SUBTENANT'S REMEDIES | 88 |
| 22.1 | Default by Sublandlord; Subtenant's Exclusive Remedies | 88 |
| ARTICLE 23 | SUBTENANT'S RECOURSE AGAINST SUBLANDLORD | 89 |
| 23.1 | No Recourse Beyond Value of Property Except as Specified | 89 |
| 23.2 | No Recourse Against Specified Persons | 89 |
| ARTICLE 24 | LIMITATIONS ON LIABILITY | 90 |
| 24.1 | Waiver of Consequential Damages | 90 |
| 24.2 | Limitation on Sublandlord Liability Upon Transfer | 90 |
| 24.3 | No Recourse Against Specified Persons | 90 |
| 24.4 | No Sublandlord Liability | 90 |
| 24.5 | [Intentionally omitted.] | 90 |
| ARTICLE 25 | ESTOPPEL CERTIFICATES BY SUBTENANT | 91 |
| 25.1 | Estoppel Certificate by Subtenant | 91 |
| ARTICLE 26 | ESTOPPEL CERTIFICATES BY SUBLANDLORD | 91 |
| 26.1 | Estoppel Certificate by Sublandlord | 91 |
| ARTICLE 27 | APPROVALS BY SUBLANDLORD | 91 |
| 27.1 | Fees for Review | 91 |
| 27.2 | Consents | 92 |
| ARTICLE 28 | NO MERGER OF TITLE | 92 |
| 28.1 | No Merger of Title | 92 |
| ARTICLE 29 | QUIET ENJOYMENT | 92 |
| 29.1 | Quiet Enjoyment | 92 |

-v-




**TABLE OF CONTENTS**
(continued)

Page

| | | | |
|---|---|---|---|
| ARTICLE 30 | | SURRENDER OF PREMISES | 92 |
| | 30.1 | End of Sublease Term | 92 |
| ARTICLE 31 | | HOLD OVER | 94 |
| | 31.1 | No Right to Hold Over | 94 |
| | 31.2 | No Right to Relocation Assistance | 94 |
| | 31.3 | Transition | 94 |
| ARTICLE 32 | | NOTICES | 94 |
| | 32.1 | Notices | 94 |
| | 32.2 | Form and Effect of Notice | 96 |
| ARTICLE 33 | | INSPECTION OF PREMISES BY SUBLANDLORD | 96 |
| | 33.1 | Entry | 96 |
| | 33.2 | Exhibit for Sublease | 97 |
| | 33.3 | Notice, Right to Accompany | 97 |
| ARTICLE 34 | | MORTGAGES | 97 |
| | 34.1 | No Mortgage Except as Set Forth Herein | 97 |
| | 34.2 | Leasehold Liens | 98 |
| | 34.3 | Notice of Liens | 98 |
| | 34.4 | Limitation of Mortgages | 98 |
| | 34.5 | Interest Covered by Mortgage | 101 |
| | 34.6 | Qualified Lender | 101 |
| | 34.7 | Rights Subject to Sublease | 101 |
| | 34.8 | Required Provisions of any Mortgage | 102 |
| | 34.9 | Notices to Mortgagee | 103 |
| | 34.10 | Mortgagee's Right to Cure | 103 |
| | 34.11 | Transfer of Mortgage | 107 |
| | 34.12 | Appointment of Receiver | 107 |
| ARTICLE 35 | | NO JOINT VENTURE | 107 |
| | 35.1 | No Joint Venture | 107 |
| ARTICLE 36 | | REPRESENTATIONS AND WARRANTIES | 108 |
| | 36.1 | Representations and Warranties of Subtenant | 108 |

