**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | |
|---|---|
| In re:<br><br>INSIGHT TERMINAL SOLUTIONS, LLC, *et al*.,<br><br>                              Debtors. | Chapter 11<br><br>Case No. 19-32231<br><br>(Jointly Administered)<br><br>Adv. Proc. No. 24-03007-jal |
| INSIGHT TERMINAL SOLUTIONS, LLC, as the Reorganized Debtor,<br><br>                              Plaintiff,<br><br>            v.<br><br>CITY OF OAKLAND,<br><br>                              Defendant. | Judge Joan A. Lloyd<br><br>**TO BE HEARD BY THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY** |

**REPLY IN SUPPORT OF DEFENDANT CITY OF OAKLAND, CALIFORNIA'S MOTION TO WITHDRAW THE REFERENCE AND TRANSFER VENUE**

**INTRODUCTION**

In 2020, the Bankruptcy Court for the Western District of Kentucky confirmed a Chapter 11 plan of reorganization and awarded control of former Debtor and Plaintiff Insight Terminal Solutions ("ITS") to a Los Angeles-based financial investor, and ITS has had no business in or connection with Kentucky ever since. Years later, ITS invoked the bankruptcy court's continuing jurisdiction over its estate to sue Defendant City of Oakland, California ("City") (which does no business in or with any entity in Kentucky) for two California law business torts that raise no

1

issues of federal bankruptcy law, and involve publicly-owned land, contracts, and events entirely within California—facts which ITS does not and cannot deny.

Conspicuously absent from ITS's opposition to the City's motion to withdraw the reference and transfer venue to California is any valid justification for *why* this case should remain in Kentucky. The prior Kentucky-based owner lost control in 2020 (and then died), there are no creditors in Kentucky, and this dispute over the failed development project in Oakland, California is *entirely* located in California. Amid its rhetorical hand-waving and procedural objections, all ITS points to is a "standard" approach of allowing non-core adversary proceedings to remain in bankruptcy courts for pre-trial proceedings, and a supposed "presumption" that adversary proceedings should remain in the same district as an underlying bankruptcy. But neither this standard practice nor this presumption applies here.

ITS also fails to meaningfully respond to the many *case-specific* reasons for why this Court should withdraw the reference and transfer venue. With respect to the motion to withdraw, ITS trains its focus on an alleged procedural defect: that it was filed before obtaining a ruling on whether the claims were core or non-core. But the City did obtain such a ruling: The bankruptcy court's order denying the City's motion to dismiss for lack of subject matter jurisdiction squarely held that the claims at issue are non-core under governing law. (Adv. Dkt. 56 at 9 ("Although this proceeding neither arises under the Bankruptcy Code nor arises in a bankruptcy case, it is 'related to' this chapter 11 case.").)[1]

ITS's chief substantive argument against withdrawal is that the bankruptcy court (which signed ITS's proposed order without alteration) got it wrong, and that the claims, all of a sudden, are now core. But only a few months ago, ITS forthrightly conceded that its claims did not arise

---

[1] The City maintains that the bankruptcy court lacks jurisdiction for this non-core matter and continues to reserve its rights with regard to jurisdiction.

2

in or under federal bankruptcy law, and therefore were non-core. And in any event, there is no authority for the proposition that its California state business tort claims "arise in" a bankruptcy case or "under" the United States bankruptcy laws (as all core claims must).

ITS is largely silent on the remaining factors militating in favor of withdrawal. It does not dispute that the City has the right to a jury trial and that any such trial would need to be heard by a district court. It provides no response to the flurry of cases withdrawing the reference and transferring venue (Mot. 15 (collecting cases)) under circumstances like those presented here. It outright ignores the City's arguments showing that withdrawal will not create disuniformity in the bankruptcy laws, will not promote forum shopping, and will expedite the proceeding. (Mot. 15-16.)

As to the motion to transfer venue, ITS largely sidesteps the central issue of the forum selection clause whereby ITS agreed to bring any claim arising *directly or indirectly* from its sublease in Northern California (ITS never disputes that its claims of interference *with this sublease* fall within this provision). ITS also does not dispute that the center of gravity of this case is in California: the parties, evidence, relevant conduct, and nearly all the witnesses are located there. It also does not contest that unlike the Northern District of California, Kentucky courts have no subject matter expertise in the California state law issues that suffuse this case and lack the power to compel the attendance of witnesses.