-vi-



**TABLE OF CONTENTS**
(continued)

| | | |
|---|---|---|
| 36.2 | Sublandlord Representations and Warranties | 109 |
| ARTICLE 37 | SPECIAL PROVISIONS | 110 |
| 37.1 | Non-Discrimination | 110 |
| 37.2 | Mitigation Measures | 111 |
| 37.3 | Alcohol, Firearms, Tobacco Product Advertising Prohibition | 111 |
| 37.4 | Waiver of Relocation Assistance Rights | 111 |
| 37.5 | Campaign Contribution Limits | 111 |
| 37.6 | Community Benefits | 112 |
| 37.7 | Other Requirements | 112 |
| 37.8 | Enforcement of City's Additional Covenants Under the Master Lease | 112 |
| 37.9 | Coordination With Master Lease | 112 |
| ARTICLE 38 | GENERAL | 114 |
| 38.1 | Time of Performance | 114 |
| 38.2 | Interpretation of Agreement | 114 |
| 38.3 | Successors and Assigns | 115 |
| 38.4 | No Third Party Beneficiaries | 115 |
| 38.5 | Real Estate Commissions | 115 |
| 38.6 | Counterparts; Facsimiles | 115 |
| 38.7 | Entire Agreement | 115 |
| 38.8 | Amendment | 116 |
| 38.9 | Governing Law; Selection of Forum | 116 |
| 38.10 | Recordation | 116 |
| 38.11 | Extensions by Sublandlord | 116 |
| 38.12 | Further Assurances | 116 |
| 38.13 | Attorneys' Fees | 117 |
| 38.14 | Severability; Survival | 117 |
| 38.15 | Cooperation in the Event of Legal Challenge | 117 |
| 38.16 | Incident Management, Notifications and Reports | 117 |
| 38.17 | Books and Records and Inspection | 118 |
| 38.18 | Public Disclosure | 11 |

-vii-




**TABLE OF CONTENTS**
(continued)

Page

38.19  Dispute Disclosure ............................................................................................ 119

ARTICLE 39        RIGHT OF FIRST REFUSAL....................................................... 119

39.1  Grant of Right ................................................................................................... 119

ARTICLE 40        DEFINITION OF CERTAIN TERMS ......................................... 120





**PTX-801-9**

**SUB-GROUND LEASE**
**FOR**
**WEST GATEWAY**

THIS SUB-GROUND LEASE (this "Sublease") is entered into on September 24, 2018, by and between OAKLAND BULK AND OVERSIZED TERMINAL, LLC, a California limited liability company (the "Sublandlord"), and INSIGHT TERMINAL SOLUTIONS, LLC, a Delaware limited liability company (the "Subtenant"). Sublandlord and Subtenant are hereinafter sometimes referred to individually as a "Party" and collectively as the "Parties."

**RECITALS**

THIS SUBLEASE IS MADE WITH REFERENCE TO THE FOLLOWING FACTS AND CIRCUMSTANCES:

A.    These Recitals refer to and use certain capitalized terms that are defined in Article 40 of this Sublease.

B.    The City of Oakland ("City" or "Master Landlord") is the owner of that certain real property located in a portion of the former Oakland Army Base, comprised of approximately 33.84 acres of land, improvements, and appurtenances, and commonly referred to by the Parties as the "West Gateway." The West Gateway is more particularly described and depicted in Exhibit 1.1.1-A attached hereto. Pursuant to that certain Oakland Army Base Title Settlement and Exchange Agreement, dated as of or about June 30, 2006, all of the West Gateway was freed from the public trust for commerce, navigation and fisheries ("Public Trust"), the terms and conditions of Chapter 657 of the Statutes of 1911, as amended ("1911 Grant"), and other statutory restrictions, with the exception of the approximately 16.7-acre parcel located within the West Gateway commonly referred to by the Parties as "Parcel E," which was impressed with the Public Trust and the terms and conditions of the 1911 Grant by patent from the State of California.

C.    On or about December 4, 2012, City, Oakland Redevelopment Successor Agency ("ORSA"), and Prologis CCIG Oakland Global, LLC ("Prologis/CCIG") executed that certain Lease Disposition and Development for the Army Base Gateway Redevelopment Project, dated effective as of December 4, 2012 (the "Original LDDA"). On or about October 17, 2013, City and Prologis/CCIG entered into that certain First Amendment to Army Base Gateway Redevelopment Project Lease Disposition and Development Agreement (the "LDDA First Amendment"). On or about December 3, 2013, City and Prologis/CCIG entered into that certain letter agreement (the "LDDA Second Amendment"). On or about June 13, 2014, City, Prologis/CCIG and Sublandlord entered into that certain Partial Assignment and Assumption (West Gateway) of the Lease Disposition and Development Agreement whereby Sublandlord succeeded to all of Prologis/CCIG's rights and obligations with respect to the West Gateway under the Original LDDA, as amended. On or about  February 16, 2016, City, Prologis/CCIG, Sublandlord,