Its chief arguments are that technological advancements that allow parties to appear remotely render geographic considerations "immaterial," and that the Northern District of California's subject matter expertise does not matter because the bankruptcy court has already ruled on the City's motion to dismiss. Unsurprisingly, these arguments are not supported by any authority whatsoever.

ITS also never explains why federal courts in Kentucky with no connection to the facts or law of this case should allocate their limited resources to managing this litigation in two repetitive steps (first in the bankruptcy court, then in this Court, necessarily revisiting dispositive issues), as opposed to a California district court which can do this in one step. ITS never explains why the residents of Kentucky should sit as jurors over this foreign dispute, or why the people of California should be denied access to court proceedings over issues of significant regional interest.

Finally, ITS peppers its opposition with unexplained assertions that this proceeding is somehow intertwined with the "Petition, Plan and Confirmation Order." (E.g. Opp. 12, 18-19.) But this proceeding turns entirely on issues of California state tort and immunity doctrines that have no relation to the bankruptcy code, or the language of the approved plan. And the viability of ITS's claims hinge, as the bankruptcy court held, on the outcome of pending California state court proceedings over the validity of the primary lease of the property at issue, which is currently on appeal in California state court (because the contract language terminates any subleases with the primary lease)—issues that do not implicate the bankruptcy at all. ITS could have joined that action as a plaintiff, but instead opted to merely bankroll OBOT's litigation expenses. Only after the California trial court found that OBOT was not entitled to any damages did ITS decide to file these copycat tort claims in Kentucky bankruptcy court (notably, the California court dismissed business partner OBOT's exact same torts against the City on the merits back in 2018). This Court should put an end to ITS's forum shopping and transfer this proceeding to the district court that is closest to the facts and the law of this case: the Northern District of California.

## ARGUMENT

### I.    This Motion Is Procedurally Proper and Was Timely-Filed.

***The Motion is Not "Premature."*** ITS's main argument is that the City "holds itself above the rules" by "leapfrog[ging] the Bankruptcy Court" and asking this Court to decide in the first instance whether this adversary proceeding is core or non-core. (Opp. 7.) But the bankruptcy court has already conclusively resolved the issue. In its order denying the City's motion to dismiss, the bankruptcy court concluded that it lacks jurisdiction because these state law torts do not "arise in" or "arise under" federal bankruptcy law, and has jurisdiction only because the claims are "related to" the bankruptcy proceeding. (Adv. Dkt. 56 at 9-12.) This conclusion necessarily resolves the issue of whether the proceeding is "core" or "non-core" because "'[t]he terms 'non-core' and 'related' are synonymous.'" *Stern v. Marshall*, 564 U.S. 462, 477 (2011); *id.* at 476 ("core proceedings are those that arise in a bankruptcy case or under Title 11"); *Sergent v. McKinstry*, 472 B.R. 387, 395 (E.D. Ky. 2012) (proceedings "that are otherwise related to a Title 11 case are 'non-core proceedings.'"); *Peabody Landscape Const. Inc. v. Schottenstein*, 371 B.R. 276, 279 n.3 (S.D. Ohio 2007) ("Non-core proceedings, by statutory definition, are those proceedings 'otherwise related to a case under title 11.'"). Because claims that fall *only* within a bankruptcy court's "related to" jurisdiction cannot be "core", there is nothing remaining for the bankruptcy court to resolve, and this motion need await no further ruling from that court.[2]

---

[2] Some courts within the Sixth Circuit have held that district courts may decide whether claims are core or non-core in the first instance, observing that a contrary rule "add[s] another unnecessary layer of judicial decision making that would delay the proceedings" given that the bankruptcy court's determination is subject to de novo review by the district court. *In re Cmty. Mem'l Hosp.*, 532 B.R. 898, 903 (E.D. Mich. 2015).