**PTX-801-10**

CCIG Oakland Global, LLC ("CCIGOG") entered into that certain Partial Assignment and Assumption (MH-1 Lease Area) of the Lease Disposition and Development Agreement whereby CCIGOG succeeded to all of Prologis/CCIG's rights and obligations with respect to the MH-1 Lease Area under the Original LDDA, as amended. On or about February 16, 2016, City, Prologis/CCIG, Sublandlord, CCIGOG and Prologis Mesquite, LLC entered into that certain Partial Assignment and Assumption (East Gateway/New Central Gateway) of the Lease Disposition and Development Agreement whereby Prologis Mesquite, LLC succeeded to all of Prologis/CCIG's rights and obligations with respect to the East Gateway and the New Central Gateway Lease Area under the Original LDDA as amended. On or about February 16, 2016, City, Prologis/CCIG, Sublandlord, CCIGOG and Prologis Mesquite, LLC entered into that certain Third Amendment to Army Base Gateway Redevelopment Project Lease Disposition and Development Agreement (the "LDDA Third Amendment"). The Original LDDA as modified by the LDDA First Amendment, LDDA Second Amendment, and LDDA Third Amendment is collectively referred to herein as the "LDDA".

D.   Concurrently with the date hereof, (1) City and Sublandlord previously executed that certain Army Base Gateway Redevelopment Project Ground Lease for West Gateway, dated February 16, 2016 (the "Ground Lease" or "Master Lease") for the West Gateway in conformance with and pursuant to the authority given to City in the City Charter and (2) Sublandlord and Subtenant have executed a Subordination and Non-Disturbance Agreement with respect to this Sublease (the "SNDA") and have submitted the same to the City for its approval and execution. The conveyance by Ground Lease of the West Gateway to the Sublandlord was authorized by Council Ordinance No. 13131 C.M.S., dated July 3, 2012, ORSA Resolution No. 2012-006 C.M.S., dated October 2, 2012 and City Council Ordinance No. 13283 C.M.S, dated December 16, 2014. The Ground Lease and this Sublease as they pertain to Parcel E, are also consistent with the Public Trust and the terms and conditions of the 1911 Grant. In addition, the rents due to the City under Article 2 of the Ground Lease are allocable between Parcel E and the remainder of the West Gateway—as determined by the City—for purposes of the City's compliance with its obligations under Section 6306 of the Public Resources Code.

E.   Sublandlord desires to sublease a portion of the West Gateway leased under the Ground Lease to Subtenant, and Subtenant desires to sublease such portion of the West Gateway from Sublandlord, in accordance with the terms and conditions of this Sublease.

F.   All conditions precedent to the execution and delivery of the Ground Lease as set forth in the LDDA have been satisfied or waived by Sublandlord and City in accordance with the LDDA and/or the Ground Lease.




**PTX-801-11**

## SUBLEASE

NOW, THEREFORE, in consideration of the foregoing recitals and the covenants and mutual obligations contained in this Sublease, and in reliance on Subtenant's and Sublandlord's representations and warranties set forth herein, Sublandlord and Subtenant hereby agree as follows:

ARTICLE 1  PREMISES; TERM

    1.1    <u>Premises</u>.

        1.1.1    <u>Sublease of Premises; Description</u>.    Sublandlord hereby leases to Subtenant, and Subtenant hereby leases from Sublandlord, the real property in the City of Oakland, California, located in the West Gateway, comprised of an approximately 19.0 acre portion of the West Gateway, as more particularly described and depicted in Exhibit 1.1.1-B attached hereto (together with all rights, privileges and easements appurtenant thereto and owned by City and leased to Sublandlord pursuant to the Master Lease, collectively, the "Property"). The Property, the Existing Improvements, and any and all other Improvements hereafter located on the Property subleased to Subtenant hereunder at any time during the Term are collectively referred to in this Sublease as the "Premises." Notwithstanding any provision herein to the contrary, the Property and the Premises do not include the following properties depicted on Exhibit 1.1.1-C (the "Site Plan"): (i) the AMS Site; (ii) any dedicated public rights of way (or rights of way offered for public dedication) within the West Gateway, (iii) the real property in the North Gateway or (iv) certain other real property located within the West Gateway, comprised of (a) approximately 7.82 acres (which real property includes both fee interests owned by City and easement interests in favor of City) (the "Railroad R/O/W Property") and (b) the portion of the property described in the Master Lease as the West Gateway Property that is not included in the Premises.