To avoid this outcome, ITS now argues that *Stern* does not foreclose the possibility that a claim could be "related to" a bankruptcy case yet also be "core." (Opp. 11.) This is specious. *Stern* bluntly rejected that argument: "It does not make sense to describe a 'core' bankruptcy proceeding as merely 'related to' the bankruptcy case; oxymoron is not a typical feature of congressional drafting." *Stern*, 564 U.S. at 477. As explained further below with respect to the substantive withdrawal standard, all of ITS' further arguments attempting to portray these state law business torts as "core" defy governing law. *Infra* 6-8.

**The Motion is Not Too Late**. At the same time ITS argues the City's motion is premature, it also argues that it was filed too late. (Opp. 2 (motion "is garishly tactical because the City chose to purposefully forestall the filing" until after motion to dismiss denied).) Yet the City diligently filed this motion immediately after the bankruptcy court's motion to dismiss order. Once the bankruptcy court denied the City's Rule 12(b)(1) and (b)(6) motions, and thereby resolved the basis for jurisdiction, this motion became timely. *Cf. In re Schlein*, 188 B.R. 13, 15 (E.D. Pa. 1995) (motion timely where filed one week after bankruptcy court's order denying dispositive motions). The City's motion was accordingly filed at the earliest possible time.

## II.    This Court Should Withdraw the Reference From the Bankruptcy Court Over These Non-Core State Law Claims to Maximize Efficiency and Avoid the Waste of Judicial Resources.

**Non-Core Proceeding.** The non-core nature of this dispute, already resolved by the bankruptcy court's motion to dismiss order, is the "most important factor" in deciding whether to withdraw the reference "because 'efficiency, uniformity and judicial economy concerns are largely subsumed within it.'" *Gecker v. Marathon Fin. Ins. Co., RRG*, 391 B.R. 613, 615 (N.D.

Ill. 2008); *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993) (same); (Mot. 12-13.)[3] This factor plainly weighs in favor of withdrawal here. *Accord* (Opp. 10 (conceding that this factor "'weigh[s] in favor of withdrawal'").)

As explained above, ITS now attempts to argue that this proceeding is "core." (Opp. 11.) Not only does this defy the Supreme Court's decision in *Stern*, 564 U.S. at 476 ("core proceedings are those that arise in a bankruptcy case or under Title 11"); *id.* at 477 (the "terms 'non-core' and 'related' are synonymous"), but ITS's own prior concessions. Before the bankruptcy court, ITS forthrightly conceded that this case does not "arise in" a bankruptcy case or "arise under" the bankruptcy laws, but rather is merely "related to" its main bankruptcy case. (Adv. Dkt. 42 at 10 ("Although this proceeding neither 'arises under' the Bankruptcy Code nor 'arises in' a bankruptcy case, it is 'related to' this chapter 11 case.").) ITS's concession that this case does not arise in or under the bankruptcy laws is therefore perforce an admission that the claims at issue are non-core. That concession is binding, and ITS has accordingly waived its right to argue otherwise before this Court. (Mot. 12 n.10.)[4]

Ignoring its prior concessions, ITS now argues to this Court that its claims could be core, listing a grab bag of facts about the case's procedural posture and vague unelaborated assertions that its state tort claims somehow "stem" from the Confirmation order. (Opp. 10, 12, ¶¶ 19, 22).) But as the bankruptcy court already held, ITS's tort claims, which could just as easily have been

---

[3] The City cited several cases holding that the presence of non-core state law claims weighs in favor of withdrawing the reference. (Mot. 12-13.) ITS ignores all but one of them, claiming that *Skyline* is "inapposite." (Opp. 12-13.) But ITS simply lists a series of factual distinctions between this case and *Skyline* without explaining why any of these differences carry any legal significance. *Id.*

[4] The two Fifth Circuit cases cited by ITS do not cast doubt on this conclusion. (Opp. 11.) Neither case even mentions the terms "core" or "non-core," and each is entirely inapposite. *Villegas v. Schmidt*, 788 F.3d 156, 158-59 (5th Cir. 2015) held that *Stern* did not partially overrule *sub silencio* an unrelated Supreme Court case. *In re Davis*, 538 F. App'x 440, 443 (5th Cir. 2013) (per curiam) merely held, in a few sentences, that the Court had jurisdiction without making any mention of whether the claims were core or non-core, or whether they arose in, under, or were related to the bankruptcy laws.

brought in California state court, are not core because they do not involve any "substantive rights granted by the Bankruptcy Code" and are not the "type of controversy unique to bankruptcy." *See E. Ky. Power Coop., Inc. v. Greenwich Ins. Co.*, No. 05-137, 2006 WL 6351092, at *1 (E.D. Ky. Jan. 24, 2006). There is accordingly no conceivable argument that this is a core proceeding.