The Parties acknowledge that (a) they are entering into this Sublease prior to City's completion of the Public Improvements and (b) the completion of the Public Improvements may involve the construction of improvements or grant of property rights to third parties that materially limits the utility of portions of the Premises for and the development and operation thereon of certain improvements consistent with the Scope of Development attached hereto as Exhibit 3.1 (the "Project"). Concurrently with City's Completion of the Public Improvements that are located on or adjacent to the Premises, Sublandlord and the City shall complete the process set forth in Section 1.1.1 of the Master Lease to omit any portion of the Premises that has been materially affected by the Completion of the Public Improvements. The results of such process shall be binding on the Parties and the Parties shall memorialize the corresponding adjustments to the Premises by (y) entering into to an amendment to this Sublease which (i) identifies the portions of the Premises removed pursuant to such process, (ii) memorializes the final boundaries, acreage and square footage of the final Premises and (iii) states that except for those obligations which are expressly stated in this Sublease to survive termination of this Sublease, all of the Parties' obligations under this Sublease with respect to the removed areas shall terminate and (z) amending the Memorandum of Sublease to reflect the final Premises. The Parties' rights and obligations under this Sublease shall continue unabated with respect to the original Premises until the adjustments to the Premises are completed pursuant to the Master Lease.

WGW-ITS (09/20/18)        3





from making campaign contributions to Oakland candidates between commencement of negotiations and either one hundred eighty (180) days after completion of, or termination of, contract negotiations.

Subtenant shall sign and date an Acknowledgement of Campaign Contribution Limits Form attached hereto as Exhibit 37.5 and incorporated herein.

37.6    Community Benefits. The City and Sublandlord have previously negotiated and agreed upon a plan of Community Benefits related to the Project and Subtenant's performance of this Sublease. As additional consideration for this Sublease, Subtenant hereby agrees to perform all of its obligations set forth in Exhibit 37.6 attached to this Sublease and incorporated herein in full by this reference.

37.7    Other Requirements. Subtenant shall operate and maintain the Premises in accordance with: (1) all applicable federal, state and local requirements for access for disabled persons; (2) the City's Equal Benefits Ordinance; and (3) environmental sustainability measures to the extent that such features are equivalent or lower in cost than comparable non-sustainable alternatives, when measured over their respective life-cycles.

37.8    Enforcement of City's Additional Covenants Under the Master Lease. Sublandlord shall use commercially reasonable efforts (consistent with its rights under the Master Lease) to enforce City's obligations under Section 37.9 of the Master Lease.

37.9    Coordination With Master Lease.

37.9.1    This Sublease is subject and subordinate in all respects to the Master Lease and the rights of Master Landlord thereunder and the SNDA and Subtenant accepts this Sublease subject to all of the terms, covenants, provisions, conditions and agreements contained in the Master Lease, the SNDA and the matters to which the Master Lease is subject and subordinate, each to the extent applicable to the Premises. This Sublease is also subject to any future amendments and supplements to the Master Lease and the SNDA approved in writing by Subtenant in its sole discretion.

37.9.2    As between Master Landlord and Subtenant, Subtenant shall comply with all obligations of "Tenant" under the Master Lease with respect to the Premises, including, but not limited to, the Community Benefits with respect to the Premises.

37.9.3    To the extent required under the Master Lease, Sublandlord and Subtenant shall work cooperatively in all communications (verbal or written) with City or other Regulatory Agencies in connection with the design and construction, and all approvals associated therewith, of the Subtenant Improvements.

37.9.4    Subtenant recognizes that Sublandlord is not in a position to render any of the services or to perform any of the obligations required of Master Landlord by the terms of the Master Lease. Therefore, despite anything to the contrary in this Sublease, Subtenant agrees that performance by Sublandlord of its obligations under this Sublease is conditioned on performance by the Master Landlord of its corresponding obligations under the Master Lease, and Sublandlord will not be liable to Subtenant for any default by the Master Landlord under the

**PTX-801-121**

Master Lease. Subtenant will not have any claim against Sublandlord based on the Master Landlord's failure or refusal to comply with any of the provisions of the Master Lease unless that failure or refusal is a result of Sublandlord's act or failure to act. Despite the Master Landlord's failure or refusal to comply with any of those provisions of the Master Lease, this Sublease will remain in full force and effect and Subtenant will pay the Rent and Additional Rent and all other charges provided for in this Sublease without any abatement, deduction or setoff.