ITS also argues that even if this proceeding is non-core, the Court should nevertheless decline to withdraw the reference "given the impact on the administration of the estate." (Opp. 11.) But ITS never discloses precisely what this "impact" might be, because there is none. The tort claims at issue here will not resolve, in any way, questions of estate administration or interpretation of the confirmed plan. Whether or not ITS can establish a right to damages under California law for lost business opportunities caused by the City's actions has nothing to do with ITS's bankruptcy estate or implementation of a plan of reorganization confirmed over four years ago (that was not funded by any proceeds from such proposed claims). ITS tellingly cites no authority holding that such considerations counsel against withdrawing the reference in a non-core proceeding.[5]

**Jury Trial.** ITS does not contest that the City has the right to a jury trial for these state law torts. It likewise does not dispute that absent the parties' consent, district courts must oversee all jury trials arising from non-core adversary proceedings. And ITS also does not respond to the many cases cited in the City's motion holding that where a litigant "has a jury trial right … cause

---

[5] ITS also notes in passing that declining to withdraw the reference would be "consistent with" 28 U.S.C. § 1334(e)(1) "which grants to the Bankruptcy Court exclusive jurisdiction over all property of the debtor." (Opp. 11.) But that section gives the *district court*, not the bankruptcy court, exclusive jurisdiction. 28 U.S.C. § 1334(e)(1) (vesting "district court" with "exclusive jurisdiction" over debtor property). While a district may refer cases within its exclusive jurisdiction to the bankruptcy court, that does not vest the bankruptcy courts with exclusive jurisdiction. Moreover, ITS never raised section 1334(e)(1) as a basis for jurisdiction before the bankruptcy court, and has accordingly forfeited its right to do so for the first time here. And in any event, ITS never explains why or how section 1334(e)(1) should affect this Court's discretion to withdraw the reference.

to withdraw the reference 'automatically exists' regardless of the remaining factors." *Sergent*, 472 B.R. at 405; (Mot. 13 (collecting cases).)

Instead, it cites *In re OGGUSA, Inc.*, No. 5:21-CV-6-JMH, 2021 WL 1230483, at *2 (E.D. Ky. Mar. 31, 2021) for the proposition that "the bankruptcy judge may conduct the jury trial … with the express consent of all the parties." (Opp. 14.) But the City has not and will not give such consent: a district court will invariably need to supervise any jury trial in this case.

ITS also argues that the bankruptcy court should simply continue to manage the case through discovery up until trial, and that this is "standard practice" for motions to withdraw the reference. (Opp. 7-8, 14.) The cases ITS cites in support are easily distinguishable because none of them involves the overriding interest in transferring venue that is present here. Whatever "standard practice" may be, it is certainly not warranted here, where the bankruptcy court has no familiarity with the facts or law related to these tort claims, and the balance of factors also supports transferring this case to California. It would be profoundly inefficient for a Kentucky bankruptcy court to oversee discovery in a case that will eventually be transferred to a California District Court. And ITS offers no response to the flurry of cases that withdrew the reference and transferred venue under circumstances similar to those presented here. (Mot. 15 (collecting cases).)

***Judicial Efficiency & Party Resources.*** As discussed above, the claims in this case involve exclusively state law issues, including governmental tort and immunity doctrines. A California district court that is familiar with these doctrines is accordingly best situated to oversee this case, and efficiently resolve these issues as they arise during pre-trial proceedings, including with respect to the scope of discovery and any potentially dispositive motions. That court would resolve these issues *once, not twice*, unlike what the bankruptcy court and this Court

9

would be required to do, should the bankruptcy court administer pre-trial proceedings and this Court conduct a jury trial (after revisiting any substantive decisions made by the bankruptcy court *and* resolving all the various pre-trial motions and questions regarding jury instructions that accompany such a trial). The parties' and the judiciary's resources would also be economized by holding the proceedings in the Northern District of California: the parties all reside in California, the port terminal is there, every shred of evidence and all the relevant conduct occurred there.