37.9.5 Subtenant will not cause or allow to be caused any default under the Master Lease or Consent, and shall indemnify, defend and hold Sublandlord harmless against any loss, liability (other than defaults caused solely by Sublandlord), and expenses (including reasonable attorneys' fees and costs) arising out of any default under the Master Lease or Consent by Subtenant. If the Master Lease terminates for any reason prior to the expiration or termination of this Sublease, Subtenant shall not have any claim whatsoever against Sublandlord arising or resulting from such termination of the Master Lease unless directly caused by the default of Sublandlord; provided, however, that Sublandlord shall in no way be liable under any circumstances for any indirect, consequential, special, punitive, treble, or exemplary damages.

Notwithstanding anything to the contrary herein contained, the following provisions will govern this Sublease:

(a) In the event of a conflict between the Permitted Uses identified above and those uses permitted under Article 3 of the Master Lease, Subtenant shall only use the Premises for the latter;

(b) In no event will the term of this Sublease extend beyond the term of the Master Lease;

(c) In addition to its other indemnification obligations hereunder, Subtenant shall indemnify the City from any and all Losses resulting from Subtenant's use or occupancy of the Premises. In connection with this obligation, Subtenant shall comply with, assume, and fully perform all of the obligations of "Tenant" as set forth in Article 13 of the Master Lease;

(d) Subtenant shall name the City as an additional insured on any liability insurance required to be carried under this Sublease, which liability insurance will be in an amount and otherwise in accordance with the requirements for insurance set forth in Exhibit 14.1; and

(e) If Sublandlord defaults under the Master Lease and Subtenant is notified of the default, then, at City's option, Subtenant shall attorn to the City and, if requested, make any Rent payments due hereunder directly to the City.

37.9.6. Subtenant shall use commercially reasonable efforts to provide to Sublandlord any documents and material reasonably requested by the City in connection with the Parties entering into this Sublease or with regards to the SNDA. In connection therewith, and in compliance with Section 12.5.1 of the Master Lease, Subtenant agrees:

(a) To comply with all provisions of the Master Lease applicable to this Sublease, the Premises, and Subtenant's use and occupancy thereof; and




agreements between the Parties with respect to all or any part of the subject matter of the terms and conditions mentioned herein or incidental hereto, including, without limitation, that certain Army Base Gateway Redevelopment Project Sub-Ground Lease for West Gateway, dated January 8, 2018, executed by the Parties but rejected by the City and otherwise not perfected by the Parties. No parole evidence of any prior of other agreement shall be permitted to contradict or vary the provisions of this Sublease.

38.8    Amendment. Neither this Sublease nor any of the provisions hereof may be terminated, amended or modified except by a written instrument executed by the Parties.

38.9    Governing Law; Selection of Forum. This Sublease is entered into in the City of Oakland, State of California, and shall be governed by, and interpreted in accordance with, the laws of the State of California, without reference to its conflict of laws provisions. As part of the consideration for entering into this Sublease, the Parties agree that all actions or proceedings arising directly or indirectly under this Sublease shall be litigated in courts having situs within the City of Oakland, and the Parties hereby irrevocably consent and submit to the jurisdiction and venue of any such local, state or federal court, and consents that any service of process in such action or proceeding may be made by personal service upon such Party wherever such Party may then be located, or by certified or registered mail directed to Subtenant at the address set forth herein for the delivery of notices.

38.10   Recordation. This Sublease will not be recorded by either Party. The Parties agree to execute and record in the Official Records a Memorandum of Sublease in the form attached hereto as Exhibit 38.10. Promptly upon Sublandlord's request following the expiration of the Term or any other termination of this Sublease, Subtenant shall deliver to Sublandlord a duly executed and acknowledged quitclaim deed suitable for recordation in the Official Records and in form and content satisfactory to Sublandlord, for the purpose of evidencing in the public records the termination of Subtenant's interest under this Sublease. Sublandlord may record such quitclaim deed at any time on or after the termination of this Sublease, without the need for any approval or further act of Subtenant.