ITS's only response is to note that the bankruptcy court has "extensive familiarity with the Plan, Petition, Confirmation Order, along with convoluted circumstances and lengthy history concerning those documents." (Opp. 14.) But those documents have absolutely no bearing on the California state business torts presented in *this* proceeding. The bankruptcy court has no familiarity with the issues pertaining to the City's actions at issue here (*see* Mot. 4-11), no expertise with the complex state law issues that suffuse this case, and no connection to the geographic nexus of the legal dispute (which revolves around publicly-owned land in Oakland, CA).[6]

*Remaining factors.* ITS offers no response to the remaining factors counseling in favor of withdrawal: Namely, that withdrawing the reference will not create disuniformity in the bankruptcy laws, will not promote forum shopping, and will expedite the proceeding. (Mot. 16.)

## III.    This Proceeding Should Be Transferred to The Northern District of California

ITS provides no meaningful response to the City's principal arguments in favor of transferring this case. ITS agreed to a forum selection clause requiring that it bring any action

---

[6] In a footnote, ITS remarks that it "cannot over emphasize the critical fact that the City, to this day, continues to dispute the validity of the Sub-Ground Lease," which in ITS's view, contradicts an "ironclad bankruptcy ruling reality." (Opp. 12 n.5.) But the relationship between the contested ground lease and the ITS sublease is set forth in the language of those contracts: any sublease terminates with the ground lease. The City has merely argued that the validity of ITS's sublease is entirely derivative of the validity of OBOT's Ground Lease with the City, an uncontroversial position that the bankruptcy court endorsed when it adopted ITS's proposed motion to dismiss order as its own. (Adv. Dkt. 56 at 16-17.)

10

arising "directly or indirectly" from *its own* sublease in Northern California. The parties, witnesses, and evidence are all concentrated in California. The Northern District of California is familiar with the facts and the law pertaining to this case. The people of California have a meaningful interest in the outcome of this case and in access to judicial proceedings regarding an important issue of regional concern. Meanwhile, Kentucky has no connection to this proceeding whatsoever. For all these reasons, this Court should transfer this case now.

*Forum Selection Clause.* Because forum selection clauses "'protect[] [the parties'] legitimate expectations and further[] vital interests of the justice system,' … a proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Atl. Marine Const. Co. v. U.S. Dist. Ct. WDTX*, 571 U.S. 49, 59-60, 63 (2013) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)). When evaluating a motion to transfer under section 1404(a) where a forum selection clause is implicated, courts should give "no weight" to "the plaintiff's choice of forum" and "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Atl. Marine*, 571 U.S. at 63-64.

ITS does not contest these principles. Nor can it contest that in its sublease with OBOT regarding the project at issue it agreed "that all actions or proceedings arising directly *or indirectly* under th[e] Sublease shall be litigated in [a] local, state, or federal court" located in Northern California. (Mot. 6.) ITS likewise does not dispute that this adversary proceeding is an "action[] or proceeding[] arising directly or indirectly under [the] Sublease." Indeed, the gravamen of ITS's complaint is that the City interfered with its rights under the sublease.

Instead, ITS argues in passing that the forum selection clause in the OBOT lease does not apply because the City and ITS "are not in privity of contract." (Opp. 17.) But ITS ignores the

provision of the ITS sublease in which ITS "accepts th[e] Sublease subject to all the terms, covenants, provisions, conditions and agreements contained in" OBOT's lease with the City, which contains an identical forum selection clause. (Mot. Jefferson Decl., Ex. B., § 37.9.1; *id.* at 5-6.) ITS cannot now complain that it is unfair to bring cases that it claims derive from this sublease in California.