38.11   Extensions by Sublandlord. Upon the request of Subtenant, Sublandlord may, by written instrument, extend the time for Subtenant's performance of any term, covenant or condition of this Sublease or permit the curing of any default upon such terms and conditions as it determines appropriate, including but not limited to, the time within which Subtenant must agree to such terms and/or conditions, provided, however, that any such extension or permissive curing of any particular default will not operate to release any of Subtenant's obligations nor constitute a waiver of Sublandlord's rights with respect to any other term, covenant or condition of this Sublease or any other default in, or breach of, this Sublease or otherwise effect the time of the essence provisions with respect to the extended date or other dates for performance hereunder.

38.12   Further Assurances. The Parties hereto agree to execute and acknowledge such other and further documents as may be necessary or reasonably required to express the intent of the Parties or otherwise effectuate the terms of this Sublease.

**PTX-801-125**




Uninsured Casualty as defined in Section 9.1.7.

Unmatured Event of Default means a circumstance which, with notice or the passage of time would constitute an Event of Default.

West Gateway means the 33.84± acres of real property, comprising a portion of the former Oakland Army Base and located adjacent to the Central Gateway, commonly referred to as the West Gateway and depicted as such on the Site Plan in Exhibit 1.1.1-C attached to this Sublease.

WGW Additional Site Preparation work as defined in Section 6.2.6.7(c).

Worth at the Time of the Award as defined in Section 19.3.1.1.

IN WITNESS WHEREOF, the Parties have executed this Sublease as of the day and year first above written.

**SUBTENANT:**                    **SUBLANDLORD:**

INSIGHT TERMINAL SOLUTIONS, a      OAKLAND BULK AND OVERSIZED
Delaware limited liability company   TERMINAL, LLC,
                                   a California limited liability company

By: _____

John Siegel
Authorized Signatory

By: _____

Phil Tagami
Authorized Signatory



Exhibit C



BA20241660169



**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**STATEMENT OF INFORMATION**
**LIMITED LIABILITY COMPANY**

California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 657-5448

| For Office Use Only |
|---|
| **-FILED-** |
| File No.: BA20241660169 |
| Date Filed: 9/17/2024 |

| Entity Details | |
|---|---|
| Limited Liability Company Name | INSIGHT TERMINAL SOLUTIONS, LLC |
| Entity No. | 201825510292 |
| Formed In | DELAWARE |

**Street Address of Principal Office of LLC**

| | |
|---|---|
| Principal Address | 205 S MARTEL AVENUE<br>LOS ANGELES, CA 90036 |

**Mailing Address of LLC**

| | |
|---|---|
| Mailing Address | 205 S MARTEL AVENUE<br>LOS ANGELES, CA 90036 |
| Attention | |

**Street Address of California Office of LLC**

| | |
|---|---|
| Street Address of California Office | 205 S MARTEL AVENUE<br>LOS ANGELES, CA 90036 |

**Manager(s) or Member(s)**

| Manager or Member Name | Manager or Member Address |
|---|---|
| VIKAS TANDON | 205 S MARTEL AVENUE<br>Los Angeles, CA 90036 |

**Agent for Service of Process**

| | |
|---|---|
| Agent Name | VIKAS TANDON |
| Agent Address | 205 S MARTEL AVENUE<br>LOS ANGELES, CA 90036 |

**Type of Business**

| | |
|---|---|
| Type of Business | INVESTMENTS |

**Email Notifications**

| | |
|---|---|
| Opt-in Email Notifications | Yes, I opt-in to receive entity notifications via email. |

**Chief Executive Officer (CEO)**

| CEO Name | CEO Address |
|---|---|
| None Entered | |

**Labor Judgment**

No Manager or Member, as further defined by California Corporations Code section 17702.09(a)(8), has an outstanding final judgment issued by the Division of Labor Standards Enforcement or a court of law, for which no appeal is pending, for the violation of any wage order or provision of the Labor Code.

B3046-5795 09/17/2024 10:16 AM Received by California Secretary of State

Electronic Signature

☒ By signing, I affirm under penalty of perjury that the information herein is true and correct and that I am authorized by California law to sign.

*Stephen Kafka*
_____
Signature

*09/17/2024*
_____
Date

B3046-5796 09/17/2024 10:16 AM Received by California Secretary of State