      ITS next suggests that its own contractual choice of forum should be supplanted by a general presumption in favor of keeping adversary proceedings in the same venue as the main bankruptcy case. (Opp. 16-18, 20.) But no such presumption applies here. The cases cited by ITS applying such a presumption involve transfers of Chapter 11 cases under 28 U.S.C. §1412 — which applies to core bankruptcy proceedings. ITS cites no decision from any Article III court applying such a presumption to motions to transfer under 28 U.S.C. §1404(a) (the statutory basis for the City's motion to transfer). Indeed, the many cases withdrawing the reference and transferring venue under section 1404 make no reference to any such presumption. (*See* Mot. 15 (collecting cases).) And *Chinook USA, LLC v. Duck Commander, Inc.*, No. 3:14-CV-01015-CRS, 2016 WL 110594, at *4 (W.D. Ky. Jan. 8, 2016), for example, held that Louisiana was the proper forum to hear an adversary proceeding given the parties' mutually agreed forum selection clause. The Court did not recognize any presumption in favor of keeping the adversary proceeding in the same venue as the main bankruptcy case.

      ***Balance of Interests.*** Because this proceeding is controlled by a valid forum selection clause, this Court must assume that the private interests weigh decidedly in favor of transferring venue. *Atl. Marine*, 571 U.S. at 64. But even absent the forum selection clause, both the public and private interests overwhelmingly weigh in favor of transferring this action to the Northern District of California. ITS makes no real argument to the contrary. ITS cannot deny that: both

12

parties reside in California (*see* Mot. 2 & n.1), all the relevant facts and conduct took place in Northern California, including where the relevant contracts were executed, the site of the development project, the City's alleged interference with that development project, and nearly all of the witnesses (Mot. 19-21.) The people of California also have an important interest in the outcome of this case, which implicates the actions of government officials, the use of a publicly-owned port, and important state law tort and immunity doctrines. (Mot. 22-23.) Kentucky, by contrast, has no connection to this case whatsoever (now that ITS's original owner lost control of the company, and then passed away), and Kentucky courts lack the power to compel the attendance of witnesses necessary to adjudicate this proceeding. (Mot. 21, 23-24.) The center of gravity of this dispute is accordingly in Northern California.

ITS largely ignores these facts. It pejoratively characterizes the motion to transfer as merely a "procedural tactic" to reroute this case to the City's "home turf in California." (Opp. 5.) But California is also ITS's "home turf." (Mot. 2 & n.1.) It otherwise sidesteps the overwhelming evidence showing that the geographic locus of this dispute is situated in Northern California, instead repeating the mantra throughout its opposition that this proceeding is linked to the "Petition, Plan and Confirmation Order." (Opp. 12, 18-19.) Yet it never explains why or how that could be the case. (*Supra* 4, 7-8, 10; *see* Mot. 10.)

ITS's remaining arguments are even further afield. It argues that the Northern District is not an appropriate venue because it "has not been involved in anything related to the proposed project since 2018." (Opp. 19.) But much of the alleged misconduct in ITS's complaint occurred precisely during the time that the Northern District of California was adjudicating a dispute related to this development project (and involving some of the action of the City that ITS pleads here as interference with contract). (*E.g.* Adv. Dkt. 1 at ¶¶ 36, 43, 68.) And in any event, ITS

13

cannot contest that the Northern District of California has much greater familiarity with the state law issues at the heart of this case (indeed ITS relied upon several N.D. Cal. orders in its opposition to the City's motion to dismiss, Mot. 14), and that—unlike this Court—the Northern District of California has the power to compel the attendance of the most important witnesses, and is plainly geographically more convenient for the witnesses, the parties, and the many Californians interested in the outcome of the case given its potential impact on their lives.

ITS instead argues that the Northern District's expertise in California state law does not matter because the bankruptcy court "through [its motion to dismiss order], has concluded that [the City's state law defenses] lack merit." (Opp. 21.) But the bankruptcy court's disposition of those issues at the motion to dismiss stage (which any district court would be free to revisit) is no reason to keep this case in Kentucky. The City's motion to dismiss raised only a sliver of the thorny state law issues that will need to be adjudicated throughout the life of this case, including at summary judgment, during and before trial, and through other motion practice.

Finally, ITS argues, citing two out-of-circuit district court cases, that the Northern District of California's physical proximity to the parties, witnesses, evidence, and the locus of operative facts is rendered "immaterial" by technological advancements that allow parties and witnesses to appear remotely. (Opp. 19.) But ITS's cases do not support this sweeping proposition. To the contrary, geographical considerations relating to the convenience of the parties, witnesses, and the public weigh heavily in the transfer analysis (particularly for a court like the Western District of Kentucky that does not regularly permit remote proceedings).

ITS's cases are not to the contrary. The cited passage in *HERO, Inc. v. Self*, No. 12-60038-CIV, 2012 WL 1802431, at *7 (S.D. Fla. May 17, 2012) has nothing to do with transferring venue, but rather is analyzing whether exercising personal jurisdiction over a litigant

would comport with due process. The court's separate venue analysis places great weight on the geographic location of the witnesses and evidence. *Id.* at *8 (declining to transfer given that Plaintiff is "headquartered in Florida, the documents related to the case are maintained [in Florida] … and the majority of the witnesses are" in Florida). *Zelinski v. Shurwest*, LLC, No. 219CV804FTM38MRM, 2021 WL 765469, at *2 (M.D. Fla. Feb. 26, 2021) (cited at Opp. 19) is likewise a personal jurisdiction case that did not present a motion to transfer venue.

Courts in this circuit have continued to hold that geographic considerations are paramount in determining whether to transfer venue. In *Creech v. Blue Cross & Blue Shield of Fla., Inc.*, No. 3:17-CV-00335-TBR, 2017 WL 6567814, at *6-*7 (W.D. Ky. Dec. 22, 2017), for example, the Court transferred a case to Florida where all of the relevant witnesses resided in Florida and "all of the operative facts giving rise to … th[e] lawsuit[] occurred in Florida." Similarly in *Sacklow v. Saks Inc.*, 377 F. Supp. 3d 870, 878-80 (M.D. Tenn. May 6, 2019) the court transferred a case involving a data breach to New York where the evidence, "locus of the breach and the policies and practices at issue," and several witnesses were all located in New York. *See also, e.g.*, *Ziegler v. Polaris Indus., Inc.*, No. 1:21-CV-956, 2023 WL 7448736, at *4-*5 (W.D. Mich. Apr. 24, 2023) (similar). And each of these cases stresses the importance of transferring a case where, as here, the transferor court lacks the power to compel the appearance of material witnesses—a significant logistical impediment that cannot be alleviated by advances in technology. *Creech*, 2017 WL 6567814, at *7; *Sacklow*, 377 F. Supp. 3d at 880; *Ziegler*, 2023 WL 7448736, at *5.

15

## CONCLUSION

For the foregoing reasons, the City respectfully requests that this Court grant its motion, withdraw the reference to the bankruptcy court, and transfer this litigation to the U.S. District Court for the Northern District of California.

Dated:  January 8, 2025   By: /s/ *April A. Wimberg*

     April A. Wimberg
     Ryne E. Tipton
     DENTONS BINGHAM GREENBAUM LLP
     3500 PNC Tower, 101 South Fifth Street
     Louisville, Kentucky 40202
     Phone:  (502) 587-3719
     Email:  april.wimberg@dentons.com
        ryne.tipton@dentons.com

     Ryan Richardson, City Attorney (SBN 223548)
     (*Pro Hac Vice* motion forthcoming)
     Maria S. Bee, Chief Asst City Attorney
     (SBN 167716)
     Kevin McLaughlin, Supervising Deputy City
     Attorney (SBN 251477)
     THE CITY OF OAKLAND
     One Frank Ogawa Plaza, 6th Floor
     Oakland, California 94612
     Phone:   (510) 238-3601
     Email:   rrichardson@oaklandcityattorney.org
        mbee@oaklandcityattorney.org
        kmclaughlin@oaklandcityattorney.org

     Monique D. Jewett-Brewster (SBN 217792)
     LATHROP GPM LLP
     The Letitia Building
     70 S First Street
     San Jose, CA  95113-2406
     Phone:      (408) 286-9800
     Facsimile:   (408) 998-4790
     Email:  mjb@lathropgpm.com

     Danielle Leonard (SBN 218201)
     ALTSHULER BERZON LLP
     177 Post Street, Suite 300
     San Francisco, CA 94108
     Phone: (415) 421-7151
     Email:  dleonard@altshulerberzon.com

     Attorneys for Defendant,
     CITY OF OAKLAND

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing was served electronically upon all parties in the electronic filing system.

Dated:  January 9, 2025                By:  /s/ *April A. Wimberg*
                                                April A. Wimberg